# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

EMPIRE FINANCIAL SERVICES, INC., §
§
PLAINTIFF, §
§
§
§
VS. §
KENNETH L. TODD, III, §
MICHAEL D. BROCK, §
JAMES R. PAXTON,, §
DANIEL A. BAILEY, §
C. WAYNE ROBERTS, §
TIMOTHY L. EAKES, §
GARY L. ANDERSON and §
KEITH A. LAFERRIERE, §
§
DEFENDANTS. §

CIVIL ACTION NO:

1:08 CV 226 - WC

## COMPLAINT

## JURISDICTION

1.     Jurisdiction in this case is based upon diversity of citizenship and the amount in controversy pursuant to 28 U.S.C. Section 1332.

2.     Plaintiff, Empire Financial Services, Inc., is a Georgia corporation.

3.     Defendants Kenneth L. Todd, III, Michael D. Brock, James R. Paxton, Daniel A. Bailey, C. Wayne Roberts, Timothy L. Eakes and Gary L. Anderson are citizens of the State of Alabama. Defendant Keith A. LaFerriere is a citizen of the State of Missouri.

4.    The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

---

## NOTICE TO EACH DEFENDANT OF RIGHT TO SECURE WAIVER OF ATTORNEYS' FEES PURSUANT TO GEORGIA STATUTE 13-1-11

A)    **Plaintiff Empire Financial Services, Inc. has brought suit in the United States District Court for the Middle District of Alabama in order to enforce Defendants' guaranty agreements with Plaintiff.**

B)    **This notice to each Defendant is provided pursuant to O.C.G.A. Section 13-1-11.**

C)    **Defendants' guaranty agreements with Plaintiff provide for payment of reasonable attorneys' fees incurred by Plaintiff in endeavoring to collect the indebtedness subject to such guaranties, which attorneys' fees pursuant to O.C.G.A. Section 13-1-11 shall be up to but not in excess of 15% of the first $500.00 of principal and interest owing on the promissory note and 10% of the principal and interest owing on the promissory note in excess of $500.00.**

D)    **As provided herein, the principal balance due and owing Plaintiff is the amount of $18,693,468.21 as of March 26, 2008 with subsequent interest accruing thereon at 8.5% per annum.**

E)    **You are hereby notified that Plaintiff does demand payment of attorney's fees under your obligation under your guaranty agreement with Plaintiff.**

**F)**    **If you pay the above-stated principal amount of $18,693,468.21 and subsequent interest thereon at 8.5% per annum in full to Plaintiff's counsel, Robert P. Reynolds, with the law firm of Reynolds, Reynolds & Duncan, LLC, 2115 11th Street, P.O. Box 2863, Tuscaloosa, Alabama 35403 so that it is received by said Plaintiff's counsel in good funds before the expiration of ten (10) days from the date you receive this notice, then your obligation to pay said attorney's fees is void.**

**G)**    **If you do not pay said principal and interest within said ten (10) day period, then your obligation to pay attorney's fees shall be enforced.**

---

## COUNT ONE

5.    On or about September 26, 2005, Lake Martin Partners, L.L.C., hereinafter "Lake Martin", executed and delivered to Plaintiff a promissory note in the principal amount of $22,000,000.00, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "1", whereby Lake Martin promised to repay said note pursuant to the terms thereof and whereby each of the Defendants guaranteed payment and performance and waived the right to require the holder of the note to proceed first against Lake Martin.

6.    Lake Martin defaulted under the terms of said promissory note, and on October 19, 2007 filed a Chapter 11 bankruptcy petition in the United States

3

Bankruptcy Court for the Middle District of Alabama, Case No. 07-11470, as evidenced by the Bankruptcy Notice, a true and correct copy of which is attached hereto as Exhibit "2".

7.    Plaintiff alleges that the terms of said promissory note further provided that in the case of default under the terms thereof the entire indebtedness would then become due and payable.

8.    Lake Martin (exclusive of other obligation(s) due Plaintiff by Lake Martin authorized by order(s) of the Bankruptcy Court) owes Plaintiff $17,983,853.50 as of the 19th day of October, 2007 plus interest thereon, late charges and attorney fees as reflected in the Proof of Claim One of One of Plaintiff filed in the in the United States Bankruptcy Court for the Middle District of Alabama, a true and correct copy of which is attached hereto as Exhibit "3".

9.    On November 21, 2007, the United States Bankruptcy Court for the Middle District of Alabama entered a Final Order Approving Post-Petition Financing Between Lake Martin and the Plaintiff. A true and correct copy of said Order is attached hereto as Exhibit "4". Said Order provides, among other things, that Lake Martin is authorized to obtain debtor-in-possession financing, hereinafter "DIP Loan", from Plaintiff and "to utilize the proceeds of the same (1) to obtain completion of "Building 5" and other buildings located in the Project, (2) to obtain

4

completion of any Project common areas necessary to obtain applicable certificates of occupancy (3) to pay such other costs and expenses necessary, in the reasonable opinion of Plaintiff and the Debtor [Lake Martin], for the security, care and preservation of the Project, (4) to pay interest on the Financing and the origination fee on the amount above of the Interim Financing as funds are advanced, and (5) to pay such other reasonable costs and expenses of Empire Financial [Plaintiff] related to the Financing as are payable under the Term Sheet with the exception of attorney fees and expenses which shall be paid in the same percentages set forth in the existing order for payment of professionals entered in this case and subject to final application and approval by the Court." "Proceeds from the sale of completed units received by Empire Financial [Plaintiff] shall first be applied to the loan advances extended for the completion of Building 5."

10.    Due to the failure of Lake Martin to remit monthly interest payments to Plaintiff as the same has become due, Plaintiff is entitled to a late charge equal to 5% of each monthly payment not received by Plaintiff by the 15th day following the month when due. Due to the failure of Lake Martin to timely remit such payments late charges have accrued  in the total amount of $39,960.00 from October 19, 2007 through February 2008.

11.    As an inducement to Plaintiff to extend credit to Lake Martin, Defendant Kenneth L. Todd, III executed and delivered to Plaintiff an unconditional guaranty

of payment and performance due Plaintiff by Lake Martin, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "5".

12.    On  October 4, 2007,  Defendant  Kenneth  L.  Todd,  III revoked his guaranty as to any future advance  or obligation as evidenced by the letter from his attorney Dow T. Huskey  to  Plaintiff dated October 4, 2007, a true and correct copy of which is attached hereto as Exhibit "6".   Accordingly,  said  Defendant Kenneth L. Todd, III is  not  liable for sums due Plaintiff  under the DIP Loan; however, said  revocation does  not affect Defendant  Kenneth L. Todd, III's obligation to pay the outstanding principal amount of the said September 26,  2005 promissory note,  late  charges, interest and attorney fees accruing thereon.

13.    Defendant  Kenneth L. Todd, III  has defaulted under the terms of said guaranty by failing to pay all sums due Plaintiff by Lake Martin with respect to the said September 26, 2005  promissory  note, late charges, interest and attorney fees accruing thereon.

**WHEREFORE,** Plaintiff  demands judgment against Defendant Kenneth L. Todd, III for the principal sum of $18,653,508.21, an attorney's fee in the amount of $25,000.00,  such  additional  attorney's  fees  as may be awarded by the Court, accrued  late  charges  in the amount of $39,960.00 subsequent interest at 8.5% per annum and costs.

## COUNT TWO

14.    Plaintiff realleges all material allegations contained in Count One of its Complaint.

15.    As an inducement to Plaintiff to extend credit to Lake Martin, Defendant Michael D. Brock  executed  and delivered to Plaintiff an unconditional guaranty of payment and performance due Plaintiff by Lake Martin, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "7".

16.    On  October  4,  2007,  Defendant  Michael D. Brock  revoked his guaranty as to any future advance  or obligation as evidenced by the letter from his attorney Dow T. Huskey  to  Plaintiff dated October 4, 2007, a true and correct copy of which is attached hereto as Exhibit "6".  Accordingly,  said  Defendant Michael D. Brock is  not  liable for sums due  Plaintiff  under the DIP Loan;  however, said  revocation  does  not  affect  Defendant  Michael D. Brock's obligation to pay the outstanding principal amount of  the said  September  26,  2005  promissory note,  late  charges, interest and attorney fees accruing thereon.

17.    Defendant  Michael D. Brock  has  defaulted  under the terms of said guaranty by failing to pay all sums due Plaintiff by Lake Martin with respect to the said September 26, 2005  promissory  note, late charges, interest and attorney fees accruing thereon.

**WHEREFORE,** Plaintiff demands judgment against Defendant Michael D. Brock for the principal sum of $18,653,508.21, an attorney's fee in the amount of $25,000.00, such additional attorney's fees as may be awarded by the Court, accrued late charges in the amount of $39,960.00 subsequent interest at 8.5% per annum and costs.

## COUNT THREE

18.    Plaintiff realleges all material allegations contained in Count One of its Complaint.

19.    As an inducement to Plaintiff to extend credit to Lake Martin, Defendant James R. Paxton executed and delivered to Plaintiff an unconditional guaranty of payment and performance due Plaintiff by Lake Martin, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "8".

20.    On October 4, 2007, Defendant James R. Paxton revoked his guaranty as to any future advance or obligation as evidenced by the letter from his attorney Dow T. Huskey to Plaintiff dated October 4, 2007, a true and correct copy of which is attached hereto as Exhibit "6". Accordingly, said Defendant James R. Paxton is not liable for sums due Plaintiff under the DIP Loan; however, said revocation does not affect Defendant James R. Paxton's obligation

to pay the outstanding principal amount of the said September 26, 2005 promissory note, late charges, interest and attorney fees accruing thereon.

21.    Defendant James R. Paxton has defaulted under the terms of said guaranty by failing to pay all sums due Plaintiff by Lake Martin with respect to the said September 26, 2005 promissory note, late charges, interest and attorney fees accruing thereon.

**WHEREFORE,** Plaintiff demands judgment against Defendant James R. Paxton for the principal sum of $18,653,508.21, an attorney's fee in the amount of $25,000.00, such additional attorney's fees as may be awarded by the Court, accrued late charges in the amount of $39,960.00 subsequent interest at 8.5% per annum and costs.

## COUNT FOUR

22.    Plaintiff realleges all material allegations contained in Count One of its Complaint.

23.    As an inducement to Plaintiff to extend credit to Lake Martin, Defendant Daniel A. Bailey executed and delivered to Plaintiff an unconditional guaranty of payment and performance due Plaintiff by Lake Martin, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "9".

9

24.    On   October  4,  2007,   Defendant   Daniel  A.  Bailey   revoked his guaranty as to any future advance  or obligation as evidenced by the letter from his attorney Dow T. Huskey  to  Plaintiff dated October 4, 2007, a true and correct copy of which is attached hereto as Exhibit "6".  Accordingly,  said  Defendant Daniel A. Bailey  is   not   liable   for   sums  due  Plaintiff  under the DIP Loan;  however, said  revocation does not affect Defendant  Daniel  A. Bailey's obligation to  pay the outstanding principal amount of the said  September   26,   2005  promissory  note, late  charges, interest and attorney fees accruing thereon.

25.    Defendant   Daniel  A.  Bailey   has defaulted under the terms of said guaranty by failing to pay all sums due Plaintiff by Lake Martin with respect to the said September 26, 2005  promissory  note, late charges, interest and attorney fees accruing thereon.

**WHEREFORE,** Plaintiff  demands  judgment against Defendant Daniel A. Bailey  for the principal sum of $18,653,508.21, an attorney's fee in the amount of $25,000.00,  such  additional  attorney's  fees  as may be awarded by the Court, accrued  late  charges  in the amount of $39,960.00 subsequent interest at 8.5% per annum and costs.

## COUNT FIVE

26.    Plaintiff realleges all material allegations contained in Count One of its Complaint.

27.    As an inducement to Plaintiff to extend credit to Lake Martin, Defendant C. Wayne Roberts executed and delivered to Plaintiff an unconditional guaranty of payment and performance due Plaintiff by Lake Martin, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "10".

28.    On October 4, 2007, Defendant C. Wayne Roberts revoked his guaranty as to any future advance or obligation as evidenced by the letter from his attorney Dow T. Huskey to Plaintiff dated October 4, 2007, a true and correct copy of which is attached hereto as Exhibit "6". Accordingly, said Defendant C. Wayne Roberts is not liable for sums due Plaintiff under the DIP Loan; however, said revocation does not affect Defendant C. Wayne Roberts' obligation to pay the outstanding principal amount of the said September 26, 2005 promissory note, late charges, interest and attorney fees accruing thereon.

29.    Defendant C. Wayne Roberts has defaulted under the terms of said guaranty by failing to pay all sums due Plaintiff by Lake Martin with respect to the said September 26, 2005 promissory note, late charges, interest and attorney fees accruing thereon.

**WHEREFORE,** Plaintiff demands judgment against Defendant C. Wayne Roberts for the principal sum of $18,653,508.21, an attorney's fee in the amount of $25,000.00, such additional attorney's fees as may be awarded by the Court,

accrued late charges in the amount of $39,960.00 subsequent interest at 8.5% per annum and costs.

## COUNT SIX

30.    Plaintiff realleges all material allegations contained in Count One of its Complaint.

31.    As an inducement to Plaintiff to extend credit to Lake Martin, Defendant Timothy L. Eakes executed and delivered to Plaintiff an unconditional guaranty of payment and performance due Plaintiff by Lake Martin, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "10".

32.    On October 4, 2007, Defendant Timothy L. Eakes revoked his guaranty as to any future advance or obligation as evidenced by the letter from his attorney Dow T. Huskey to Plaintiff dated October 4, 2007, a true and correct copy of which is attached hereto as Exhibit "6". Accordingly, said Defendant Timothy L. Eakes is not liable for sums due Plaintiff under the DIP Loan; however, said revocation does not affect Defendant Timothy L. Eakes' obligation to pay the outstanding principal amount of the said September 26, 2005 promissory note, late charges, interest and attorney fees accruing thereon.

33.    Defendant Timothy L. Eakes has defaulted under the terms of said guaranty by failing to pay all sums due Plaintiff by Lake Martin with respect to the

said September 26, 2005 promissory note, late charges, interest and attorney fees accruing thereon.

**WHEREFORE,** Plaintiff demands judgment against Defendant Timothy L. Eakes for the principal sum of $18,653,508.21, an attorney's fee in the amount of $25,000.00, such additional attorney's fees as may be awarded by the Court, accrued late charges in the amount of $39,960.00 subsequent interest at 8.5% per annum and costs.

## COUNT SEVEN

34.    Plaintiff realleges all material allegations contained in Count One of its Complaint.

35.    As an inducement to Plaintiff to extend credit to Lake Martin, Defendant Gary L. Anderson executed and delivered to Plaintiff an unconditional guaranty of payment and performance due Plaintiff by Lake Martin, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "12".

36.    On October 4, 2007, Defendant Gary L. Anderson revoked his guaranty as to any future advance or obligation as evidenced by the letter from his attorney Dow T. Huskey to Plaintiff dated October 4, 2007, a true and correct copy

of which is attached hereto as Exhibit "6".   Accordingly,  said  Defendant Gary L. Anderson is   not   liable for  sums due  Plaintiff  under the DIP Loan;  however, said   revocation  does  not  affect  Defendant   Gary L. Anderson's  obligation to pay the outstanding principal amount of the said September 26, 2005  promissory note,  late  charges, interest and attorney fees accruing thereon.

37.    Defendant  Gary L. Anderson   has  defaulted under the terms of said guaranty by failing to pay all sums due Plaintiff by Lake Martin with respect to the said September 26, 2005  promissory  note, late charges, interest and attorney fees accruing thereon.

**WHEREFORE,** Plaintiff  demands judgment  against  Defendant Gary L. Anderson for the principal sum of $18,653,508.21, an attorney's fee in the amount of $25,000.00,   such   additional  attorney's  fees  as may be awarded by the Court, accrued  late  charges  in the amount of $39,960.00 subsequent interest at 8.5% per annum and costs.

## COUNT EIGHT

38.    Plaintiff realleges all material allegations contained in Count One of its Complaint.

39.    As an inducement to Plaintiff to extend credit to Lake Martin, Defendant Keith A. LaFerriere executed and delivered to   Plaintiff an unconditional guaranty

14

of payment and performance due Plaintiff by Lake Martin, a true and correct copy of which is attached hereto and incorporated herein as Exhibit "13".

40.     On     October 4, 2007, Defendant Keith A. LaFerriere revoked his guaranty as to any future advance or obligation as evidenced by the letter from his attorney Dow T. Huskey to Plaintiff dated October 4, 2007, a true and correct copy of which is attached hereto as Exhibit "6". Accordingly, said Defendant Keith A. LaFerriere is not liable for sums due Plaintiff under the DIP Loan; however, said revocation does not affect Defendant Keith A. LaFerriere's obligation to pay the outstanding principal amount of the said September 26, 2005 promissory note, late charges, interest and attorney fees accruing thereon.

41.     Defendant Keith A. LaFerriere has defaulted under the terms of said guaranty by failing to pay all sums due Plaintiff by Lake Martin with respect to the said September 26, 2005 promissory note, late charges, interest and attorney fees accruing thereon.

**WHEREFORE,** Plaintiff demands judgment against Defendant Keith A. LaFerriere for the principal sum of $18,653,508.21, an attorney's fee in the amount of $25,000.00, such additional attorney's fees as may be awarded by the Court,

accrued late charges in the amount of $39,960.00 subsequent interest at 8.5% per annum and costs.

Robert P. Reynolds
Code No. REY-007
Attorney for Plaintiff
REYNOLDS, REYNOLDS & DUNCAN, LLC
Post Office Box 2863
Tuscaloosa, Alabama   35403
Telephone:  (205) 391-0073
E-mail: rreynolds@rrdlaw.com
RRD File No. 358.11

Blumberg No. 5119

EXHIBIT

I

# ADJUSTABLE RATE NOTE

**$22,000,000.00**                                    September 2̲6̲ , 2005

**FOR AND IN CONSIDERATION OF THE LOAN EVIDENCED BY THIS NOTE,** the undersigned promises to pay to the order of **EMPIRE FINANCIAL SERVICES, INC.,** at its main office in Milledgeville, Georgia, or at such place as the holder may designate, the principal sum of **TWENTY TWO MILLION AND NO/100 DOLLARS ($22,000,000.00)** plus interest from date on that part of the outstanding principal which has not been paid.

Beginning on the date of this Note, the undersigned will pay interest only at a yearly rate of seven and one-quarter percent (7.25%) based on a 365 - day year. Interest will accrue on all monies disbursed from closing and all monies thereafter advanced from the date of each such disbursement. A Construction – Interest Only Period will run from September 2̲ 6̲ , 2005 through the Loan Maturity Date, August 31, 2007. During that period, Borrower shall pay, monthly, on or before the 15th day of each month, all interest accrued during the previous calendar month on monies disbursed, with the first payment (due October 1, 2005) to be paid on or before October 15, 2005. All such interest shall be fully paid on or before August 31, 2007. Between the first and fifth day of each month, Noteholder will notify Borrower of the amount of interest due on the 15th day of that month.

On the first day of October, 2006, the interest rate applicable to the principal balance then outstanding will be adjusted so as to equal the "Prime Rate" plus three-quarters of one percent (.75%). However, should this calculation of the interest rate result in an interest rate of less than seven percent (7.0%), the new interest rate will, nevertheless, be set at seven percent (7.0%) (the interest rate "floor"). The adjusted interest rate will be in effect from October 1, 2006, through August 31, 2007 (the Loan Maturity Date) with monthly interest only payments, at the adjusted rate, to continue to be due on the first day of each month, beginning on the first day of November, 2006 and continuing through the Loan Maturity Date. On the Loan Maturity Date, the entire principal balance, all accrued but unpaid interest, and all other sums due to Lender, will be due and payable, in full.

For purposes of this Note, the term "Prime Rate" means the interest rate published in the <u>Wall Street Journal</u>, Eastern Edition, identified therein as the "Prime Rate" and currently described as "the base rate on corporate loans posted by at least 75% of the nation's 30 largest banks". The "Prime Rate" published on the last publication date prior to October 1, 2006 will be the index for the October 1, 2006 interest rate adjustment. In the event that the <u>Wall Street Journal</u> abandons the practice of publishing the Prime Rate, the Noteholder will designate a comparable reference or index which will thereafter be the Prime Rate for this Note. The Noteholder will round the amount of the change to the nearest one-eighth (1/8) of one (1) percentage point. Noteholder will notify Borrower of the adjustment to be made and such notification, even if given after the due date of the next monthly installment, will apply to all monthly installments due after the October 1, 2006 interest rate adjustment.

Each payment will be applied first to accrued interest and to other charges or fees accruing under this Note or the Mortgage of even date herewith and the residue to principal. Any amount may be prepaid on this Note at any time without premium or fee; however, the monthly payments will continue to be due without interruption. Time is of the essence of this contract. Lender may collect a late charge of five (5) cents for each One Dollar ($1.00) of each principal and interest payment, with a minimum charge of Five Dollars ($5.00), for each such payment fifteen (15) days or more in arrears to cover the extra expense involved in handling delinquent payment. In the event (a) of a default in the payment of principal and interest as stipulated herein (including, without limitation, non-payment upon maturity) or default in any other monetary obligation of the undersigned which such default(s) continue for a period of five (5) days after notice of such default by Noteholder, or (b) upon failure of the undersigned to comply with any other conditions or covenants contained in this Note or any instrument(s) securing it which such default(s) continue for a period of fifteen (15) days after notice of such default by Noteholder, or (c) upon the liquidation or dissolution of a Borrower, endorser or guarantor that is a corporation, partnership (general or limited) or limited liability company, then, and in any such event(s), the principal indebtedness evidenced hereby, all accrued interest and any other sums advanced hereunder or pursuant to any other loan documents will, at the option of Noteholder and, without further notice to the undersigned, at once become due and payable and may be collected forthwith, regardless of the stipulated date of maturity. No omission on the part of Noteholder to exercise such option, when entitled to do so, will be construed a waiver of such right. For purposes of this Note and all other documents or instruments evidencing or securing the Borrower's obligations to Lender, the terms "event of default" or "event(s) of default" (regardless of capitalization) mean: (a) the failure of Borrower, by act or omission, to comply with one or more of Borrower's obligations of payment or performance; (b) the occurrence of a prohibited or proscribed event; or (c) that any of Borrower's warranties and representations are, when given, or at any time thereafter, false, invalid, or materially inaccurate. For purposes of this Note and all other documents or instruments evidencing or securing Borrower's obligations to Lender, the terms "default" or "default(s)" (regardless of capitalization) mean that: (a) an event of default has occurred; (b) the Lender has given such notice, if any, as may be required; and (c) the event of default has not been cured during, or continues beyond any applicable grace or cure period and any extension thereof that the Lender, in its sole and absolute discretion, may elect to provide.

Upon the happening of any event of default the entire unpaid principal balance will bear interest at the contract rate then in effect until the entire amounts in default have been paid by the undersigned. If this Note is collected by law or through an attorney at law, the undersigned will pay all costs of collection, including reasonable attorney's fees. The undersigned (whether maker, endorser, surety, guarantor, or other party hereto) severally waives demand, protest and notice of demand, protest and non-payment. It is agreed that this Note may be renewed or extended from time to time, in whole or in part, without the consent of or notice to any endorser, maker, guarantor, surety, or other party hereto and without affecting or lessening the liability of any such person. The powers granted herein are coupled with an interest, and are irrevocable by death or otherwise. This Note is the joint and several obligation of all makers, sureties, guarantors, endorsers and other parties hereto, and will be binding upon them, their heirs, personal representatives and assigns. In this Note and any instrument securing it, the singular includes the plural, and the masculine includes the feminine and neuter.

If from any circumstances whatsoever, fulfillment of any provision of this Note or of any other instrument securing the indebtedness evidenced hereby, at the time performance of such provision is due, involves transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto, the obligation to be fulfilled will be reduced to the limit of such validity, so that in no event will any exaction be possible under

this Note or under any other instrument securing the indebtedness evidenced hereby, that is in excess of the current limit of such validity, but such obligation will be fulfilled to the limit of such validity.

This Note is secured by a Mortgage, Assignment of Leases and Rents, Assignment of Fees and Income, and Security Agreement of even date executed by the undersigned to Empire Financial Services, Inc.

> **CAUTION:  IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Executed and given under the hand and seal of the undersigned.

**LAKE MARTIN PARTNERS, L.L.C.  [SEAL]**
**An Alabama Limited Liability Company**

By: _James R Paxton_

Manager

By: _C Wayne Roberts_

Manager

**The undersigned guarantors and sureties hereby guarantee payment and performance and, to the extent allowed by law, waive the right to require the Noteholder to proceed first against the Maker/Borrower.**

_____ [SEAL]
**GARY L. ANDERSON**

_____ [SEAL]
**DANIEL A. BAILEY**

_____ [SEAL]
**MICHAEL D. BROCK**

_____ [SEAL]
**TIMOTHY L. EAKES**

_____ [SEAL]
**JULIE GEORGE – HOWELL**

_____ [SEAL]
**KEITH A. LaFERRIERE**

**[SIGNATURES CONTINUED ON FOLLOWING PAGE**

If from any circumstances whatsoever, fulfillment of any provision of this Note or of any other instrument securing the indebtedness evidenced hereby, at the time performance of such provision is due, involves transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto, the obligation to be fulfilled will be reduced to the limit of such validity, so that in no event will any exaction be possible under this Note or under any other instrument securing the indebtedness evidenced hereby, that is in excess of the current limit of such validity, but such obligation will be fulfilled to the limit of such validity.

This Note is secured by a Mortgage, Assignment of Leases and Rents, Assignment of Fees and Income, and Security Agreement of even date executed by the undersigned to Empire Financial Services, Inc.

> **CAUTION:  IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Executed and given under the hand and seal of the undersigned.

## LAKE MARTIN PARTNERS, L.L.C.  [SEAL]
**An Alabama Limited Liability Company**

By: _____

**The undersigned guarantors and sureties hereby guarantee payment and performance and, to the extent allowed by law, waive the right to require the Noteholder to proceed first against the Maker/Borrower.**

_____ [SEAL]
GARY L. ANDERSON

_____ [SEAL]
DANIEL A. BAILEY

_____ [SEAL]
MICHAEL D. BROCK

_____ [SEAL]
TIMOTHY L. EAKES

_____ [SEAL]
JULIE GEORGE – HOWELL

_____ [SEAL]
KEITH A. LaFERRIERE

[SIGNATURES CONTINUED ON FOLLOWING PAGE

CEM/jdm/Adjustable Rate Note (Construction)
AL/05-40

3 of 4

If from any circumstances whatsoever, fulfillment of any provision of this Note or of any other instrument securing the indebtedness evidenced hereby, at the time performance of such provision is due, involves transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto, the obligation to be fulfilled will be reduced to the limit of such validity, so that in no event will any exaction be possible under this Note or under any other instrument securing the indebtedness evidenced hereby, that is in excess of the current limit of such validity, but such obligation will be fulfilled to the limit of such validity.

This Note is secured by a Mortgage, Assignment of Leases and Rents, Assignment of Fees and Income, and Security Agreement of even date executed by the undersigned to Empire Financial Services, Inc.

> **CAUTION:  IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Executed and given under the hand and seal of the undersigned.

**LAKE MARTIN PARTNERS, L.L.C.  [SEAL]**
**An Alabama Limited Liability Company**


**By:** _____


**The undersigned guarantors and sureties hereby guarantee payment and performance and, to the extent allowed by law, waive the right to require the Noteholder to proceed first against the Maker/Borrower.**


_____  [SEAL]
GARY L. ANDERSON

_____  [SEAL]
DANIEL A. BAILEY

_____  [SEAL]
MICHAEL D. BROCK

_____  [SEAL]
TIMOTHY L. EAKES

_____  [SEAL]
JULIE GEORGE – HOWELL

_____  [SEAL]
KEITH A. LaFERRIERE

### [SIGNATURES CONTINUED ON FOLLOWING PAGE

CEM/jdm/Adjustable Rate Note (Construction)
AL/05-40

3 of 4

If from any circumstances whatsoever, fulfillment of any provision of this Note or of any other instrument securing the indebtedness evidenced hereby, at the time performance of such provision is due, involves transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto, the obligation to be fulfilled will be reduced to the limit of such validity, so that in no event will any exaction be possible under this Note or under any other instrument securing the indebtedness evidenced hereby, that is in excess of the current limit of such validity, but such obligation will be fulfilled to the limit of such validity.

This Note is secured by a Mortgage, Assignment of Leases and Rents, Assignment of Fees and Income, and Security Agreement of even date executed by the undersigned to Empire Financial Services, Inc.

> **CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Executed and given under the hand and seal of the undersigned.

**LAKE MARTIN PARTNERS, L.L.C.  [SEAL]**
**An Alabama Limited Liability Company**


By: _____


**The undersigned guarantors and sureties hereby guarantee payment and performance and, to the extent allowed by law, waive the right to require the Noteholder to proceed first against the Maker/Borrower.**


_____ [SEAL]
**GARY L. ANDERSON**

_____ [SEAL]
**DANIEL A. BAILEY**

_____ [SEAL]
**MICHAEL D. BROCK**

*Timothy L Eaks* _____ [SEAL]
**TIMOTHY L. EAKES**

_____ [SEAL]
**JULIE GEORGE – HOWELL**

_____ [SEAL]
**KEITH A. LaFERRIERE**

### [SIGNATURES CONTINUED ON FOLLOWING PAGE

CEM/jdm/Adjustable Rate Note (Construction)
AL/05-40

3 of 4

If from any circumstances whatsoever, fulfillment of any provision of this Note or of any other instrument securing the indebtedness evidenced hereby, at the time performance of such provision is due, involves transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto, the obligation to be fulfilled will be reduced to the limit of such validity, so that in no event will any exaction be possible under this Note or under any other instrument securing the indebtedness evidenced hereby, that is in excess of the current limit of such validity, but such obligation will be fulfilled to the limit of such validity.

This Note is secured by a Mortgage, Assignment of Leases and Rents, Assignment of Fees and Income, and Security Agreement of even date executed by the undersigned to Empire Financial Services, Inc.

> **CAUTION:  IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Executed and given under the hand and seal of the undersigned.

**LAKE MARTIN PARTNERS, L.L.C.  [SEAL]**
**An Alabama Limited Liability Company**

By:  _____

The undersigned guarantors and sureties hereby guarantee payment and performance and, to the extent allowed by law, waive the right to require the Noteholder to proceed first against the Maker/Borrower.

_____ [SEAL]
**GARY L. ANDERSON**

_____ [SEAL]
**DANIEL A. BAILEY**

_____ [SEAL]
**MICHAEL D. BROCK**

_____ [SEAL]
**TIMOTHY L. EAKES**

_____ [SEAL]
**JULIE GEORGE – HOWELL**

_____ [SEAL]
**KEITH A. LaFERRIERE**

### [SIGNATURES CONTINUED ON FOLLOWING PAGE

_____ [SEAL]
**SAMUEL E. LEE**

_____ [SEAL]
**JAMES R. PAXTON**

_____ [SEAL]
**C. WAYNE ROBERTS**

_____ [SEAL]
**KENNETH L. TODD, III**

_____ [SEAL]
**RICKEY WOODS**

CEM/jdm/Adjustable Rate Note (Construction)
AL/05-40

4 of 4

_____  [SEAL]
**SAMUEL E. LEE**

_____  [SEAL]
**JAMES R. PAXTON**

_____  [SEAL]
**C. WAYNE ROBERTS**

_____  [SEAL]
**KENNETH L. TODD, III**

_____  [SEAL]
**RICKEY WOODS**

_____  [SEAL]
SAMUEL E. LEE

_____  [SEAL]
JAMES R. PAXTON

_____  [SEAL]
C. WAYNE ROBERTS

_____  [SEAL]
KENNETH L. TODD, III

_____  [SEAL]
RICKEY WOODS

FORM B9F (Chapter 11 Corporation/Partnership Asset Case) (10/05)                                         Case Number **07−11470**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT of MIDDLE DISTRICT OF ALABAMA

## Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines
A chapter 11 bankruptcy case concerning the debtor Corporation listed below was filed on 10/19/07.

You may be a creditor of the debtor. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below.
NOTE: The staff of the bankruptcy clerk's office cannot give legal advice.

### See Reverse Side For Important Explanations

Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
Lake Martin Partners, LLC
142 South Woodburn Drive
DOTHAN, AL 36305

| Case Number:<br>07−11470 | Taxpayer ID/Employer ID/Other Nos.:<br>20−1965019 |
|---|---|

Attorney for Debtor(s) (name and address):
Cameron A. Metcalf
Espy & Metcalf
P. O. Drawer 6504
Dothan, AL 36302
Telephone number:  334 793−6288

### Meeting of Creditors

Date:  **December 6, 2007**                                            Time:  **01:00 PM**
Location:  **U.S. Bankruptcy Court, Federal Courthouse, 101 W. Troy Street, Dothan, AL 36303**

### Deadlines to File a Proof of Claim
Proof of claim must be *received* by the bankruptcy clerk's office by the following deadline:
For all creditors (except a governmental unit): **2/4/08**          For a governmental unit: **180 days from order for relief**

### Foreign Creditors
A creditor to whom this notice is sent at a foreign address should read the information under "Claims" on the reverse side.

### Deadline to File a Complaint to Determine Dischargeability of Certain Debts:

### Creditors May Not Take Certain Actions:
In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

| **Address of the Bankruptcy Clerk's Office:**<br>One Church Street<br>Montgomery, AL 36104<br>Telephone number:  334−954−3800 | **For the Court:**<br>Clerk of the Bankruptcy Court:<br>Richard S. Oda |
|---|---|
| Hours Open:  Monday − Friday 8:30 AM − 4:00 PM | Date:  10/22/07 |

Blumberg No. 5119

EXHIBIT
**2**

# EXPLANATIONS

FORM B9F (10/05)

| | |
|---|---|
| Filing of Chapter 11 Bankruptcy Case | A bankruptcy case under Chapter 11 of the Bankruptcy Code (title 11, United States Code) has been filed in this court by or against the debtor(s) listed on the front side, and an order for relief has been entered. Chapter 11 allows a debtor to reorganize or liquidate pursuant to a plan. A plan is not effective unless confirmed by the court. You may be sent a copy of the plan and a disclosure statement telling you about the plan, and you might have the opportunity to vote on the plan. You will be sent notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the debtor's property and may continue to operate any business. |
| **Legal Advice** | The staff of the bankruptcy clerk's office cannot give legal advice. Consult a lawyer to determine your rights in this case. |
| Creditors Generally May Not Take Certain Actions | Prohibited collection actions are listed in Bankruptcy Code § 362. Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; and starting or continuing lawsuits or foreclosures. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. |
| Meeting of Creditors | A meeting of creditors is scheduled for the date, time and location listed on the front side. *The debtor's representative must be present at the meeting to be questioned under oath by the trustee and by creditors.* Creditors are welcome to attend, but are not required to do so. The meeting may be continued and concluded at a later date without further notice. The court, after notice and a hearing, may order that the United States trustee not convene the meeting if the debtor has filed a plan for which the debtor solicited acceptances before filing the case. |
| Claims | A Proof of Claim is a signed statement describing a creditor's claim. If a Proof of Claim form is not included with this notice, you can obtain one at any bankruptcy clerk's office. You may look at the schedules that have been or will be filed at the bankruptcy clerk's office. If your claim is scheduled and is not listed as disputed, contingent, or unliquidated, it will be allowed in the amount scheduled unless you filed a Proof of Claim or you are sent further notice about the claim. Whether or not your claim is scheduled, you are permitted to file a Proof of Claim. If your claim is not listed at all *or* if your claim is listed as disputed, contingent, or unliquidated, then you must file a Proof of Claim by the "Deadline to File Proof of Claim" listed on the front side, or you might not be paid any money on your claim and may be unable to vote on the plan. A secured creditor retains rights in its collateral regardless of whether that creditor files a Proof of Claim. Filing a Proof of Claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a Proof of Claim may surrender important nonmonetary rights, including the right to a jury trial. **Filing Deadline for a Foreign Creditor:** The deadlines for filing claims set forth on the front of this notice apply to all creditors. If this notice has been mailed to a creditor at a foreign address, the creditor may file a motion requesting the court to extend the deadline. |
| Discharge of Debts | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of your debt. See Bankruptcy Code § 1141(d). A discharge means that you may never try to collect the debt from the debtor, except as provided in the plan. If you believe that a debt owed to you is not dischargeable under Bankruptcy Code § 1141(d)(6)(A), you must start a lawsuit by filing a complaint in the bankruptcy clerk's office by the "Deadline to File a Complaint to Determine Dischargeability of Certain Debts" listed on the front side. The bankruptcy clerk's office must receive the complaint and any required filing fee by that Deadline. |
| Bankruptcy Clerk's Office | Any paper that you file in this bankruptcy case should be filed at the bankruptcy clerk's office at the address listed on the front side. You may inspect all papers filed, including the list of the debtor's property and debts and the list of the property claimed as exempt, at the bankruptcy clerk's office. |
| Foreign Creditors | Consult a lawyer familiar with United States bankruptcy law if you have any questions regarding your rights in this case. |

## — Refer to Other Side for Important Deadlines and Notices —

EXHIBIT
**3**

Blumberg No. 5119

**UNITED STATES BANKRUPTCY COURT**
MIDDLE DISTRICT OF ALABAMA

**PROOF OF CLAIM**
ONE OF ONE

In re:
LAKE MARTIN PARTNERS, L.L.C.

Case Number
07-11470
Chapter 11

NAME OF CREDITOR:
Empire Financial Services, Inc., as Agent
NAME AND ADDRESS WHERE DISTRIBUTIONS SHOULD BE SENT:
Empire Financial Services, Inc.
ATTN: David Dyer, Jr.
121 Executive Parkway
Milledgeville, GA 31061

NAME AND ADDRESS WHERE NOTICES SHOULD BE SENT:
Robert P. Reynolds, Esq.
Post Office Box 2863
Tuscaloosa, Alabama 35403
Telephone (205) 391-0073
rreynolds@rrdlaw.com
ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:
641

1. BASIS FOR CLAIM:  Money Loaned
2. DATE DEBT WAS INCURRED: September 26, 2005
3. IF COURT JUDGMENT, DATE OBTAINED:  N/A
4. CLASSIFICATION OF CLAIM:

SECURED $ 17,983,853.50   UNSECURED $  0   TOTAL $ 17,983,853.50  *
Plus post-petition interest at 8.50% per annum plus additional fees, costs, and expenses allowable under § 506 (b)

|  |  |
|---|---|
| Description of Collateral: | Collateral Value: |
| All real and personal property of Debtor | $ In Excess of Debt |
| Total Collateral Value: | $ In Excess of Debt |

CREDITS AND SETOFFS.  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
SUPPORTING DOCUMENTS ARE ATTACHED

DATE: October 19, 2007

EMPIRE FINANCIAL SERVICES, INC.

    /s/   Robert P. Reynolds
BY: Robert P. Reynolds (REYNR4202)
Its Authorized Attorney
File No. 358.11

PENALTY FOR PRESENTING FRAUDULENT CLAIM: FINE OF UP TO $500,000 OR
IMPRISONMENT FOR UP TO 5 YEARS, OR BOTH.  18 U.S.C. §§152 and 3571.
POC 1.358.11.wpd

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No. 07-11470- |
| LAKE MARTIN PARTNERS, LLC, | ) | |
| | ) | |
| Debtor. | ) | |

## EXHIBITS TO PROOF OF CLAIM OF EMPIRE FINANCIAL SERVICES, INC.
## AS AGENT FOR LOAN PARTICIPANTS

1)   Note

2)   Mortgage

3)   Assignment of Leases and Rents

4)   Assignment of Fees and Income

5)   Title Insurance Policy

6)   Security Agreement

7)   UCC-1 Financing Statement

8)   Construction Loan Agreement

9)   Payoff Statement


Exhibits 1,2,3,4,6 and 8 are not attached due to size but are available upon request to counsel for Creditor.


/s/ Robert P. Reynolds
Robert P. Reynolds   (REYNR4202)
Attorney for Empire Financial Services, Inc.

OF COUNSEL
REYNOLDS, REYNOLDS & DUNCAN, P.C.
Post Office Box 2863
Tuscaloosa, Alabama 35403-2863
Telephone: 205-391-0073
Fax No. 205-391-0911
Email: rreynolds@rrdlaw.com
File No. 358.11
ExhibitstoProofofClaim.368.11.wpd

# LOAN POLICY OF TITLE INSURANCE

Issued by **Lawyers Title Insurance Corporation**



EXHIBIT
**5** of
Proof
of Claim

 **LandAmerica**
**Lawyers Title**

*Lawyers Title Insurance Corporation is a member of the LandAmerica family of title insurance underwriters.*

**POLICY NUMBER**
G47-2944304

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, LAWYERS TITLE INSURANCE CORPORATION has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

**LAWYERS TITLE INSURANCE CORPORATION**

Attest:

Secretary



S E A L
1925
RICHMOND, VA

By:

President

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (i) to timely record the instrument of transfer; or
      (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

NM 2  PA 20
Dbl. Cover – 1992 ALTA Loan Policy
**Form 1191-68C**

**ORIGINAL**

NJRB 2-08
Valid only if Schedules A and B are attached

CONDITIONS AND STIPULATIONS

**1.    DEFINITION OF TERMS.**

The following terms when used in this policy mean:

(a)    "insured": the insured named in Schedule A. The term "insured" also includes

(i)    the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

(ii)    any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

(iii)    the parties designated in Section 2(a) of these Conditions and Stipulations.

(b)    "insured claimant": an insured claiming loss or damage.

(c)    "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d)    "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e)    "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f)    "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g)    "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

**2.    CONTINUATION OF INSURANCE.**

(a)    After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b)    After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c)    Amount of Insurance. The amount of insurance after the acquisition or after conveyance shall in neither event exceed the least of:

(i)    the Amount of Insurance stated in Schedule A;

(ii)    the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii)    the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

**3.    NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.**

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

**4.    DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.**

(a)    Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any

third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b)    The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c)    Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d)    In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

**5.    PROOF OF LOSS OR DAMAGE.**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**6.    OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.**

In case of a claim under this policy, the Company shall have the following additional options:

(a)    To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i)    to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii)    to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b)    To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

ISSUED BY

# Lawyers Title Insurance Corporation
A LANDAMERICA COMPANY

GENERAL POLICY
ENDORSEMENT

Case No. Lake Martin Partners

**Attached to and made part of Lawyers Title Insurance Corporation Policy Number:**

### ACCESS ENDORSEMENT
*The Company insures the Insured that said land described in Schedule A of said policy abuts upon a physically open street(s) know as:*
*Sunset Point Drive and Lakeview Ridge*

*and the Company hereby insures said Assured against loss which said Assured shall sustain in the event said assurances herein shall prove to be incorrect.*

The total liability of the Company under said policy, binder or commitment under this and any prior endorsements thereto shall not exceed, in the aggregate, the amount of liability stated on the face of said policy, binder or commitment, as the same may be specifically amended in dollar amount by this or any prior endorsements, and the costs which the Company is obligated to pay under the Conditions and Stipulations of the policy.

This endorsement is made a part of said policy, binder or commitment and is subject to all of the terms and provisions thereof, except as modified by the provisions hereof.

Nothing herein contained shall be construed as extending or changing the effective date of the aforesaid policy, binder or commitment unless otherwise expressly stated.

IN WITNESS WHEREOF, LAWYERS TITLE INSURANCE CORPORATION has caused this Endorsement to be signed and sealed to become valid when countersigned by an authorized officer or agent of the Company, all in accordance with its By-Laws.

**LAWYERS TITLE INSURANCE CORPORATION**

Dated    September 27, 2005

Countersigned at

By: _____
Authorized Officer or Agent

By: _____ President

Attest: _____ Secretary

End. – 91-11A General Policy



**Lawyers Title Insurance Corporation**

NATIONAL HEADQUARTERS
Richmond, Virginia

EE  644211

### ENDORSEMENT

Attached to and made a part of Lawyers Title Insurance Corporation Policy No.  G47-2944304

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1. Any incorrectness in the assurance that, at Date of Policy:

   (a) There are no covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.

   (b) Unless expressly excepted in Schedule B:

      (1) There are no present violations on the land of any enforceable covenants, conditions or restrictions, nor do any existing improvements on the land violate any building setback lines shown on a plat of subdivision recorded or filed in the public records.

      (2) Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land does not, in addition, (i) establish an easement on the land; (ii) provide a lien for liquidated damages; (iii) provide for a private charge or assessment; (iv) provide for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.

      (3) There is no encroachment of existing improvements located on the land onto adjoining land, nor any encroachment onto the land of existing improvements located on adjoining land.

      (4) There is no encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.

      (5) There are no notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records.

2. Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest in the land by the insured, provided the violation results in:

   (a) invalidity, loss of priority, or unenforceability of the lien of the insured mortgage; or

   (b) loss of title to the estate or interest in the land if the insured shall acquire title in satisfaction of the indebtedness secured by the insured mortgage.

3. Damage to existing improvements, including lawns, shrubbery or trees:

   (a) which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved;

   (b) resulting from the future exercise of any right to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B.

4. Any final court order or judgment requiring the removal from any land adjoining the land of any encroachment excepted in Schedule B.

5. Any final court order or judgment denying the right to maintain any existing improvements on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat of subdivision recorded or filed in the public records.

Wherever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a lease.

As used in paragraphs 1(b)(1) and 5, the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is made a part of the policy and is subject to all of the terms and provisions thereof and any prior endorsements thereto. Except to the extent expressly stated, it neither modified any of the terms and provisions of the policy and any prior endorsements, nor does it extend the effective date of the policy and any prior endorsements, nor does it increase the face amount thereof.

IN WITNESS WHEREOF, the Company has caused this Endorsement to be signed and sealed as of the 27th day of September, 2005 , 19    , to be valid when countersigned by an authorized officer or agent of the Company, all in accordance with its By-Laws.

**Lawyers Title Insurance Corporation**

By: _Marvin C. Bowling, Jr._    President

Attest: _____    Secretary

Issued at Dadeville, Alabama

COUNTERSIGNED

_____
Authorized Officer or Agent

FORM 91-201
035-2-091-2010/1

ORIGINAL

ALTA Endorsement Form 9
(Restrictions, Encroachments, Minerals)

Issued with Policy No.

## SCHEDULE A

| FILE NO. | DATE OF POLICY | AMOUNT OF INSURANCE | PREMIUM | POLICY NO. |
|---|---|---|---|---|
| | 2:10 P.M. Sept. 27, 2005 | $22,000,000.00 | $27,145.00* | G47-2944304 |

*includes $2,200 for Alta 9 and
$100.00 for Access endorsement

1. Name of Insured:

    Empire Financial Services, Inc.

2. The estate or interest in the land which is encumbered by the insured mortgage is:

    Fee simple

3. Title to the estate or interest in the land is vested in:

    Lake Martin Partners, L.L.C., an Alabama limited liability company

4. The insured mortgage and assignments thereof, if any, are described as follows:

    Mortgage dated September 26, 2005, executed by Lake Martin Partners, LLC,
    in favor of Empire Financial Services, Inc., recorded in the Office of
    the Judge of Probate of Tallapoosa County, Alabama, on September 27, 2005,
    at Card No. 208231.

5. The land referred to in this Policy is described as set forth in the insured mortgage, is situated in the County of
    Tallapoosa                  , State of     Alabama                    , and is identified as follows:

    See attached Exhibit A which is incorporated herein and made a part
    hereof by reference.

Oliver-Treadwell, P.C.

Countersigned: _____                    Dadeville, Alabama
                          Authorized Officer or Agent

ALTA Loan / Construction Loan
Schedule A
**Form 1191-13**                    ORIGINAL

| FILE NO. | | POLICY NO. |
|---|---|---|

**SCHEDULE B**
**PART I**

**EXCEPTIONS FROM COVERAGE**

POLICY NO. G47-2944304

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes due and payable October 1, 2005, and subsequent years.
2. Possible unfiled mechanics' and materialmen's liens.
3. Title to all minerals within and underlying the premises together with all mining rights and other rights, privileges and immunities relating thereto. The policy issued pursuant to this binder will give affirmative coverage over this exception as follows: This policy insures against loss or damage which the insured may sustain through the use of the surface of insured premises, not consented to by the insured, in the exercise of such mining rights.
4. Any unpaid fire district or residential association assessments.
5. The Alabama Power Company pursuant to agreements with the Federal Energy Regulatory Commission (FERC) is required to regulate the use of any real estate below the 490 foot contour line of Lake Martin.
6. Flood rights of Alabama Power Company up to the 490 foot contour of Lake Martin.
7. Any adverse claim to any portion of said land which has been created by artificial means or has accreted to any such portion so created.
8. Rights of other parties, the United States of America or State of Alabama, in and to the shore, littoral or riparian rights to the property herein above described.
9. The property herein described is subject to those easements as reflected on the plat of that subdivision known Sunset Point Subdivision Phase 4 recorded in Plat Book 10, Page 45, Office of the Judge of Probate of Tallapoosa County, Alabama.
10. Declaration of Restrictions and Protective Covenants for Still Waters recorded at Card No. 41595, Card No. 134872 as amended by First Amendment recorded at Card No. 147947, as amended by Second Amendment recorded at Card No. 149969, and Third Amendment as recorded at Card No. 185622 and re-recorded at Card No. 186258, and amendments recorded at Card Numbers 103205, 106307, 108534 and 134872, Probate Office of Tallapoosa County, Alabama.
11. Title to that part of the premises described herein lying below a line measured 30 feet horizontally and inland from a contour commonly known as the 490 foot contour of Lake Martin (high water line) as established and reserved by Alabama Power Company, said 30 foot wide strip being the property of Alabama Power Company.
12. Drainage easement along the West property line of Lot 6B.
13. **Pending disbursement of the full proceeds of the loan secured by the mortgage set forth under Schedule A hereof, this policy insures only to the extent of the amount actually disbursed, but increases as each disbursement is made in good faith and without knowledge of any defects in, or objections to, the title, up to the face amount of the policy. At the time of each disbursement of the proceeds of the loan, the title must be continued down to such time for possible liens or objections intervening between the date hereof and the date of such disbursement.**
14. UCC Financing Statement recorded at UCC No. 12630 in the Office of the Judge of Probate of Tallapoosa County, Alabama.

**PART II**

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon the estate or interest:

Assignment of Leases and Rents recorded at Card No. 208232; Assignment of Fees and Income recorded at Card No. 208233; and Notice of Loan Participation recorded at Card No. 208234, all recorded in the Office of the Judge of Probate of Tallapoosa County, Alabama.

ALTA Loan Policy (10-17-92)
Schedule B - Parts I & II
**Form 1191-70**

**ORIGINAL**

Exhibit A

Lots 6 and 7

ALL THAT TRACT or parcel of land lying and being in Section 1 , Township 20 North, Range 22 East, Tallapoosa County, Alabama, being more particularly described as follows:

BEGINNING at the intersection of the southeasterly right-of-way line of Sunset Point Drive (right-of-way varies) and the westerly right-of-way line of Lakeview Drive (right-of-way varies); Run thence along the right-of-way of Lakeview Drive the following two (2) courses and distances: (1) Along a curve to the right (said curve having a radius of 649.30 feet, a chord direction of South 23°57'49" East, and a chord length of 362.63 feet) 367.52 feet to a Point, and (2) South 07°04'54" East a distance of 326.24 feet to a Point on the property line of Church of the Living Waters; Run thence along the property line of Church of the Living Waters South 40°14'13" West a distance of 215.97 feet to a Point; Continue thence along the property line of Church of the Living Waters South 08°53'16" East a distance of ±197 feet to the edge of Martin Lake; Run thence along the edge of Martin Lake southwesterly, westerly, and northerly, a distance of 1598 feet to a Point on the property line of Sunset Point Condominium IV Phase 1; Run thence along said property line North 34°24'55" East a distance of ±96 feet to a 1/2" rebar pin with cap; Continue thence along said property line North 10°58'29" East a distance of 96.39 feet to a 1/2" rebar pin with cap on the southerly right-of-way line of Sunset Point Drive; Run thence along said right-of-way line the following eight (8) courses and distances: (1) North 87°51'42" East a distance of 74.40 feet to a Point, (2) along a curve to the left (said curve having a radius of 527.40 feet, a chord direction of North 85°29'42" East, and a chord length of 15.76 feet) 15.76 feet to a Point, (3) along a curve to the left (said curve having a radius of 527.40 feet, a chord direction of North 76°39'35" East, and a chord length of 146.42 feet) 146.89 feet to a Point, (4) along a curve to the left (said curve having a radius of 527.40 feet, a chord direction of North 64°40'05" East, and a chord length of 73.81 feet) 73.87 feet to a Point, (5) along a curve to the right (said curve having a radius of 527.40 feet, a chord direction of North 65°00'56" East, and a chord length of 80.19 feet) 80.27 feet to a Point, (6) along a curve to the right (said curve having a radius of 527.40 feet, a chord direction of North 71°11'32" East, and a chord length of 33.43 feet) 33.44 feet to a Point, (7) along a curve to the left (said curve having a radius of 146.36 feet, a chord direction of North 46°41'25" East, and a chord length of 135.37 feet) 140.73 feet to a Point, and (8) North 19°08'42" East a distance of 99.48 feet to the POINT OF BEGINNING.

This is intended to be the same property as Lot 7 and the portion of Lot 6 east of the 20' drainage easement centerline of Sunset Point Subdivision Phase 4 recorded in Plat Book 10 Page 45 of the Tallapoosa County records. [Now Lot 6B and Lot 7 of that resubdivision of Lot 6 of Sunset Point Subdivision Phase 4 recorded at Plat Book 10, Page 65, Office of the Judge of Probate of Tallapoosa County, Alabama

Lot 1

ALL THAT TRACT or parcel of land lying and being in Section 2, Township 20 North, Range 22 East, Tallapoosa County, Alabama, being more particularly described as follows:

To find the POINT OF BEGINNING, Commence at the southeast corner of Section 2, Township 20 North, Range 22 East; Run thence North 02°47'35" West a distance of 1817.00 feet to a 1/2" rebar found on the northerly right-of-way line of Sunset Point Drive and the POINT OF BEGINNING.

From the POINT OF BEGINNING, run thence along a curve to the right (said curve having a radius of 166.00 feet, a chord direction of North 63°02'17" West, and a chord length of 168.72 feet) 176.99 feet to a Point; Run thence along a curve to the right (said curve having a radius of 358.40 feet, a chord direction of North 21°22'53" West, and a chord length of 142.82 feet) 143.78 feet to a Point; Run thence North 09°53'18" West a distance of 244.81 feet to a Point; Run thence along a curve to the left (said curve having a radius of 285.37 feet, a chord direction of North 31°18'01" West, and a chord length of 208.36 feet) 213.29 feet to a Point; Run thence along a curve to the left (said curve having a radius of 237.84 feet, a chord direction of North 52°54'57" West, and a chord length of 1.65 feet) 1.65 feet to a 1/2" rebar pin found; Run thence North 35°36'31" East a distance of 33.15 feet to a 1/2" rebar pin on the southerly edge of Lake Martin; Run thence along said southerly edge of Lake Martin a distance of ±342 feet to a 1/2" rebar pin found at the property corner of Lot 2, Sunset Point Subdivision Phase 4; Run thence along the property line of Lot 2 South 13°03'22" East a distance of 440.61 feet to the POINT OF BEGINNING.

This is intended to be the same property as Lot 1 of Sunset Point Subdivision Phase 4 recorded in Plat Book 10 Page 45 of the Tallapoosa County records.

## CONDITIONS AND STIPULATIONS
(continued)

(i)    to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii)    to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**DETERMINATION AND EXTENT OF LIABILITY.**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a)    The liability of the Company under this policy shall not exceed the least of:

(i)    the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii)    the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii)    the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b)    In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c)    The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

8.    **LIMITATION OF LIABILITY.**

(a)    If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b)    In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c)    The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d)    The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

9.    **REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.**

(a)    All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b)    Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c)    Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

10.    **LIABILITY NONCUMULATIVE.**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

11.    **PAYMENT OF LOSS.**

(a)    No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or

destruction shall be furnished to the satisfaction of the Company.

(b)    When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

12.    **SUBROGATION UPON PAYMENT OR SETTLEMENT.**

(a)    The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b)    The Insured's Rights and Limitations.

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c)    The Company's Rights Against Non-insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

13.    **ARBITRATION.**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

14.    **LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**

(a)    This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b)    Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c)    No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

15.    **SEVERABILITY.**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

16.    **NOTICES, WHERE SENT.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at Consumer Affairs Department, P.O. Box 27567, Richmond, Virginia 23261-7567.



EXHIBIT 7
of Proof of Claim

FEB 1 3 2006

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| A. NAME & PHONE OF CONTACT AT FILER [optional] |
|---|
| Sandy Smith (478) 453-9415 |

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Empire Financial Services, Inc.
121 Executive Parkway
Milledgeville, GA 31061

Alabama
Sec. Of State
B 06-0111724 FS
Date 1/09/2006
Time 17:00
050207    5 Pg

File        $20.00
ExPg         $6.00
Ackn           $.00
Form           $.00
Total       $26.00
03/006

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Lake Martin Partners, L.L.C. | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 124 S. Woodburn | Dothan | AL | 36305 | USA |

| | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | Ltd. Liability Co. | Alabama | ☑ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Empire Financial Services, Inc. | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 121 Executive Parkway | Milledgeville | GA | 31061 | USA |

4. This FINANCING STATEMENT covers the following collateral:

See Exhibit "A" (Real Estate) and Exhibit "B" (Collateral) attached hereto and made a part hereof

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
#637

ACKNOWLEDGMENT COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Exhibit A

Lots 6 and 7
ALL THAT TRACT or parcel of land lying and being in Section 1 , Township 20 North, Range 22 East, Tallapoosa County, Alabama, being more particularly described as follows:

BEGINNING at the intersection of the southeasterly right-of-way line of Sunset Point Drive (right-of-way varies) and the westerly right-of-way line of Lakeview Drive (right-of-way varies); Run thence along the right-of-way of Lakeview Drive the following two (2) courses said distances: (1) Along a curve to the right (said curve having a radius of 649.30 feet, a chord direction of South 23°37'49" East, and a chord length of 362.63 feet) 367.52 feet to a Point, and (2) South 07°24'54" East a distance of 326.24 feet to a Point on the property line of Church of the Living Waters; Run thence along the property line of Church of the Living Waters South 40°14'13" West a distance of 215.97 feet to a Point; Continue thence along the property line of Church of the Living Waters South 08°33'16" East a distance of ±197 feet to the edge of Martin Lake:  Run thence along the edge of Martin Lake southwesterly, westerly, and northerly, a distance of 1598 feet to a Point on the property line of Sunset Point Condominium IV Phase 1; Run thence along said property line North 34°24'55" East a distance of ±96 feet to a 1/2" rebar pin with cap; Continue thence along said property line North 10°58'29" East a distance of 96.39 feet to a 1/2" rebar pin with cap on the southerly right-of-way line of Sunset Point Drive; Run thence along said right-of-way line the following eight (8) courses and distances: (1) North 87°51'42" East a distance of 74.40 feet to a Point, (2) along a curve to the left (said curve having a radius of 527.40 feet, a chord direction of North 85°29'42" East, and a chord length of 15.76 feet) 15.76 feet to a Point, (3) along a curve to the left (said curve having a radius of 527.40 feet, a chord direction of North 76°39'35" East, and a chord length of 146.42 feet) 146.89 feet to a Point, (4) along a curve to the left (said curve having a radius of 527.40 feet, a chord direction of North 64°40'05" East, and a chord length of 73.81 feet) 73.87 feet to a Point, (5) along a curve to the right (said curve having a radius of 527.40 feet, a chord direction of North 65°00'56" East, and a chord length of 80.19 feet) 80.27 feet to a Point, (6) along a curve to the right (said curve having a radius of 527.40 feet, a chord direction of North 71°11'32" East, and a chord length of 33.43 feet) 33.44 feet to a Point, (7) along a curve to the left (said curve having a radius of 146.36 feet, a chord direction of North 46°41'25" East, and a chord length of 135.37 feet) 140.73 feet to a Point, and (8) North 19°08'42" East a distance of 99.48 feet to the POINT OF BEGINNING.

This is intended to be the same property as Lot 7 and the portion of Lot 6 east of the 20' drainage easement centerline of Sunset Point Subdivision Phase 4 recorded in Plat Book 10 Page 45 of the Tallapoosa County records. (Now Lot 6B and Lot 7 of thtat resubdivision of Lot 6 of Sunset Point Subdivision Phase 4 recorded at Plat Book 10, Page 65, Office of the Judge of Probate of Tallapoosa County, Alabama

Lot 1
ALL THAT TRACT or parcel of land lying and being in Section 2, Township 20 North, Range 22 East, Tallapoosa County, Alabama, being more particularly described as follows:

To find the POINT OF BEGINNING, Commence at the southeast corner of Section 2, Township 20 North, Range 22 East; Run thence North 02°47'35" West a distance of 1817.00 feet to a 1/2" rebar found on the northerly right-of-way line of Sunset Point Drive and the POINT OF BEGINNING.

From the POINT OF BEGINNING, run thence along a curve to the right (said curve having a radius of 166.00 feet, a chord direction of North 63°02'17" West, and a chord length of 168.72 feet) 176.99 feet to a Point; Run thence along a curve to the right (said curve having a radius of 358.40 feet, a chord direction of North 21°22'53" West, and a chord length of 142.82 feet) 143.78 feet to a Point; Run thence North 09°53'18" West a distance of 244.81 feet to a Point; Run thence along a curve to the left (said curve having a radius of 285.37 feet, a chord direction of North 31°18'01" West, and a chord length of 208.36 feet) 213.29 feet to a Point; Run thence along a curve to the left (said curve having a radius of 237.84 feet, a chord direction of North 52°54'57" West, and a chord length of 1.65 feet) 1.65 feet to a 1/2" rebar pin found; Run thence North 35°36'31" East a distance of 33.15 feet to a 1/2" rebar pin on the southerly edge of Lake Martin; Run thence along said southerly edge of Lake Martin a distance of ±342 feet to a 1/2" rebar pin found at the property corner of Lot 2, Sunset Point Subdivision Phase 4; Run thence along the property line of Lot 2 South 13°03'22" East a distance of 440.61 feet to the POINT OF BEGINNING.

This is intended to be the same property as Lot 1 of Sunset Point Subdivision Phase 4 recorded in Plat Book 10 Page 45 of the Tallapoosa County records.

## EXHIBIT "B"

### THE TYPES OR ITEMS OF COLLATERAL COVERED BY THIS INSTRUMENT ARE AS FOLLOWS:

Any and all buildings, structures and improvements now or hereafter located on that certain lot piece or parcel of land described on Exhibit "A" attached hereto and by this reference incorporated herein and made a part hereof and all right, title and interest, if any, of Borrower in and to the street and roads abutting said land to the center lines thereof, the strips and gores within or adjoining said land; the air space and right to use said air space above said land, all rights of ingress and egress by pedestrians and motor vehicles to parking facilities on or within said land, and all rights appertaining to the use and enjoyment of said land, and all rights appertaining to alley, drainage, sewer, mineral, water, oil and gas rights, right of way, vaults, ways, passages, water courses, water rights and powers, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances whatsoever, in any way belonging, relating or appertaining to the land or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Borrower and the reversion and reversions, remainder and remainders (said land, together with said buildings and improvements, the property and other rights, privileges and interests encumbered and conveyed hereby, are hereinafter collectively referred to as the "Premises"):

**TOGETHER WITH** all fixtures and articles of personal property and all appurtenances and additions thereto and substitutions or replacements thereof, owned by Borrower and now or hereafter attached to, contained in, or used in connection with the Premises or placed on any part thereof, though not attached thereto, including, but not limited to, all screens, awnings, shades, blinds, curtains, draperies, carpets, rugs, furniture and furnishings, heating, lighting, plumbing, ventilating, air conditioning, refrigerating, incinerating and elevator plants, stoves, ranges, vacuum cleaning systems, call systems, sprinkler systems and other fire prevention and extinguishing apparatus and materials, motors, machinery, pipes, appliances, equipment, fittings, fixtures and articles of personal property all of which are hereby declared and shall be deemed to be fixtures and accessions to the freehold and a part of the Premises as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness secured; and the trade name, good will and books and records and computer software relating to the business operated on the Premises; together with all of Borrower's right, title and interest, whether now existing or hereafter acquired, in all of its accounts (including without limitation health-care receivables), chattel paper (whether tangible or electronic), deposit accounts, documents, general intangibles (including without limitation payment intangibles and software), goods (including without limitation inventory, equipment, fixtures and accessions), instruments (including without limitation promissory notes), investment property, letter-of-credit rights, letters of credit, money, supporting obligations, as-extracted collateral, timber to be cut and all proceeds and products of the foregoing, in each case as such terms are defined under the Uniform Commercial Code as in effect from time to time in the state named on Exhibit C, (sometimes called the "Secured Property") and Secured Party shall have, in addition to all rights and remedies provided herein, and in any other agreements, commitments and undertakings made by Borrower to Secured Party, all of the rights and remedies of a "secured party" under the said Uniform Commercial Code; and if the lien of the security agreement is subject to a security interest covering any such personal property, then together with all right, title and interest of Borrower in and to any and all such property, together with the benefits of all deposits and payments now or hereafter made thereon by Borrower;

Empire/Exhibit "B"/UCC
CEM/jdm

1 of 2

TOGETHER WITH all leases, lettings and licenses of the Premises or any part thereof now or hereafter entered into and all right, title and interest of Borrower thereunder, and the rents, issues, profits, accounts, accounts receivable and revenues of the Premises from time to time accruing and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Borrower of, in and to the same and including, without limitation, the right to receive and collect the rents, issues and profits payable thereunder. Provided, however, that, to the extent the items of collateral described in this paragraph have been assigned to the Secured Party by separate instrument(s) and all rights and interests of the Secured Party are thereby deemed perfected, such items of collateral shall not be covered by this instrument; otherwise, they shall;

TOGETHER WITH all unearned premiums, accrued, accruing or to accrue under insurance policies now or hereafter obtained by Borrower covering the Secured Property and all proceeds of the conversion, voluntary or involuntary, of the Secured Property or any part thereof into cash or liquidated claims, including, without limitation, proceeds of hazard and title insurance and all awards and compensation heretofore and hereafter made to the present and all subsequent owners of the Secured Property by any governmental or other lawful authorities for the taking by eminent domain, condemnation or otherwise, of all or any part of the Secured Property or any easement therein, including awards for any change of grade of streets;

TOGETHER WITH all right, title and interest of Borrower in and to all extensions, improvements, betterments, renewals, substitutes and replacements of, and all additions and appurtenances to, the Secured Property, hereafter acquired by, or released to, Borrower, or constructed, assembled or placed by Borrower on the Secured Property, and all conversions of the security constituted thereby, immediately upon such acquisition, release, construction, assembling, placement or conversion, as the case may be, and in each such case, without any further conveyance, assignment or other act by Borrower, shall become subject to the lien of the security agreement as fully and completely, and with the same effect, as though now owned by Borrower and specifically described herein;

TOGETHER WITH all fees, charges, accounts, and other payments for the use or occupancy of rooms and other public facilities in or on the property described on Exhibit "A" or derived from or attributable to services rendered thereon (where the Premises and Secured Property are used in the operation of a hotel, motel, extended-stay or other lodging facility). Provided, however, that, to the extent the items of collateral described in this paragraph have been assigned to the Secured Party by separate instrument(s) and all rights and interests of the Secured Party are thereby deemed perfected, such items of collateral shall not be covered by this instrument; otherwise, they shall;

TOGETHER WITH all fees, charges, money, accounts and other payments made to Borrower as a result of operation of business activities on the property described on Exhibit "A," or to which Borrower may be entitled, as a result of such operation, and all other fees and income derived from said property or any part or parts thereof, regardless of source. Provided, however, that, to the extent the items of collateral described in this paragraph have been assigned to the Secured Party by separate instrument(s) and all rights and interests of the Secured Party are thereby deemed perfected, such items of collateral shall not be covered by this instrument; otherwise, they shall;

TOGETHER WITH any and all cash and non-cash proceeds of the foregoing.

EXHIBIT "C"

1.    The correct legal name of the Borrower is LAKE MARTIN PARTNERS, L.L.C.

2.    The Borrower is a Limited Liability Company registered under the laws of the State of Alabama.

3.    The Borrower's chief executive office is located at 124 South Woodburn, Dothan, Alabama 36305.

4.    Borrower's social security number/taxpayer identification number is 20-1965019.

5.    Law of the state in which the real estate is located governs (a) attachment, (b) perfection of possessory security interests and security interests in fixtures, timber to be cut, as - extracted collateral from a wellhead or mine, and crops, and (c) the effect of perfection, non-perfection and priority of non-possessory security interests.  Law of the state in which the Borrower is registered shall govern all other matters.

# 𝓔𝓶𝓹𝓲𝓻𝓮 𝓕𝓲𝓷𝓪𝓷𝓬𝓲𝓪𝓵 𝓢𝓮𝓻𝓿𝓲𝓬𝓮𝓼, 𝓘𝓷𝓬.



121 EXECUTIVE PARKWAY
MILLEDGEVILLE, GEORGIA 31061          www.empfinserv.com          TELEPHONE 478 453-9415
                                                                 FAX        478 452-2950

October 19, 2007


Jim Paxton
c/o Southeastern Apparel
142 South Woodburn Drive
Dothan, AL  36305

RE:  Loan # 637 Lake Martin Partners, LLC

Dear Mr. Paxton:

As per your request, listed below you will find the payoff on the above referenced loan as of  October 19, 2007.

        Principal Balance....................'...... $17,615,212.51
        Interest ...................................   342,893.38
        Legal Fees .................................    12,500.00
        Late Charge .............................       13,247.61
        Total Payoff ............................  $17,983,853.50
        Per Diem:  $4,102.17

The interest rate changed as of October 1, 2007 to 8.50%.

Sincerely,

Denise H. Wansley
Assistant Operations Officer



**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | Case No. 07-11470 |
| LAKE MARTIN PARTNERS, LLC, | ) | |
| | ) | |
| Debtor. | ) | |

## FINAL ORDER APPROVING POST-PETITION FINANCING BETWEEN DEBTOR AND EMPIRE FINANCIAL SERVICES, INC.

This matter came to be heard on November 21, 2007 upon the Debtor's Motion for the entry of an Order:

(1)    Authorizing the Debtor to borrow money post-petition; and,

(2)    Granting liens and priority administrative expense claims to Empire Financial Services, Inc. ("Empire Financial"); and,

(3)    Approving the waiver by the Debtor of potential claims of the Debtor against Empire Financial (the "Financing Motion").

Based upon the Financing Motion, arguments of counsel, the pleadings and other evidence, the Court hereby FINDS AND ORDERS AS FOLLOWS:

1.    The Financing Motion was filed and served on October 22, 2007. Service of the Financing Motion pursuant to the Certificate of Service attached thereto was adequate and reasonable under the circumstances. An Order was issued by the Court on October 30, 2007 setting a final hearing on any objections to the Financing Motion for November 21, 2007, at 11 a.m. (the "Final Hearing") One objection was filed to the Financing Motion by EAS Contractors, Inc., joined by Building Materials Wholesaler, Inc., which objections to the approval of the Financing Motion sought by the Debtor at the Final Hearing (the "Financing") were withdrawn based upon the stipulations on the record at the Final Hearing.

2.    Empire Financial is the prepetition construction lender to the Debtor. Empire Financial has filed a Secured Proof of Claim in this case in the amount of $17,983,853.50 designated as claim number one in this proceeding. The Court finds that the Debtor admits the amount, validity, priority and secured status of the Claim of Empire Financial, without prejudice of the rights of other parties in interest with regard to these matters.

3.    There is no alternative financing available to the Debtor on terms more favorable than the terms provided by Empire Financial; the Financing is an exercise of the Debtor's sound and reasonable judgment; the Financing is in the best interest of the Debtor's estate (the "Estate") and its creditors; the Financing is necessary to preserve assets of the Estate, and is necessary, essential and appropriate to enable the Debtor to complete Building 5 of the Stoneview Summit Condominium Project and, subject to the discretion of Empire Financial and the Debtor, the completion of two other partially completed buildings (collectively, the "Project") that are the  Debtor's primary asset, the sale of which is likely the sole source of funding of distributions to creditors of the Estate; the terms and conditions of the Financing are fair, reasonable, and adequate under the circumstances presented to the Court; and the Financing is necessary to avoid immediate and irreparable harm to the Debtor.

4.    Accordingly, the Financing Motion, as outlined on the record, is approved in its entirety on a final basis pursuant to Rule 4001(c).  Debtor for itself and its successors and assigns, is hereby deemed to waive its rights to challenge the pre-petition liens and secured claim of Empire Financial, and further waives all claims against Empire Financial, its participants, officers and other related parties under §506 (c) of the Bankruptcy Code without prejudice of the rights of other parties in interest with regard to these matters.  The Debtor is hereby authorized to obtain from Empire Financial the full proposed post-petition financing amount, subject to this

Order and the terms, conditions and Debtor releases set forth in (a) the post-petition financing term sheet (the "Term Sheet") attached to the Financing Motion and also attached hereto as Exhibit "A", and (b) and the existing construction loan agreement between the Debtor and Empire Financial (except as modified by the Term Sheet and this Order and except to the extent that the obligations would be prevented by conditions existing as of the Petition Date).

5.      The Debtor is authorized to obtain the Financing from Empire Financial, and to utilize the proceeds of same (1) to obtain completion of "Building 5" and other buildings located in the Project, (2) to obtain completion of any Project common areas necessary to obtain applicable certificates of occupancy (3) to pay such other costs and expenses necessary, in the reasonable opinion of Empire Financial and the Debtor, for the security, care and preservation of the Project, (4) to pay interest on the Financing and the origination fee on the amount above of the Interim Financing as funds are advanced, and (5) to pay such other reasonable costs and expenses of Empire Financial related to the Financing as are payable under the Term Sheet with the exception of attorney fees and expenses which shall be paid in the same percentages set forth in the existing order for payment of professionals entered in this case and subject to final application and approval by the Court. Any of the Debtor's managers shall be authorized to execute a promissory note and any and all other documents deemed necessary, in the reasonable opinion of Empire Financial, to effectuate the Loan.

6.      This Order shall not preclude the Debtor from seeking from Empire Financial or other entities additional post-petition financing as may be approved by this Court upon proper notice and the opportunity for a hearing.

7.      The Debtor shall file with the Court a monthly statement of construction and financing disbursements in form reasonably acceptable to the Bankruptcy Administrator.

Case No. 07-11470
Page 4

8.     Proceeds from the sale of completed units received by Empire Financial shall

first be applied to the loan advances extended for the completion of Building 5.

9.     Any party in interest other than the Debtor may file a motion to reconsider this

Order within (20) twenty days of the date hereof.

ORDERED, this the 21ˢᵗ day of November,

/s/ Dwight H. Williams, Jr.

U. S. Bankruptcy Judge

APPROVED IN ADVANCE:

_/s/ Cameron A. Metcalf_          _/s/ Robert P. Reynolds_
Cameron A. Metcalf                Robert P. Reynolds
ESPY, METCALF & ESPY              REYNR4202
Post Office Drawer 6504           REYNOLDS, REYNOLDS & DUNCAN, LLC
Dothan, Alabama 36302-6504        Post Office Box 2863
Phone (334) 793-6288             Tuscaloosa, Alabama 35403-2863
Fax (334) 712-1617               Phone (205) 391-0073
Attorneys for Debtor,            Fax (205) 391-0911
Lake Martin Partners, LLC        rreynolds@rrdlaw.com
                                 Attorneys for Empire Financial Services, Inc.

OrderApprovingFinancing.358.11.wpd



# UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

**FOR AND IN CONSIDERATION** of the sum of Ten and No/100 Dollars and other good and valuable considerations, paid or delivered to **KENNETH L. TODD, III** (hereinafter referred to, collectively, if more than one, as "*Guarantor*"), the receipt and sufficiency whereof are hereby acknowledged by Guarantor, and for the purpose of seeking to induce **EMPIRE FINANCIAL SERVICES, INC.** (hereinafter referred to as "*Lender*") to extend credit to **LAKE MARTIN PARTNERS, L.L.C.** (hereinafter referred to as "*Borrower*"), which extension of credit will be to the direct interest, benefit, and advantage of Guarantor, Guarantor, jointly and severally, if more than one, does hereby unconditionally and absolutely guarantee to Lender and its successors, successors-in-title and assigns (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest as may accrue thereon, either before or after maturity thereof, of that certain promissory note dated September ___26___, 2005 made by Borrower to the order of Lender in the principal amount of **TWENTY TWO MILLION AND N0/100 DOLLARS ($22,000,000.00)** (hereinafter referred to as the "*Note*") together with any renewals, modifications, consolidations and extensions thereof, (b) the full and prompt payment and performance of any and all obligations of Borrower or any other party to Lender under the terms of any and all deeds to secure debt, mortgages, deeds of trust, collateral assignments, and security agreements now or hereafter securing the indebtedness evidenced by the Note (hereinafter referred to, collectively, if more than one, as the "*Security Instrument*"), (c) the full and prompt payment and performance of all obligations of Borrower to Lender under the terms of any construction loan agreement relating to the loan evidenced by the Note (hereinafter referred to as the "Construction Loan Agreement"), including, without limitation, the obligation to complete the improvements described in the Construction Loan Agreement, if any, fully paid for and free and clear of all mechanics' and materialmen's liens, (d) the full and prompt payment and performance of any and all other obligations of Borrower to Lender under any other documents or instruments now or hereafter evidencing, securing, or otherwise relating to the indebtedness evidenced by the Note (the Security Instrument, the Construction Loan Agreement, and said other documents and instruments being hereinafter referred to collectively as the "*Loan Documents*"), and (e) the full and prompt payment and performance of any and all other obligations of Borrower to Lender currently in existence or arising while this Guaranty is in effect.  Guarantor does hereby agree that if the Note is not paid by Borrower in accordance with its terms, or if any and all sums which are now or may hereafter become due from Borrower to Lender under the Loan Documents are not paid by Borrower in accordance with their terms, Guarantor will immediately make such payments.  Guarantor further agrees to pay Lender all expenses (including reasonable attorneys' fees) paid or incurred by Lender in endeavoring to collect the indebtedness, to enforce the obligations of Borrower guaranteed hereby, or any portion thereof, or to enforce this Guaranty.

Guarantor hereby consents and agrees that Lender may at any time, and from time to time, without notice to or further consent from Guarantor, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm or corporation on its behalf or for its account, securing any indebtedness or liability hereby guaranteed, substitute for any collateral so held by it, other collateral of like kind, or of any kind; agree to modify the terms of the Note or the Loan Documents; extend or renew the Note for any period; grant releases, compromises and indulgences with respect to the Note, or the Loan Documents and to any person or entities now or hereafter liable thereunder or hereunder; release any Guarantor or any other guarantor or endorser of the Note, the Security Instrument, the Construction Loan Agreement, or any other of the Loan Documents; or take or fail to take any action of any type whatsoever.  No such action which Lender shall take or fail to take in connection with the Loan Documents, or any of them, or any security for the payment of the indebtedness of Borrower to Lender or

for the performance of any obligations or undertakings of Borrower, nor any course of dealing with Borrower or any other person, shall release Guarantor's obligations hereunder, affect this Guaranty in any way or afford Guarantor any recourse against Lender. The provisions of this Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of the Loan Documents, and any and all references herein to Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof. This Guaranty absolutely and unconditionally guarantees the performance of all obligations to Lender made on behalf of Borrower by any officer, partner, or agent of Borrower.

Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to any Guarantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the security described in and encumbered by the Security Instrument; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the indebtedness of Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or for the collection of the indebtedness or the performance of any obligations hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceedings) of Borrower or any other person or entity; (c) any defense based on the failure of Lender to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever, in connection with any obligation hereby guaranteed; (d) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement; or both; (e) any defense based upon a failure of Lender to commence an action against Borrower; (f) any duty on the part of Lender to disclose to Guarantor any facts it may now or hereafter know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Lender; (h) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed; (i) protest and notice of dishonor or of default to Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) any and all other notices whatsoever to which Guarantor might otherwise be entitled; (k) any defense based on lack of due diligence by Lender in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note; and (l) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled. This Guaranty shall not be affected by any litigation between Borrower and Lender nor shall it be impaired because of termination of any relationship between Guarantor and Borrower.

This is a guaranty of payment and performance and not of collection. The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person, nor against securities or liens available to Lender, its successor, successors-in-title, endorsees or assigns. Guarantor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person. In the event of a default under the Loan Documents, or any of them, Lender shall have the right to enforce its rights, powers

and remedies thereunder or hereunder or under any other instrument now or hereafter evidencing, securing or otherwise relating to the indebtedness evidenced by the Note or secured by the Security Instrument or relating to the transactions contemplated by the Loan Agreement, in any order, and all rights, powers and remedies available to Lender in such event shall be nonexclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder by law or in equity. Accordingly, Guarantor hereby authorizes and empowers Lender upon acceleration of the maturity of the Note, at its sole discretion, and without notice to Guarantor, to exercise any right or remedy which Lender may have, including, but not limited to, judicial foreclosure, exercise of rights of power of sale, acceptance of a deed or assignment in lieu of foreclosure, appointment of a receiver to collect rents and profits, exercise of remedies against personal property, or enforcement of any assignment of leases, as to any security, whether real, personal or intangible. If the indebtedness guaranteed hereby is partially paid by reason of the election of Lender, its successors, endorsees or assigns, to pursue any of the remedies available to Lender, or if such indebtedness is otherwise partially paid, this Guaranty shall nevertheless remain in full force and effect, and Guarantor shall remain liable for the entire unpaid balance of the indebtedness guaranteed hereby, even though any rights which Guarantor may have against Borrower may be destroyed or diminished by the exercise of any such remedy. Until all of the obligations of Borrower to Lender have been paid and performed in full, Guarantor shall have no right of subrogation to Lender against Borrower, and Guarantor hereby waives any rights to enforce any remedy which Lender may have against Borrower and any rights to participate in any security for the Note.

In the event that the Lender selects non-judicial foreclosure as a remedy for Borrower's default, the Guarantor's rights to subrogation can be destroyed and Guarantor may, as a result thereof, be entitled to a defense against a deficiency action. Guarantor, nevertheless, knowingly and voluntarily waives any such defense and acknowledges liability for any deficiency.

Guarantor hereby authorizes Lender, without notice to Guarantor, to apply all payments and credits received from Borrower or from Guarantor or realized from any security in such manner and in such priority as Lender in its sole judgment shall see fit to the indebtedness, obligations and undertakings which are the subject of this Guaranty.

The books and records of Lender showing the accounts between Lender and Borrower shall be admissible in evidence in any action or proceeding hereon as prima facie proof of the items set forth therein.

Guarantor acknowledges that this Guaranty was negotiated, executed and delivered in the State of Georgia, and shall be governed and construed in accordance with the law of the State of Georgia, regardless of the situs of any other Loan Documents.

Guarantor hereby (a) submits to personal jurisdiction in the State of Georgia for the enforcement of this Guaranty, and (b) waives any and all personal rights under the law of any state to object to jurisdiction within the State of Georgia for the purposes of litigation to enforce this Guaranty. In the event that such litigation is commenced, and Guarantor is not otherwise deemed a resident of the State of Georgia, Guarantor agrees that service of process may be made and personal jurisdiction over Guarantor obtained, by the serving of a copy of the summons and complaint upon Guarantor's appointed agent for service of process in the State of Georgia, who, unless otherwise designated as provided herein, shall be the person then serving as President or Chief Executive Officer of Lender.

Nothing contained herein, however, shall prevent Lender from bringing any action or exercising any rights against any security or against Guarantor personally, or against any property of Guarantor, within any other

state. Initiating such proceeding or taking such action in any other state shall in no event constitute a waiver of the agreement contained herein that the law of the State of Georgia shall govern the rights and obligations of Guarantor and Lender hereunder or of the submission herein made by Guarantor to personal jurisdiction within the State of Georgia. The aforesaid means of obtaining personal jurisdiction and perfecting service of process are not intended to be exclusive but are cumulative and in addition to all other means of obtaining personal jurisdiction and perfecting service of process now or hereafter provided by the law of the State of Georgia.

Each Guarantor warrants and represents to Lender that all financial statements heretofore delivered by Guarantor to Lender are true and correct in all respects as of the date hereof.

Each Guarantor waives any and all homestead and exemption rights available by virtue of the Constitution or the laws of the United States of America or of any state as against this Guaranty, and renewal hereof, or any indebtedness represented hereby, and does transfer, convey and assign to Lender a sufficient amount of such homestead or exemption as may be allowed, including such homestead or exemption as may be set apart in bankruptcy, to pay all amounts due hereunder in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness guaranteed hereby, or any renewal thereof, and does hereby, jointly and severally, appoint Lender the attorney-in-fact for each of them, to claim any and all homestead exemptions allowed by law.

As security for the liabilities and obligations of Guarantor hereunder, each Guarantor hereby transfers and conveys to Lender any and all balances, credits, deposits, accounts, items and monies of each Guarantor now or hereafter in the possession or control of or otherwise with Lender, and Lender is hereby given a lien upon, security title to and a security interest in all property of Guarantor of every kind and description now or hereafter in the possession or control of Lender for any reason, including all dividends and distributions on or other rights in connection therewith. Lender may, without demand or notice of any kind, at any time, or from time to time, when any amount shall be due and payable hereunder by such Guarantor, appropriate and apply toward the payment of such amount, and in such order of application as Lender may from time to time elect, any property, balances, credits, deposits, accounts, items or monies of any Guarantor in the possession or control of Lender for any purpose.

This Guaranty may not be changed orally, and no obligation of Guarantor can be released or waived by Lender or any officer or agent of Lender, except by a writing signed by a duly authorized officer of Lender and bearing the seal of Lender. This Guaranty shall be irrevocable by Guarantor so long as the Loan Agreement shall remain in effect and until all indebtedness guaranteed hereby has been completely repaid and all obligations and undertakings of Borrower under, by reason of, or pursuant to the Loan Documents have been completely performed.

Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Guaranty shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt requested, to the party at the address of such party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal

delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response, if given to Lender, shall be addressed as follows:

**EMPIRE FINANCIAL SERVICES, INC.**
**121 EXECUTIVE PARKWAY**
**MILLEDGEVILLE, GEORGIA 31061**

and, if given to Guarantor, shall be addressed as follows:

**KENNETH L. TODD, III**
**209 ASHBOROUGH CIRCLE**
**DOTHAN, ALABAMA 36301**

The provisions of this Guaranty shall be binding upon each Guarantor and each Guarantor's successors, successors-in-title, heirs, legal representatives and assigns and shall inure to the benefit of Lender, its successors, successors-in-title, heirs, legal representatives and assigns. This Guaranty shall in no event be impaired by any change which may arise by reason of the death of Borrower or Guarantor, if individuals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is a corporation, or partnership.

As used herein, the terms "each Guarantor" and "any Guarantor" shall refer to the undersigned single Guarantor, or, if more than one, shall refer respectively to each or any separate member of the undersigned collective Guarantor. If more than one person or entity constitutes, collectively, Borrower, all of the foregoing provisions referring to Borrower shall be construed to refer to each such person or entity individually as well as collectively. For example, if there are two persons who are, collectively, Borrower, this Guaranty shall guarantee the full and prompt payment and performance of all obligations under the Loan Documents of Borrower, and of each of said two persons constituting Borrower.

Each Guarantor has executed this Guaranty individually and not as a partner of Borrower or any other member of Guarantor.

If from any circumstances whatsoever fulfillment of any provisions of this Guaranty, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Guaranty that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this paragraph shall control every other provision of this Guaranty.

Any provisions of this Agreement to the contrary notwithstanding, Guarantor hereby absolutely and unconditionally waives Guarantor's right to reimbursement, contribution and subrogation with regard to any payments made by Guarantor pursuant to the terms of this Unconditional Guaranty of Payment and Performance. Guarantor further agrees to reimburse Lender for any payments made to Lender that Lender is required to pay over to Borrower's Trustee in a bankruptcy case or as a result of any other judicial proceeding.

Notwithstanding the payment and satisfaction of the Note, Guarantor's obligation to reimburse Lender for any payments that are avoided as a result of being characterized, for bankruptcy purposes, as preferential, shall continue for period of one year beyond the date of Borrower's last payment to Lender.

Guarantor warrants and represents to Lender that all financial statements given to Lender are accurate and that Guarantor is currently solvent and will not be rendered insolvent by virtue of financial obligations, contingent or otherwise, arising under terms of this Unconditional Guaranty of Payment and Performance.

The Guaranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender and so assigned by Lender.

This Unconditional Guaranty and Payment of Performance contains the entire agreement between the parties hereto and there are no promises, agreements, conditions, undertakings, warranties and representations, whether written or oral, express or implied, between the parties, other than as set forth herein.

*IN WITNESS WHEREOF*, Guarantor has executed this Guaranty under seal as of the 26 day of September, 2005.

_____ [SEAL]
**KENNETH L. TODD, III**

Guarantor designates the following individual, or entity, a resident of the State of Georgia, as Guarantor's agent for service of process for purposes of any litigation for enforcement of this Guaranty:

_____
_____
_____



EXHIBIT

6

LAW OFFICES OF
## DOW T. HUSKEY
112 WEST ADAMS STREET
DOTHAN, ALABAMA 36303

TELEPHONE (334) 794-3366
TELECOPIER (334) 794-7292

REPLY TO:
P. O. DRAWER 550
DOTHAN, ALABAMA 36302

October 4, 2007

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Empire Financial Services, Inc.
121 Executive Parkway
Milledgeville, GA 31061

Re:     Unconditional Guaranties of Payment and Performance dated September 26, 2005
in favor of Empire Financial Services, Inc. (the "Guaranties")

Dear Sir:

Please be advised that I represent each of the following Guarantors each of whom executed the referenced Guaranties:

1.     Gary L. Anderson
2.     Timothy L. Eakes
3.     Keith A. LaFerriere
4.     Samuel E. Lee
5.     C. Wayne Roberts
6.     Kenneth L. Todd, III
7.     Rickey Woods
8.     Michael D. Brock
9.     Daniel A. Bailey
10.     James R. Paxton

I am, herein, notifying you that, effective immediately, each of the Guarantors terminates his respective Guaranty as to any future advance or obligation. Should you have any questions about this notification or need any additional information, I would be happy to discuss that with you.

Sincerely,

*D.T. Huskey*

Dow T. Huskey

DTH:ct
c:     Hon. Robert P. Reynolds



EXHIBIT

7

## UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

**FOR AND IN CONSIDERATION** of the sum of Ten and No/100 Dollars and other good and valuable considerations, paid or delivered to **MICHAEL D. BROCK** (hereinafter referred to, collectively, if more than one, as "*Guarantor*"), the receipt and sufficiency whereof are hereby acknowledged by Guarantor, and for the purpose of seeking to induce **EMPIRE FINANCIAL SERVICES, INC.** (hereinafter referred to as "*Lender*") to extend credit to **LAKE MARTIN PARTNERS, L.L.C.** (hereinafter referred to as "*Borrower*"), which extension of credit will be to the direct interest, benefit, and advantage of Guarantor, Guarantor, jointly and severally, if more than one, does hereby unconditionally and absolutely guarantee to Lender and its successors, successors-in-title and assigns (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest as may accrue thereon, either before or after maturity thereof, of that certain promissory note dated **September ___26___ , 2005** made by Borrower to the order of Lender in the principal amount of **TWENTY TWO MILLION AND N0/100 DOLLARS ($22,000,000.00)** (hereinafter referred to as the "*Note*") together with any renewals, modifications, consolidations and extensions thereof, (b) the full and prompt payment and performance of any and all obligations of Borrower or any other party to Lender under the terms of any and all deeds to secure debt, mortgages, deeds of trust, collateral assignments, and security agreements now or hereafter securing the indebtedness evidenced by the Note (hereinafter referred to, collectively, if more than one, as the "*Security Instrument*"), (c) the full and prompt payment and performance of all obligations of Borrower to Lender under the terms of any construction loan agreement relating to the loan evidenced by the Note (hereinafter referred to as the "Construction Loan Agreement"), including, without limitation, the obligation to complete the improvements described in the Construction Loan Agreement, if any, fully paid for and free and clear of all mechanics' and materialmen's liens, (d) the full and prompt payment and performance of any and all other obligations of Borrower to Lender under any other documents or instruments now or hereafter evidencing, securing, or otherwise relating to the indebtedness evidenced by the Note (the Security Instrument, the Construction Loan Agreement, and said other documents and instruments being hereinafter referred to collectively as the "*Loan Documents*"), and (e) the full and prompt payment and performance of any and all other obligations of Borrower to Lender currently in existence or arising while this Guaranty is in effect. Guarantor does hereby agree that if the Note is not paid by Borrower in accordance with its terms, or if any and all sums which are now or may hereafter become due from Borrower to Lender under the Loan Documents are not paid by Borrower in accordance with their terms, Guarantor will immediately make such payments. Guarantor further agrees to pay Lender all expenses (including reasonable attorneys' fees) paid or incurred by Lender in endeavoring to collect the indebtedness, to enforce the obligations of Borrower guaranteed hereby, or any portion thereof, or to enforce this Guaranty.

Guarantor hereby consents and agrees that Lender may at any time, and from time to time, without notice to or further consent from Guarantor, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm or corporation on its behalf or for its account, securing any indebtedness or liability hereby guaranteed, substitute for any collateral so held by it, other collateral of like kind, or of any kind; agree to modify the terms of the Note or the Loan Documents; extend or renew the Note for any period; grant releases, compromises and indulgences with respect to the Note, or the Loan Documents and to any person or entities now or hereafter liable thereunder or hereunder; release any Guarantor or any other guarantor or endorser of the Note, the Security Instrument, the Construction Loan Agreement, or any other of the Loan Documents; or take or fail to take any action of any type whatsoever. No such action which Lender shall take or fail to take in connection with the Loan Documents, or any of them, or any security for the payment of the indebtedness of Borrower to Lender or

for the performance of any obligations or undertakings of Borrower, nor any course of dealing with Borrower or any other person, shall release Guarantor's obligations hereunder, affect this Guaranty in any way or afford Guarantor any recourse against Lender. The provisions of this Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of the Loan Documents, and any and all references herein to Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof. This Guaranty absolutely and unconditionally guarantees the performance of all obligations to Lender made on behalf of Borrower by any officer, partner, or agent of Borrower.

Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to any Guarantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the security described in and encumbered by the Security Instrument; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the indebtedness of Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or for the collection of the indebtedness or the performance of any obligations hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceedings) of Borrower or any other person or entity; (c) any defense based on the failure of Lender to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever, in connection with any obligation hereby guaranteed; (d) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement; or both; (e) any defense based upon a failure of Lender to commence an action against Borrower; (f) any duty on the part of Lender to disclose to Guarantor any facts it may now or hereafter know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Lender; (h) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed; (i) protest and notice of dishonor or of default to Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) any and all other notices whatsoever to which Guarantor might otherwise be entitled; (k) any defense based on lack of due diligence by Lender in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note; and (l) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled. This Guaranty shall not be affected by any litigation between Borrower and Lender nor shall it be impaired because of termination of any relationship between Guarantor and Borrower.

This is a guaranty of payment and performance and not of collection. The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person, nor against securities or liens available to Lender, its successor, successors-in-title, endorsees or assigns. Guarantor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person. In the event of a default under the Loan Documents, or any of them, Lender shall have the right to enforce its rights, powers

and remedies thereunder or hereunder or under any other instrument now or hereafter evidencing, securing or otherwise relating to the indebtedness evidenced by the Note or secured by the Security Instrument or relating to the transactions contemplated by the Loan Agreement, in any order, and all rights, powers and remedies available to Lender in such event shall be nonexclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder by law or in equity.  Accordingly, Guarantor hereby authorizes and empowers Lender upon acceleration of the maturity of the Note, at its sole discretion, and without notice to Guarantor, to exercise any right or remedy which Lender may have, including, but not limited to, judicial foreclosure, exercise of rights of power of sale, acceptance of a deed or assignment in lieu of foreclosure, appointment of a receiver to collect rents and profits, exercise of remedies against personal property, or enforcement of any assignment of leases, as to any security, whether real, personal or intangible.  If the indebtedness guaranteed hereby is partially paid by reason of the election of Lender, its successors, endorsees or assigns, to pursue any of the remedies available to Lender, or if such indebtedness is otherwise partially paid, this Guaranty shall nevertheless remain in full force and effect, and Guarantor shall remain liable for the entire unpaid balance of the indebtedness guaranteed hereby, even though any rights which Guarantor may have against Borrower may be destroyed or diminished by the exercise of any such remedy.  Until all of the obligations of Borrower to Lender have been paid and performed in full, Guarantor shall have no right of subrogation to Lender against Borrower, and Guarantor hereby waives any rights to enforce any remedy which Lender may have against Borrower and any rights to participate in any security for the Note.

In the event that the Lender selects non-judicial foreclosure as a remedy for Borrower's default, the Guarantor's rights to subrogation can be destroyed and Guarantor may, as a result thereof, be entitled to a defense against a deficiency action.  Guarantor, nevertheless, knowingly and voluntarily waives any such defense and acknowledges liability for any deficiency.

Guarantor hereby authorizes Lender, without notice to Guarantor, to apply all payments and credits received from Borrower or from Guarantor or realized from any security in such manner and in such priority as Lender in its sole judgment shall see fit to the indebtedness, obligations and undertakings which are the subject of this Guaranty.

The books and records of Lender showing the accounts between Lender and Borrower shall be admissible in evidence in any action or proceeding hereon as prima facie proof of the items set forth therein.

Guarantor acknowledges that this Guaranty was negotiated, executed and delivered in the State of Georgia, and shall be governed and construed in accordance with the law of the State of Georgia, regardless of the situs of any other Loan Documents.

Guarantor hereby (a) submits to personal jurisdiction in the State of Georgia for the enforcement of this Guaranty, and (b) waives any and all personal rights under the law of any state to object to jurisdiction within the State of Georgia for the purposes of litigation to enforce this Guaranty.  In the event that such litigation is commenced, and Guarantor is not otherwise deemed a resident of the State of Georgia, Guarantor agrees that service of process may be made and personal jurisdiction over Guarantor obtained, by the serving of a copy of the summons and complaint upon Guarantor's appointed agent for service of process in the State of Georgia, who, unless otherwise designated as provided herein, shall be the person then serving as President or Chief Executive Officer of Lender.

Nothing contained herein, however, shall prevent Lender from bringing any action or exercising any rights against any security or against Guarantor personally, or against any property of Guarantor, within any other

state. Initiating such proceeding or taking such action in any other state shall in no event constitute a waiver of the agreement contained herein that the law of the State of Georgia shall govern the rights and obligations of Guarantor and Lender hereunder or of the submission herein made by Guarantor to personal jurisdiction within the State of Georgia. The aforesaid means of obtaining personal jurisdiction and perfecting service of process are not intended to be exclusive but are cumulative and in addition to all other means of obtaining personal jurisdiction and perfecting service of process now or hereafter provided by the law of the State of Georgia.

Each Guarantor warrants and represents to Lender that all financial statements heretofore delivered by Guarantor to Lender are true and correct in all respects as of the date hereof.

Each Guarantor waives any and all homestead and exemption rights available by virtue of the Constitution or the laws of the United States of America or of any state as against this Guaranty, and renewal hereof, or any indebtedness represented hereby, and does transfer, convey and assign to Lender a sufficient amount of such homestead or exemption as may be allowed, including such homestead or exemption as may be set apart in bankruptcy, to pay all amounts due hereunder in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness guaranteed hereby, or any renewal thereof, and does hereby, jointly and severally, appoint Lender the attorney-in-fact for each of them, to claim any and all homestead exemptions allowed by law.

As security for the liabilities and obligations of Guarantor hereunder, each Guarantor hereby transfers and conveys to Lender any and all balances, credits, deposits, accounts, items and monies of each Guarantor now or hereafter in the possession or control of or otherwise with Lender, and Lender is hereby given a lien upon, security title to and a security interest in all property of Guarantor of every kind and description now or hereafter in the possession or control of Lender for any reason, including all dividends and distributions on or other rights in connection therewith. Lender may, without demand or notice of any kind, at any time, or from time to time, when any amount shall be due and payable hereunder by such Guarantor, appropriate and apply toward the payment of such amount, and in such order of application as Lender may from time to time elect, any property, balances, credits, deposits, accounts, items or monies of any Guarantor in the possession or control of Lender for any purpose.

This Guaranty may not be changed orally, and no obligation of Guarantor can be released or waived by Lender or any officer or agent of Lender, except by a writing signed by a duly authorized officer of Lender and bearing the seal of Lender. This Guaranty shall be irrevocable by Guarantor so long as the Loan Agreement shall remain in effect and until all indebtedness guaranteed hereby has been completely repaid and all obligations and undertakings of Borrower under, by reason of, or pursuant to the Loan Documents have been completely performed.

Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Guaranty shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt requested, to the party at the address of such party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal

delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response, if given to Lender, shall be addressed as follows:

**EMPIRE FINANCIAL SERVICES, INC.**
**121 EXECUTIVE PARKWAY**
**MILLEDGEVILLE, GEORGIA 31061**

and, if given to Guarantor, shall be addressed as follows:

**MICHAEL D. BROCK**
**103 GLENDEVON LANE**
**DOTHAN, ALABAMA 36305**

The provisions of this Guaranty shall be binding upon each Guarantor and each Guarantor's successors, successors-in-title, heirs, legal representatives and assigns and shall inure to the benefit of Lender, its successors, successors, successors-in-title, heirs, legal representatives and assigns. This Guaranty shall in no event be impaired by any change which may arise by reason of the death of Borrower or Guarantor, if individuals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is a corporation, or partnership.

As used herein, the terms "each Guarantor" and "any Guarantor" shall refer to the undersigned single Guarantor, or, if more than one, shall refer respectively to each or any separate member of the undersigned collective Guarantor. If more than one person or entity constitutes, collectively, Borrower, all of the foregoing provisions referring to Borrower shall be construed to refer to each such person or entity individually as well as collectively. For example, if there are two persons who are, collectively, Borrower, this Guaranty shall guarantee the full and prompt payment and performance of all obligations under the Loan Documents of Borrower, and of each of said two persons constituting Borrower.

Each Guarantor has executed this Guaranty individually and not as a partner of Borrower or any other member of Guarantor.

If from any circumstances whatsoever fulfillment of any provisions of this Guaranty, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Guaranty that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this paragraph shall control every other provision of this Guaranty.

Any provisions of this Agreement to the contrary notwithstanding, Guarantor hereby absolutely and unconditionally waives Guarantor's right to reimbursement, contribution and subrogation with regard to any payments made by Guarantor pursuant to the terms of this Unconditional Guaranty of Payment and Performance. Guarantor further agrees to reimburse Lender for any payments made to Lender that Lender is required to pay over to Borrower's Trustee in a bankruptcy case or as a result of any other judicial proceeding.

Notwithstanding the payment and satisfaction of the Note, Guarantor's obligation to reimburse Lender for any payments that are avoided as a result of being characterized, for bankruptcy purposes, as preferential, shall continue for period of one year beyond the date of Borrower's last payment to Lender.

Guarantor warrants and represents to Lender that all financial statements given to Lender are accurate and that Guarantor is currently solvent and will not be rendered insolvent by virtue of financial obligations, contingent or otherwise, arising under terms of this Unconditional Guaranty of Payment and Performance.

The Guaranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender and so assigned by Lender.

This Unconditional Guaranty and Payment of Performance contains the entire agreement between the parties hereto and there are no promises, agreements, conditions, undertakings, warranties and representations, whether written or oral, express or implied, between the parties, other than as set forth herein.

*IN WITNESS WHEREOF,* Guarantor has executed this Guaranty under seal as of the __2 6__ day of September, 2005.

_____ [SEAL]
**MICHAEL D. BROCK**

Guarantor designates the following individual, or entity, a resident of the State of Georgia, as Guarantor's agent for service of process for purposes of any litigation for enforcement of this Guaranty:

_____
_____
_____



## UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

**FOR AND IN CONSIDERATION** of the sum of Ten and No/100 Dollars and other good and valuable considerations, paid or delivered to **JAMES R. PAXTON** (hereinafter referred to, collectively, if more than one, as "*Guarantor*"), the receipt and sufficiency whereof are hereby acknowledged by Guarantor, and for the purpose of seeking to induce **EMPIRE FINANCIAL SERVICES, INC.** (hereinafter referred to as "*Lender*") to extend credit to **LAKE MARTIN PARTNERS, L.L.C.** (hereinafter referred to as "*Borrower*"), which extension of credit will be to the direct interest, benefit, and advantage of Guarantor, Guarantor, jointly and severally, if more than one, does hereby unconditionally and absolutely guarantee to Lender and its successors, successors-in-title and assigns (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest as may accrue thereon, either before or after maturity thereof, of that certain promissory note dated September ___26___, 2005 made by Borrower to the order of Lender in the principal amount of **TWENTY TWO MILLION AND N0/100 DOLLARS ($22,000,000.00)** (hereinafter referred to as the "*Note*") together with any renewals, modifications, consolidations and extensions thereof, (b) the full and prompt payment and performance of any and all obligations of Borrower or any other party to Lender under the terms of any and all deeds to secure debt, mortgages, deeds of trust, collateral assignments, and security agreements now or hereafter securing the indebtedness evidenced by the Note (hereinafter referred to, collectively, if more than one, as the "*Security Instrument*"), (c) the full and prompt payment and performance of all obligations of Borrower to Lender under the terms of any construction loan agreement relating to the loan evidenced by the Note (hereinafter referred to as the "Construction Loan Agreement"), including, without limitation, the obligation to complete the improvements described in the Construction Loan Agreement, if any, fully paid for and free and clear of all mechanics' and materialmen's liens, (d) the full and prompt payment and performance of any and all other obligations of Borrower to Lender under any other documents or instruments now or hereafter evidencing, securing, or otherwise relating to the indebtedness evidenced by the Note (the Security Instrument, the Construction Loan Agreement, and said other documents and instruments being hereinafter referred to collectively as the "*Loan Documents*"), and (e) the full and prompt payment and performance of any and all other obligations of Borrower to Lender currently in existence or arising while this Guaranty is in effect.  Guarantor does hereby agree that if the Note is not paid by Borrower in accordance with its terms, or if any and all sums which are now or may hereafter become due from Borrower to Lender under the Loan Documents are not paid by Borrower in accordance with their terms, Guarantor will immediately make such payments.  Guarantor further agrees to pay Lender all expenses (including reasonable attorneys' fees) paid or incurred by Lender in endeavoring to collect the indebtedness, to enforce the obligations of Borrower guaranteed hereby, or any portion thereof, or to enforce this Guaranty.

Guarantor hereby consents and agrees that Lender may at any time, and from time to time, without notice to or further consent from Guarantor, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm or corporation on its behalf or for its account, securing any indebtedness or liability hereby guaranteed, substitute for any collateral so held by it, other collateral of like kind, or of any kind; agree to modify the terms of the Note or the Loan Documents; extend or renew the Note for any period; grant releases, compromises and indulgences with respect to the Note, or the Loan Documents and to any person or entities now or hereafter liable thereunder or hereunder; release any Guarantor or any other guarantor or endorser of the Note, the Security Instrument, the Construction Loan Agreement, or any other of the Loan Documents; or take or fail to take any action of any type whatsoever.  No such action which Lender shall take or fail to take in connection with the Loan Documents, or any of them, or any security for the payment of the indebtedness of Borrower to Lender or

for the performance of any obligations or undertakings of Borrower, nor any course of dealing with Borrower or any other person, shall release Guarantor's obligations hereunder, affect this Guaranty in any way or afford Guarantor any recourse against Lender. The provisions of this Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of the Loan Documents, and any and all references herein to Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof. This Guaranty absolutely and unconditionally guarantees the performance of all obligations to Lender made on behalf of Borrower by any officer, partner, or agent of Borrower.

Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to any Guarantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the security described in and encumbered by the Security Instrument; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the indebtedness of Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or for the collection of the indebtedness or the performance of any obligations hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceedings) of Borrower or any other person or entity; (c) any defense based on the failure of Lender to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever, in connection with any obligation hereby guaranteed; (d) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement; or both; (e) any defense based upon a failure of Lender to commence an action against Borrower; (f) any duty on the part of Lender to disclose to Guarantor any facts it may now or hereafter know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Lender; (h) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed; (i) protest and notice of dishonor or of default to Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) any and all other notices whatsoever to which Guarantor might otherwise be entitled; (k) any defense based on lack of due diligence by Lender in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note; and (l) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled. This Guaranty shall not be affected by any litigation between Borrower and Lender nor shall it be impaired because of termination of any relationship between Guarantor and Borrower.

This is a guaranty of payment and performance and not of collection. The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person, nor against securities or liens available to Lender, its successor, successors-in-title, endorsees or assigns. Guarantor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person. In the event of a default under the Loan Documents, or any of them, Lender shall have the right to enforce its rights, powers

and remedies thereunder or hereunder or under any other instrument now or hereafter evidencing, securing or otherwise relating to the indebtedness evidenced by the Note or secured by the Security Instrument or relating to the transactions contemplated by the Loan Agreement, in any order, and all rights, powers and remedies available to Lender in such event shall be nonexclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder by law or in equity. Accordingly, Guarantor hereby authorizes and empowers Lender upon acceleration of the maturity of the Note, at its sole discretion, and without notice to Guarantor, to exercise any right or remedy which Lender may have, including, but not limited to, judicial foreclosure, exercise of rights of power of sale, acceptance of a deed or assignment in lieu of foreclosure, appointment of a receiver to collect rents and profits, exercise of remedies against personal property, or enforcement of any assignment of leases, as to any security, whether real, personal or intangible. If the indebtedness guaranteed hereby is partially paid by reason of the election of Lender, its successors, endorsees or assigns, to pursue any of the remedies available to Lender, or if such indebtedness is otherwise partially paid, this Guaranty shall nevertheless remain in full force and effect, and Guarantor shall remain liable for the entire unpaid balance of the indebtedness guaranteed hereby, even though any rights which Guarantor may have against Borrower may be destroyed or diminished by the exercise of any such remedy. Until all of the obligations of Borrower to Lender have been paid and performed in full, Guarantor shall have no right of subrogation to Lender against Borrower, and Guarantor hereby waives any rights to enforce any remedy which Lender may have against Borrower and any rights to participate in any security for the Note.

In the event that the Lender selects non-judicial foreclosure as a remedy for Borrower's default, the Guarantor's rights to subrogation can be destroyed and Guarantor may, as a result thereof, be entitled to a defense against a deficiency action. Guarantor, nevertheless, knowingly and voluntarily waives any such defense and acknowledges liability for any deficiency.

Guarantor hereby authorizes Lender, without notice to Guarantor, to apply all payments and credits received from Borrower or from Guarantor or realized from any security in such manner and in such priority as Lender in its sole judgment shall see fit to the indebtedness, obligations and undertakings which are the subject of this Guaranty.

The books and records of Lender showing the accounts between Lender and Borrower shall be admissible in evidence in any action or proceeding hereon as prima facie proof of the items set forth therein.

Guarantor acknowledges that this Guaranty was negotiated, executed and delivered in the State of Georgia, and shall be governed and construed in accordance with the law of the State of Georgia, regardless of the situs of any other Loan Documents.

Guarantor hereby (a) submits to personal jurisdiction in the State of Georgia for the enforcement of this Guaranty, and (b) waives any and all personal rights under the law of any state to object to jurisdiction within the State of Georgia for the purposes of litigation to enforce this Guaranty. In the event that such litigation is commenced, and Guarantor is not otherwise deemed a resident of the State of Georgia, Guarantor agrees that service of process may be made and personal jurisdiction over Guarantor obtained, by the serving of a copy of the summons and complaint upon Guarantor's appointed agent for service of process in the State of Georgia, who, unless otherwise designated as provided herein, shall be the person then serving as President or Chief Executive Officer of Lender.

Nothing contained herein, however, shall prevent Lender from bringing any action or exercising any rights against any security or against Guarantor personally, or against any property of Guarantor, within any other

state. Initiating such proceeding or taking such action in any other state shall in no event constitute a waiver of the agreement contained herein that the law of the State of Georgia shall govern the rights and obligations of Guarantor and Lender hereunder or of the submission herein made by Guarantor to personal jurisdiction within the State of Georgia. The aforesaid means of obtaining personal jurisdiction and perfecting service of process are not intended to be exclusive but are cumulative and in addition to all other means of obtaining personal jurisdiction and perfecting service of process now or hereafter provided by the law of the State of Georgia.

Each Guarantor warrants and represents to Lender that all financial statements heretofore delivered by Guarantor to Lender are true and correct in all respects as of the date hereof.

Each Guarantor waives any and all homestead and exemption rights available by virtue of the Constitution or the laws of the United States of America or of any state as against this Guaranty, and renewal hereof, or any indebtedness represented hereby, and does transfer, convey and assign to Lender a sufficient amount of such homestead or exemption as may be allowed, including such homestead or exemption as may be set apart in bankruptcy, to pay all amounts due hereunder in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness guaranteed hereby, or any renewal thereof, and does hereby, jointly and severally, appoint Lender the attorney-in-fact for each of them, to claim any and all homestead exemptions allowed by law.

As security for the liabilities and obligations of Guarantor hereunder, each Guarantor hereby transfers and conveys to Lender any and all balances, credits, deposits, accounts, items and monies of each Guarantor now or hereafter in the possession or control of or otherwise with Lender, and Lender is hereby given a lien upon, security title to and a security interest in all property of Guarantor of every kind and description now or hereafter in the possession or control of Lender for any reason, including all dividends and distributions on or other rights in connection therewith. Lender may, without demand or notice of any kind, at any time, or from time to time, when any amount shall be due and payable hereunder by such Guarantor, appropriate and apply toward the payment of such amount, and in such order of application as Lender may from time to time elect, any property, balances, credits, deposits, accounts, items or monies of any Guarantor in the possession or control of Lender for any purpose.

This Guaranty may not be changed orally, and no obligation of Guarantor can be released or waived by Lender or any officer or agent of Lender, except by a writing signed by a duly authorized officer of Lender and bearing the seal of Lender. This Guaranty shall be irrevocable by Guarantor so long as the Loan Agreement shall remain in effect and until all indebtedness guaranteed hereby has been completely repaid and all obligations and undertakings of Borrower under, by reason of, or pursuant to the Loan Documents have been completely performed.

Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Guaranty shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt requested, to the party at the address of such party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal

delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response, if given to Lender, shall be addressed as follows:

**EMPIRE FINANCIAL SERVICES, INC.**
**121 EXECUTIVE PARKWAY**
**MILLEDGEVILLE, GEORGIA 31061**

and, if given to Guarantor, shall be addressed as follows:

**JAMES R. PAXTON**
**124 S. WOODBURN**
**DOTHAN, ALABAMA 36305**

The provisions of this Guaranty shall be binding upon each Guarantor and each Guarantor's successors, successors-in-title, heirs, legal representatives and assigns and shall inure to the benefit of Lender, its successors, successors-in-title, heirs, legal representatives and assigns. This Guaranty shall in no event be impaired by any change which may arise by reason of the death of Borrower or Guarantor, if individuals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is a corporation, or partnership.

As used herein, the terms "each Guarantor" and "any Guarantor" shall refer to the undersigned single Guarantor, or, if more than one, shall refer respectively to each or any separate member of the undersigned collective Guarantor. If more than one person or entity constitutes, collectively, Borrower, all of the foregoing provisions referring to Borrower shall be construed to refer to each such person or entity individually as well as collectively. For example, if there are two persons who are, collectively, Borrower, this Guaranty shall guarantee the full and prompt payment and performance of all obligations under the Loan Documents of Borrower, and of each of said two persons constituting Borrower.

Each Guarantor has executed this Guaranty individually and not as a partner of Borrower or any other member of Guarantor.

If from any circumstances whatsoever fulfillment of any provisions of this Guaranty, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Guaranty that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this paragraph shall control every other provision of this Guaranty.

Any provisions of this Agreement to the contrary notwithstanding, Guarantor hereby absolutely and unconditionally waives Guarantor's right to reimbursement, contribution and subrogation with regard to any payments made by Guarantor pursuant to the terms of this Unconditional Guaranty of Payment and Performance. Guarantor further agrees to reimburse Lender for any payments made to Lender that Lender is required to pay over to Borrower's Trustee in a bankruptcy case or as a result of any other judicial proceeding.

Notwithstanding the payment and satisfaction of the Note, Guarantor's obligation to reimburse Lender for any payments that are avoided as a result of being characterized, for bankruptcy purposes, as preferential, shall continue for period of one year beyond the date of Borrower's last payment to Lender.

Guarantor warrants and represents to Lender that all financial statements given to Lender are accurate and that Guarantor is currently solvent and will not be rendered insolvent by virtue of financial obligations, contingent or otherwise, arising under terms of this Unconditional Guaranty of Payment and Performance.

The Guaranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender and so assigned by Lender.

This Unconditional Guaranty and Payment of Performance contains the entire agreement between the parties hereto and there are no promises, agreements, conditions, undertakings, warranties and representations, whether written or oral, express or implied, between the parties, other than as set forth herein.

*IN WITNESS WHEREOF*, Guarantor has executed this Guaranty under seal as of the ____26____ day of September, 2005.

_____     [SEAL]
                **JAMES R. PAXTON**

Guarantor designates the following individual, or entity, a resident of the State of Georgia, as Guarantor's agent for service of process for purposes of any litigation for enforcement of this Guaranty:

_____
_____
_____



EXHIBIT
9

## UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

**FOR AND IN CONSIDERATION** of the sum of Ten and No/100 Dollars and other good and valuable considerations, paid or delivered to DANIEL A. BAILEY (hereinafter referred to, collectively, if more than one, as "*Guarantor*"), the receipt and sufficiency whereof are hereby acknowledged by Guarantor, and for the purpose of seeking to induce **EMPIRE FINANCIAL SERVICES, INC.** (hereinafter referred to as "*Lender*") to extend credit to **LAKE MARTIN PARTNERS, L.L.C.** (hereinafter referred to as "*Borrower*"), which extension of credit will be to the direct interest, benefit, and advantage of Guarantor, Guarantor, jointly and severally, if more than one, does hereby unconditionally and absolutely guarantee to Lender and its successors, successors-in-title and assigns (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest as may accrue thereon, either before or after maturity thereof, of that certain promissory note dated **September ___26___**, 2005 made by Borrower to the order of Lender in the principal amount of **TWENTY TWO MILLION AND N0/100 DOLLARS ($22,000,000.00)** (hereinafter referred to as the "*Note*") together with any renewals, modifications, consolidations and extensions thereof, (b) the full and prompt payment and performance of any and all obligations of Borrower or any other party to Lender under the terms of any and all deeds to secure debt, mortgages, deeds of trust, collateral assignments, and security agreements now or hereafter securing the indebtedness evidenced by the Note (hereinafter referred to, collectively, if more than one, as the "*Security Instrument*"), (c) the full and prompt payment and performance of all obligations of Borrower to Lender under the terms of any construction loan agreement relating to the loan evidenced by the Note (hereinafter referred to as the "Construction Loan Agreement"), including, without limitation, the obligation to complete the improvements described in the Construction Loan Agreement, if any, fully paid for and free and clear of all mechanics' and materialmen's liens, (d) the full and prompt payment and performance of any and all other obligations of Borrower to Lender under any other documents or instruments now or hereafter evidencing, securing, or otherwise relating to the indebtedness evidenced by the Note (the Security Instrument, the Construction Loan Agreement, and said other documents and instruments being hereinafter referred to collectively as the "*Loan Documents*"), and (e) the full and prompt payment and performance of any and all other obligations of Borrower to Lender currently in existence or arising while this Guaranty is in effect. Guarantor does hereby agree that if the Note is not paid by Borrower in accordance with its terms, or if any and all sums which are now or may hereafter become due from Borrower to Lender under the Loan Documents are not paid by Borrower in accordance with their terms, Guarantor will immediately make such payments. Guarantor further agrees to pay Lender all expenses (including reasonable attorneys' fees) paid or incurred by Lender in endeavoring to collect the indebtedness, to enforce the obligations of Borrower guaranteed hereby, or any portion thereof, or to enforce this Guaranty.

Guarantor hereby consents and agrees that Lender may at any time, and from time to time, without notice to or further consent from Guarantor, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm or corporation on its behalf or for its account, securing any indebtedness or liability hereby guaranteed, substitute for any collateral so held by it, other collateral of like kind, or of any kind; agree to modify the terms of the Note or the Loan Documents; extend or renew the Note for any period; grant releases, compromises and indulgences with respect to the Note, or the Loan Documents and to any person or entities now or hereafter liable thereunder or hereunder; release any Guarantor or any other guarantor or endorser of the Note, the Security Instrument, the Construction Loan Agreement, or any other of the Loan Documents; or take or fail to take any action of any type whatsoever. No such action which Lender shall take or fail to take in connection with the Loan Documents, or any of them, or any security for the payment of the indebtedness of Borrower to Lender or

for the performance of any obligations or undertakings of Borrower, nor any course of dealing with Borrower or any other person, shall release Guarantor's obligations hereunder, affect this Guaranty in any way or afford Guarantor any recourse against Lender. The provisions of this Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of the Loan Documents, and any and all references herein to Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof. This Guaranty absolutely and unconditionally guarantees the performance of all obligations to Lender made on behalf of Borrower by any officer, partner, or agent of Borrower.

Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to any Guarantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the security described in and encumbered by the Security Instrument; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the indebtedness of Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or for the collection of the indebtedness or the performance of any obligations hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceedings) of Borrower or any other person or entity; (c) any defense based on the failure of Lender to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever, in connection with any obligation hereby guaranteed; (d) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement; or both; (e) any defense based upon a failure of Lender to commence an action against Borrower; (f) any duty on the part of Lender to disclose to Guarantor any facts it may now or hereafter know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Lender; (h) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed; (i) protest and notice of dishonor or of default to Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) any and all other notices whatsoever to which Guarantor might otherwise be entitled; (k) any defense based on lack of due diligence by Lender in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note; and (l) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled. This Guaranty shall not be affected by any litigation between Borrower and Lender nor shall it be impaired because of termination of any relationship between Guarantor and Borrower.

This is a guaranty of payment and performance and not of collection. The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person, nor against securities or liens available to Lender, its successor, successors-in-title, endorsees or assigns. Guarantor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person. In the event of a default under the Loan Documents, or any of them, Lender shall have the right to enforce its rights, powers

and remedies thereunder or hereunder or under any other instrument now or hereafter evidencing, securing or otherwise relating to the indebtedness evidenced by the Note or secured by the Security Instrument or relating to the transactions contemplated by the Loan Agreement, in any order, and all rights, powers and remedies available to Lender in such event shall be nonexclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder by law or in equity. Accordingly, Guarantor hereby authorizes and empowers Lender upon acceleration of the maturity of the Note, at its sole discretion, and without notice to Guarantor, to exercise any right or remedy which Lender may have, including, but not limited to, judicial foreclosure, exercise of rights of power of sale, acceptance of a deed or assignment in lieu of foreclosure, appointment of a receiver to collect rents and profits, exercise of remedies against personal property, or enforcement of any assignment of leases, as to any security, whether real, personal or intangible. If the indebtedness guaranteed hereby is partially paid by reason of the election of Lender, its successors, endorsees or assigns, to pursue any of the remedies available to Lender, or if such indebtedness is otherwise partially paid, this Guaranty shall nevertheless remain in full force and effect, and Guarantor shall remain liable for the entire unpaid balance of the indebtedness guaranteed hereby, even though any rights which Guarantor may have against Borrower may be destroyed or diminished by the exercise of any such remedy. Until all of the obligations of Borrower to Lender have been paid and performed in full, Guarantor shall have no right of subrogation to Lender against Borrower, and Guarantor hereby waives any rights to enforce any remedy which Lender may have against Borrower and any rights to participate in any security for the Note.

In the event that the Lender selects non-judicial foreclosure as a remedy for Borrower's default, the Guarantor's rights to subrogation can be destroyed and Guarantor may, as a result thereof, be entitled to a defense against a deficiency action. Guarantor, nevertheless, knowingly and voluntarily waives any such defense and acknowledges liability for any deficiency.

Guarantor hereby authorizes Lender, without notice to Guarantor, to apply all payments and credits received from Borrower or from Guarantor or realized from any security in such manner and in such priority as Lender in its sole judgment shall see fit to the indebtedness, obligations and undertakings which are the subject of this Guaranty.

The books and records of Lender showing the accounts between Lender and Borrower shall be admissible in evidence in any action or proceeding hereon as prima facie proof of the items set forth therein.

Guarantor acknowledges that this Guaranty was negotiated, executed and delivered in the State of Georgia, and shall be governed and construed in accordance with the law of the State of Georgia, regardless of the situs of any other Loan Documents.

Guarantor hereby (a) submits to personal jurisdiction in the State of Georgia for the enforcement of this Guaranty, and (b) waives any and all personal rights under the law of any state to object to jurisdiction within the State of Georgia for the purposes of litigation to enforce this Guaranty. In the event that such litigation is commenced, and Guarantor is not otherwise deemed a resident of the State of Georgia, Guarantor agrees that service of process may be made and personal jurisdiction over Guarantor obtained, by the serving of a copy of the summons and complaint upon Guarantor's appointed agent for service of process in the State of Georgia, who, unless otherwise designated as provided herein, shall be the person then serving as President or Chief Executive Officer of Lender.

Nothing contained herein, however, shall prevent Lender from bringing any action or exercising any rights against any security or against Guarantor personally, or against any property of Guarantor, within any other

state. Initiating such proceeding or taking such action in any other state shall in no event constitute a waiver of the agreement contained herein that the law of the State of Georgia shall govern the rights and obligations of Guarantor and Lender hereunder or of the submission herein made by Guarantor to personal jurisdiction within the State of Georgia. The aforesaid means of obtaining personal jurisdiction and perfecting service of process are not intended to be exclusive but are cumulative and in addition to all other means of obtaining personal jurisdiction and perfecting service of process now or hereafter provided by the law of the State of Georgia.

Each Guarantor warrants and represents to Lender that all financial statements heretofore delivered by Guarantor to Lender are true and correct in all respects as of the date hereof.

Each Guarantor waives any and all homestead and exemption rights available by virtue of the Constitution or the laws of the United States of America or of any state as against this Guaranty, and renewal hereof, or any indebtedness represented hereby, and does transfer, convey and assign to Lender a sufficient amount of such homestead or exemption as may be allowed, including such homestead or exemption as may be set apart in bankruptcy, to pay all amounts due hereunder in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness guaranteed hereby, or any renewal thereof, and does hereby, jointly and severally, appoint Lender the attorney-in-fact for each of them, to claim any and all homestead exemptions allowed by law.

As security for the liabilities and obligations of Guarantor hereunder, each Guarantor hereby transfers and conveys to Lender any and all balances, credits, deposits, accounts, items and monies of each Guarantor now or hereafter in the possession or control of or otherwise with Lender, and Lender is hereby given a lien upon, security title to and a security interest in all property of Guarantor of every kind and description now or hereafter in the possession or control of Lender for any reason, including all dividends and distributions on or other rights in connection therewith. Lender may, without demand or notice of any kind, at any time, or from time to time, when any amount shall be due and payable hereunder by such Guarantor, appropriate and apply toward the payment of such amount, and in such order of application as Lender may from time to time elect, any property, balances, credits, deposits, accounts, items or monies of any Guarantor in the possession or control of Lender for any purpose.

This Guaranty may not be changed orally, and no obligation of Guarantor can be released or waived by Lender or any officer or agent of Lender, except by a writing signed by a duly authorized officer of Lender and bearing the seal of Lender. This Guaranty shall be irrevocable by Guarantor so long as the Loan Agreement shall remain in effect and until all indebtedness guaranteed hereby has been completely repaid and all obligations and undertakings of Borrower under, by reason of, or pursuant to the Loan Documents have been completely performed.

Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Guaranty shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt requested, to the party at the address of such party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal

delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response, if given to Lender, shall be addressed as follows:

**EMPIRE FINANCIAL SERVICES, INC.**
**121 EXECUTIVE PARKWAY**
**MILLEDGEVILLE, GEORGIA 31061**

and, if given to Guarantor, shall be addressed as follows:

**DANIEL A. BAILEY**
**16 FOXCHASE DRIVE**
**DOTHAN, ALABAMA 36305**

The provisions of this Guaranty shall be binding upon each Guarantor and each Guarantor's successors, successors-in-title, heirs, legal representatives and assigns and shall inure to the benefit of Lender, its successors, successors-in-title, heirs, legal representatives and assigns. This Guaranty shall in no event be impaired by any change which may arise by reason of the death of Borrower or Guarantor, if individuals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is a corporation, or partnership.

As used herein, the terms "each Guarantor" and "any Guarantor" shall refer to the undersigned single Guarantor, or, if more than one, shall refer respectively to each or any separate member of the undersigned collective Guarantor. If more than one person or entity constitutes, collectively, Borrower, all of the foregoing provisions referring to Borrower shall be construed to refer to each such person or entity individually as well as collectively. For example, if there are two persons who are, collectively, Borrower, this Guaranty shall guarantee the full and prompt payment and performance of all obligations under the Loan Documents of Borrower, and of each of said two persons constituting Borrower.

Each Guarantor has executed this Guaranty individually and not as a partner of Borrower or any other member of Guarantor.

If from any circumstances whatsoever fulfillment of any provisions of this Guaranty, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Guaranty that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this paragraph shall control every other provision of this Guaranty.

Any provisions of this Agreement to the contrary notwithstanding, Guarantor hereby absolutely and unconditionally waives Guarantor's right to reimbursement, contribution and subrogation with regard to any payments made by Guarantor pursuant to the terms of this Unconditional Guaranty of Payment and Performance. Guarantor further agrees to reimburse Lender for any payments made to Lender that Lender is required to pay over to Borrower's Trustee in a bankruptcy case or as a result of any other judicial proceeding.

Notwithstanding the payment and satisfaction of the Note, Guarantor's obligation to reimburse Lender for any payments that are avoided as a result of being characterized, for bankruptcy purposes, as preferential, shall continue for period of one year beyond the date of Borrower's last payment to Lender.

Guarantor warrants and represents to Lender that all financial statements given to Lender are accurate and that Guarantor is currently solvent and will not be rendered insolvent by virtue of financial obligations, contingent or otherwise, arising under terms of this Unconditional Guaranty of Payment and Performance.

The Guaranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender and so assigned by Lender.

This Unconditional Guaranty and Payment of Performance contains the entire agreement between the parties hereto and there are no promises, agreements, conditions, undertakings, warranties and representations, whether written or oral, express or implied, between the parties, other than as set forth herein.

*IN WITNESS WHEREOF,* Guarantor has executed this Guaranty under seal as of the ___26___ day of September, 2005.

_____ [SEAL]
DANIEL A. BAILEY

Guarantor designates the following individual, or entity, a resident of the State of Georgia, as Guarantor's agent for service of process for purposes of any litigation for enforcement of this Guaranty:

_____

_____



## UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

**FOR AND IN CONSIDERATION** of the sum of Ten and No/100 Dollars and other good and valuable considerations, paid or delivered to **C. WAYNE ROBERTS** (hereinafter referred to, collectively, if more than one, as "*Guarantor*"), the receipt and sufficiency whereof are hereby acknowledged by Guarantor, and for the purpose of seeking to induce **EMPIRE FINANCIAL SERVICES, INC.** (hereinafter referred to as "*Lender*") to extend credit to **LAKE MARTIN PARTNERS, L.L.C.** (hereinafter referred to as "*Borrower*"), which extension of credit will be to the direct interest, benefit, and advantage of Guarantor, Guarantor, jointly and severally, if more than one, does hereby unconditionally and absolutely guarantee to Lender and its successors, successors-in-title and assigns (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest as may accrue thereon, either before or after maturity thereof, of that certain promissory note dated **September    2 6    , 2005** made by Borrower to the order of Lender in the principal amount of **TWENTY TWO MILLION AND N0/100 DOLLARS ($22,000,000.00)** (hereinafter referred to as the "*Note*") together with any renewals, modifications, consolidations and extensions thereof, (b) the full and prompt payment and performance of any and all obligations of Borrower or any other party to Lender under the terms of any and all deeds to secure debt, mortgages, deeds of trust, collateral assignments, and security agreements now or hereafter securing the indebtedness evidenced by the Note (hereinafter referred to, collectively, if more than one, as the "*Security Instrument*"), (c) the full and prompt payment and performance of all obligations of Borrower to Lender under the terms of any construction loan agreement relating to the loan evidenced by the Note (hereinafter referred to as the "Construction Loan Agreement"), including, without limitation, the obligation to complete the improvements described in the Construction Loan Agreement, if any, fully paid for and free and clear of all mechanics' and materialmen's liens, (d) the full and prompt payment and performance of any and all other obligations of Borrower to Lender under any other documents or instruments now or hereafter evidencing, securing, or otherwise relating to the indebtedness evidenced by the Note (the Security Instrument, the Construction Loan Agreement, and said other documents and instruments being hereinafter referred to collectively as the "*Loan Documents*"), and (e) the full and prompt payment and performance of any and all other obligations of Borrower to Lender currently in existence or arising while this Guaranty is in effect. Guarantor does hereby agree that if the Note is not paid by Borrower in accordance with its terms, or if any and all sums which are now or may hereafter become due from Borrower to Lender under the Loan Documents are not paid by Borrower in accordance with their terms, Guarantor will immediately make such payments. Guarantor further agrees to pay Lender all expenses (including reasonable attorneys' fees) paid or incurred by Lender in endeavoring to collect the indebtedness, to enforce the obligations of Borrower guaranteed hereby, or any portion thereof, or to enforce this Guaranty.

Guarantor hereby consents and agrees that Lender may at any time, and from time to time, without notice to or further consent from Guarantor, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm or corporation on its behalf or for its account, securing any indebtedness or liability hereby guaranteed, substitute for any collateral so held by it, other collateral of like kind, or of any kind; agree to modify the terms of the Note or the Loan Documents; extend or renew the Note for any period; grant releases, compromises and indulgences with respect to the Note, or the Loan Documents and to any person or entities now or hereafter liable thereunder or hereunder; release any Guarantor or any other guarantor or endorser of the Note, the Security Instrument, the Construction Loan Agreement, or any other of the Loan Documents; or take or fail to take any action of any type whatsoever. No such action which Lender shall take or fail to take in connection with the Loan Documents, or any of them, or any security for the payment of the indebtedness of Borrower to Lender or

for the performance of any obligations or undertakings of Borrower, nor any course of dealing with Borrower or any other person, shall release Guarantor's obligations hereunder, affect this Guaranty in any way or afford Guarantor any recourse against Lender. The provisions of this Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of the Loan Documents, and any and all references herein to Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof. This Guaranty absolutely and unconditionally guarantees the performance of all obligations to Lender made on behalf of Borrower by any officer, partner, or agent of Borrower.

Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to any Guarantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the security described in and encumbered by the Security Instrument; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the indebtedness of Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or for the collection of the indebtedness or the performance of any obligations hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceedings) of Borrower or any other person or entity; (c) any defense based on the failure of Lender to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever, in connection with any obligation hereby guaranteed; (d) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement; or both; (e) any defense based upon a failure of Lender to commence an action against Borrower; (f) any duty on the part of Lender to disclose to Guarantor any facts it may now or hereafter know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Lender; (h) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed; (i) protest and notice of dishonor or of default to Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) any and all other notices whatsoever to which Guarantor might otherwise be entitled; (k) any defense based on lack of due diligence by Lender in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note; and (l) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled. This Guaranty shall not be affected by any litigation between Borrower and Lender nor shall it be impaired because of termination of any relationship between Guarantor and Borrower.

This is a guaranty of payment and performance and not of collection. The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person, nor against securities or liens available to Lender, its successor, successors-in-title, endorsees or assigns. Guarantor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person. In the event of a default under the Loan Documents, or any of them, Lender shall have the right to enforce its rights, powers

and remedies thereunder or hereunder or under any other instrument now or hereafter evidencing, securing or otherwise relating to the indebtedness evidenced by the Note or secured by the Security Instrument or relating to the transactions contemplated by the Loan Agreement, in any order, and all rights, powers and remedies available to Lender in such event shall be nonexclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder by law or in equity.  Accordingly, Guarantor hereby authorizes and empowers Lender upon acceleration of the maturity of the Note, at its sole discretion, and without notice to Guarantor, to exercise any right or remedy which Lender may have, including, but not limited to, judicial foreclosure, exercise of rights of power of sale, acceptance of a deed or assignment in lieu of foreclosure, appointment of a receiver to collect rents and profits, exercise of remedies against personal property, or enforcement of any assignment of leases, as to any security, whether real, personal or intangible.  If the indebtedness guaranteed hereby is partially paid by reason of the election of Lender, its successors, endorsees or assigns, to pursue any of the remedies available to Lender, or if such indebtedness is otherwise partially paid, this Guaranty shall nevertheless remain in full force and effect, and Guarantor shall remain liable for the entire unpaid balance of the indebtedness guaranteed hereby, even though any rights which Guarantor may have against Borrower may be destroyed or diminished by the exercise of any such remedy.  Until all of the obligations of Borrower to Lender have been paid and performed in full, Guarantor shall have no right of subrogation to Lender against Borrower, and Guarantor hereby waives any rights to enforce any remedy which Lender may have against Borrower and any rights to participate in any security for the Note.

In the event that the Lender selects non-judicial foreclosure as a remedy for Borrower's default, the Guarantor's rights to subrogation can be destroyed and Guarantor may, as a result thereof, be entitled to a defense against a deficiency action.  Guarantor, nevertheless, knowingly and voluntarily waives any such defense and acknowledges liability for any deficiency.

Guarantor hereby authorizes Lender, without notice to Guarantor, to apply all payments and credits received from Borrower or from Guarantor or realized from any security in such manner and in such priority as Lender in its sole judgment shall see fit to the indebtedness, obligations and undertakings which are the subject of this Guaranty.

The books and records of Lender showing the accounts between Lender and Borrower shall be admissible in evidence in any action or proceeding hereon as prima facie proof of the items set forth therein.

Guarantor acknowledges that this Guaranty was negotiated, executed and delivered in the State of Georgia, and shall be governed and construed in accordance with the law of the State of Georgia, regardless of the situs of any other Loan Documents.

Guarantor hereby (a) submits to personal jurisdiction in the State of Georgia for the enforcement of this Guaranty, and (b) waives any and all personal rights under the law of any state to object to jurisdiction within the State of Georgia for the purposes of litigation to enforce this Guaranty.  In the event that such litigation is commenced, and Guarantor is not otherwise deemed a resident of the State of Georgia, Guarantor agrees that service of process may be made and personal jurisdiction over Guarantor obtained, by the serving of a copy of the summons and complaint upon Guarantor's appointed agent for service of process in the State of Georgia, who, unless otherwise designated as provided herein, shall be the person then serving as President or Chief Executive Officer of Lender.

Nothing contained herein, however, shall prevent Lender from bringing any action or exercising any rights against any security or against Guarantor personally, or against any property of Guarantor, within any other

state. Initiating such proceeding or taking such action in any other state shall in no event constitute a waiver of the agreement contained herein that the law of the State of Georgia shall govern the rights and obligations of Guarantor and Lender hereunder or of the submission herein made by Guarantor to personal jurisdiction within the State of Georgia. The aforesaid means of obtaining personal jurisdiction and perfecting service of process are not intended to be exclusive but are cumulative and in addition to all other means of obtaining personal jurisdiction and perfecting service of process now or hereafter provided by the law of the State of Georgia.

Each Guarantor warrants and represents to Lender that all financial statements heretofore delivered by Guarantor to Lender are true and correct in all respects as of the date hereof.

Each Guarantor waives any and all homestead and exemption rights available by virtue of the Constitution or the laws of the United States of America or of any state as against this Guaranty, and renewal hereof, or any indebtedness represented hereby, and does transfer, convey and assign to Lender a sufficient amount of such homestead or exemption as may be allowed, including such homestead or exemption as may be set apart in bankruptcy, to pay all amounts due hereunder in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness guaranteed hereby, or any renewal thereof, and does hereby, jointly and severally, appoint Lender the attorney-in-fact for each of them, to claim any and all homestead exemptions allowed by law.

As security for the liabilities and obligations of Guarantor hereunder, each Guarantor hereby transfers and conveys to Lender any and all balances, credits, deposits, accounts, items and monies of each Guarantor now or hereafter in the possession or control of or otherwise with Lender, and Lender is hereby given a lien upon, security title to and a security interest in all property of Guarantor of every kind and description now or hereafter in the possession or control of Lender for any reason, including all dividends and distributions on or other rights in connection therewith. Lender may, without demand or notice of any kind, at any time, or from time to time, when any amount shall be due and payable hereunder by such Guarantor, appropriate and apply toward the payment of such amount, and in such order of application as Lender may from time to time elect, any property, balances, credits, deposits, accounts, items or monies of any Guarantor in the possession or control of Lender for any purpose.

This Guaranty may not be changed orally, and no obligation of Guarantor can be released or waived by Lender or any officer or agent of Lender, except by a writing signed by a duly authorized officer of Lender and bearing the seal of Lender. This Guaranty shall be irrevocable by Guarantor so long as the Loan Agreement shall remain in effect and until all indebtedness guaranteed hereby has been completely repaid and all obligations and undertakings of Borrower under, by reason of, or pursuant to the Loan Documents have been completely performed.

Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Guaranty shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt requested, to the party at the address of such party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal

delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response, if given to Lender, shall be addressed as follows:

**EMPIRE FINANCIAL SERVICES, INC.**
**121 EXECUTIVE PARKWAY**
**MILLEDGEVILLE, GEORGIA 31061**

and, if given to Guarantor, shall be addressed as follows:

**C. WAYNE ROBERTS**
**105 HOLLY HILL ROAD**
**ENTERPRISE, ALABAMA 36330**

The provisions of this Guaranty shall be binding upon each Guarantor and each Guarantor's successors, successors-in-title, heirs, legal representatives and assigns and shall inure to the benefit of Lender, its successors, successors-in-title, heirs, legal representatives and assigns. This Guaranty shall in no event be impaired by any change which may arise by reason of the death of Borrower or Guarantor, if individuals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is a corporation, or partnership.

As used herein, the terms "each Guarantor" and "any Guarantor" shall refer to the undersigned single Guarantor, or, if more than one, shall refer respectively to each or any separate member of the undersigned collective Guarantor. If more than one person or entity constitutes, collectively, Borrower, all of the foregoing provisions referring to Borrower shall be construed to refer to each such person or entity individually as well as collectively. For example, if there are two persons who are, collectively, Borrower, this Guaranty shall guarantee the full and prompt payment and performance of all obligations under the Loan Documents of Borrower, and of each of said two persons constituting Borrower.

Each Guarantor has executed this Guaranty individually and not as a partner of Borrower or any other member of Guarantor.

If from any circumstances whatsoever fulfillment of any provisions of this Guaranty, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Guaranty that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this paragraph shall control every other provision of this Guaranty.

Any provisions of this Agreement to the contrary notwithstanding, Guarantor hereby absolutely and unconditionally waives Guarantor's right to reimbursement, contribution and subrogation with regard to any payments made by Guarantor pursuant to the terms of this Unconditional Guaranty of Payment and Performance. Guarantor further agrees to reimburse Lender for any payments made to Lender that Lender is required to pay over to Borrower's Trustee in a bankruptcy case or as a result of any other judicial proceeding.

Notwithstanding the payment and satisfaction of the Note, Guarantor's obligation to reimburse Lender for any payments that are avoided as a result of being characterized, for bankruptcy purposes, as preferential, shall continue for period of one year beyond the date of Borrower's last payment to Lender.

Guarantor warrants and represents to Lender that all financial statements given to Lender are accurate and that Guarantor is currently solvent and will not be rendered insolvent by virtue of financial obligations, contingent or otherwise, arising under terms of this Unconditional Guaranty of Payment and Performance.

The Guaranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender and so assigned by Lender.

This Unconditional Guaranty and Payment of Performance contains the entire agreement between the parties hereto and there are no promises, agreements, conditions, undertakings, warranties and representations, whether written or oral, express or implied, between the parties, other than as set forth herein.

*IN WITNESS WHEREOF*, Guarantor has executed this Guaranty under seal as of the __26__ day of September, 2005.

_____  [SEAL]
C. WAYNE ROBERTS

Guarantor designates the following individual, or entity, a resident of the State of Georgia, as Guarantor's agent for service of process for purposes of any litigation for enforcement of this Guaranty:

_____
_____
_____



---

# UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

**FOR AND IN CONSIDERATION** of the sum of Ten and No/100 Dollars and other good and valuable considerations, paid or delivered to **TIMOTHY L. EAKES** (hereinafter referred to, collectively, if more than one, as "*Guarantor*"), the receipt and sufficiency whereof are hereby acknowledged by Guarantor, and for the purpose of seeking to induce **EMPIRE FINANCIAL SERVICES, INC.** (hereinafter referred to as "*Lender*") to extend credit to **LAKE MARTIN PARTNERS, L.L.C.** (hereinafter referred to as "*Borrower*"), which extension of credit will be to the direct interest, benefit, and advantage of Guarantor, Guarantor, jointly and severally, if more than one, does hereby unconditionally and absolutely guarantee to Lender and its successors, successors-in-title and assigns (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest as may accrue thereon, either before or after maturity thereof, of that certain promissory note dated **September      2 6      , 2005** made by Borrower to the order of Lender in the principal amount of **TWENTY TWO MILLION AND N0/100 DOLLARS ($22,000,000.00)** (hereinafter referred to as the "*Note*") together with any renewals, modifications, consolidations and extensions thereof, (b) the full and prompt payment and performance of any and all obligations of Borrower or any other party to Lender under the terms of any and all deeds to secure debt, mortgages, deeds of trust, collateral assignments, and security agreements now or hereafter securing the indebtedness evidenced by the Note (hereinafter referred to, collectively, if more than one, as the "*Security Instrument*"), (c) the full and prompt payment and performance of all obligations of Borrower to Lender under the terms of any construction loan agreement relating to the loan evidenced by the Note (hereinafter referred to as the "Construction Loan Agreement"), including, without limitation, the obligation to complete the improvements described in the Construction Loan Agreement, if any, fully paid for and free and clear of all mechanics' and materialmen's liens, (d) the full and prompt payment and performance of any and all other obligations of Borrower to Lender under any other documents or instruments now or hereafter evidencing, securing, or otherwise relating to the indebtedness evidenced by the Note (the Security Instrument, the Construction Loan Agreement, and said other documents and instruments being hereinafter referred to collectively as the "*Loan Documents*"), and (e) the full and prompt payment and performance of any and all other obligations of Borrower to Lender currently in existence or arising while this Guaranty is in effect. Guarantor does hereby agree that if the Note is not paid by Borrower in accordance with its terms, or if any and all sums which are now or may hereafter become due from Borrower to Lender under the Loan Documents are not paid by Borrower in accordance with their terms, Guarantor will immediately make such payments. Guarantor further agrees to pay Lender all expenses (including reasonable attorneys' fees) paid or incurred by Lender in endeavoring to collect the indebtedness, to enforce the obligations of Borrower guaranteed hereby, or any portion thereof, or to enforce this Guaranty.

Guarantor hereby consents and agrees that Lender may at any time, and from time to time, without notice to or further consent from Guarantor, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm or corporation on its behalf or for its account, securing any indebtedness or liability hereby guaranteed, substitute for any collateral so held by it, other collateral of like kind, or of any kind; agree to modify the terms of the Note or the Loan Documents; extend or renew the Note for any period; grant releases, compromises and indulgences with respect to the Note, or the Loan Documents and to any person or entities now or hereafter liable thereunder or hereunder; release any Guarantor or any other guarantor or endorser of the Note, the Security Instrument, the Construction Loan Agreement, or any other of the Loan Documents; or take or fail to take any action of any type whatsoever. No such action which Lender shall take or fail to take in connection with the Loan Documents, or any of them, or any security for the payment of the indebtedness of Borrower to Lender or

for the performance of any obligations or undertakings of Borrower, nor any course of dealing with Borrower or any other person, shall release Guarantor's obligations hereunder, affect this Guaranty in any way or afford Guarantor any recourse against Lender. The provisions of this Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of the Loan Documents, and any and all references herein to Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof. This Guaranty absolutely and unconditionally guarantees the performance of all obligations to Lender made on behalf of Borrower by any officer, partner, or agent of Borrower.

Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to any Guarantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the security described in and encumbered by the Security Instrument; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the indebtedness of Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or for the collection of the indebtedness or the performance of any obligations hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceedings) of Borrower or any other person or entity; (c) any defense based on the failure of Lender to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever, in connection with any obligation hereby guaranteed; (d) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement; or both; (e) any defense based upon a failure of Lender to commence an action against Borrower; (f) any duty on the part of Lender to disclose to Guarantor any facts it may now or hereafter know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Lender; (h) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed; (i) protest and notice of dishonor or of default to Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) any and all other notices whatsoever to which Guarantor might otherwise be entitled; (k) any defense based on lack of due diligence by Lender in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note; and (l) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled. This Guaranty shall not be affected by any litigation between Borrower and Lender nor shall it be impaired because of termination of any relationship between Guarantor and Borrower.

This is a guaranty of payment and performance and not of collection. The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person, nor against securities or liens available to Lender, its successor, successors-in-title, endorsees or assigns. Guarantor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person. In the event of a default under the Loan Documents, or any of them, Lender shall have the right to enforce its rights, powers

and remedies thereunder or hereunder or under any other instrument now or hereafter evidencing, securing or otherwise relating to the indebtedness evidenced by the Note or secured by the Security Instrument or relating to the transactions contemplated by the Loan Agreement, in any order, and all rights, powers and remedies available to Lender in such event shall be nonexclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder by law or in equity. Accordingly, Guarantor hereby authorizes and empowers Lender upon acceleration of the maturity of the Note, at its sole discretion, and without notice to Guarantor, to exercise any right or remedy which Lender may have, including, but not limited to, judicial foreclosure, exercise of rights of power of sale, acceptance of a deed or assignment in lieu of foreclosure, appointment of a receiver to collect rents and profits, exercise of remedies against personal property, or enforcement of any assignment of leases, as to any security, whether real, personal or intangible. If the indebtedness guaranteed hereby is partially paid by reason of the election of Lender, its successors, endorsees or assigns, to pursue any of the remedies available to Lender, or if such indebtedness is otherwise partially paid, this Guaranty shall nevertheless remain in full force and effect, and Guarantor shall remain liable for the entire unpaid balance of the indebtedness guaranteed hereby, even though any rights which Guarantor may have against Borrower may be destroyed or diminished by the exercise of any such remedy. Until all of the obligations of Borrower to Lender have been paid and performed in full, Guarantor shall have no right of subrogation to Lender against Borrower, and Guarantor hereby waives any rights to enforce any remedy which Lender may have against Borrower and any rights to participate in any security for the Note.

In the event that the Lender selects non-judicial foreclosure as a remedy for Borrower's default, the Guarantor's rights to subrogation can be destroyed and Guarantor may, as a result thereof, be entitled to a defense against a deficiency action. Guarantor, nevertheless, knowingly and voluntarily waives any such defense and acknowledges liability for any deficiency.

Guarantor hereby authorizes Lender, without notice to Guarantor, to apply all payments and credits received from Borrower or from Guarantor or realized from any security in such manner and in such priority as Lender in its sole judgment shall see fit to the indebtedness, obligations and undertakings which are the subject of this Guaranty.

The books and records of Lender showing the accounts between Lender and Borrower shall be admissible in evidence in any action or proceeding hereon as prima facie proof of the items set forth therein.

Guarantor acknowledges that this Guaranty was negotiated, executed and delivered in the State of Georgia, and shall be governed and construed in accordance with the law of the State of Georgia, regardless of the situs of any other Loan Documents.

Guarantor hereby (a) submits to personal jurisdiction in the State of Georgia for the enforcement of this Guaranty, and (b) waives any and all personal rights under the law of any state to object to jurisdiction within the State of Georgia for the purposes of litigation to enforce this Guaranty. In the event that such litigation is commenced, and Guarantor is not otherwise deemed a resident of the State of Georgia, Guarantor agrees that service of process may be made and personal jurisdiction over Guarantor obtained, by the serving of a copy of the summons and complaint upon Guarantor's appointed agent for service of process in the State of Georgia, who, unless otherwise designated as provided herein, shall be the person then serving as President or Chief Executive Officer of Lender.

Nothing contained herein, however, shall prevent Lender from bringing any action or exercising any rights against any security or against Guarantor personally, or against any property of Guarantor, within any other

state. Initiating such proceeding or taking such action in any other state shall in no event constitute a waiver of the agreement contained herein that the law of the State of Georgia shall govern the rights and obligations of Guarantor and Lender hereunder or of the submission herein made by Guarantor to personal jurisdiction within the State of Georgia. The aforesaid means of obtaining personal jurisdiction and perfecting service of process are not intended to be exclusive but are cumulative and in addition to all other means of obtaining personal jurisdiction and perfecting service of process now or hereafter provided by the law of the State of Georgia.

Each Guarantor warrants and represents to Lender that all financial statements heretofore delivered by Guarantor to Lender are true and correct in all respects as of the date hereof.

Each Guarantor waives any and all homestead and exemption rights available by virtue of the Constitution or the laws of the United States of America or of any state as against this Guaranty, and renewal hereof, or any indebtedness represented hereby, and does transfer, convey and assign to Lender a sufficient amount of such homestead or exemption as may be allowed, including such homestead or exemption as may be set apart in bankruptcy, to pay all amounts due hereunder in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness guaranteed hereby, or any renewal thereof, and does hereby, jointly and severally, appoint Lender the attorney-in-fact for each of them, to claim any and all homestead exemptions allowed by law.

As security for the liabilities and obligations of Guarantor hereunder, each Guarantor hereby transfers and conveys to Lender any and all balances, credits, deposits, accounts, items and monies of each Guarantor now or hereafter in the possession or control of or otherwise with Lender, and Lender is hereby given a lien upon, security title to and a security interest in all property of Guarantor of every kind and description now or hereafter in the possession or control of Lender for any reason, including all dividends and distributions on or other rights in connection therewith. Lender may, without demand or notice of any kind, at any time, or from time to time, when any amount shall be due and payable hereunder by such Guarantor, appropriate and apply toward the payment of such amount, and in such order of application as Lender may from time to time elect, any property, balances, credits, deposits, accounts, items or monies of any Guarantor in the possession or control of Lender for any purpose.

This Guaranty may not be changed orally, and no obligation of Guarantor can be released or waived by Lender or any officer or agent of Lender, except by a writing signed by a duly authorized officer of Lender and bearing the seal of Lender. This Guaranty shall be irrevocable by Guarantor so long as the Loan Agreement shall remain in effect and until all indebtedness guaranteed hereby has been completely repaid and all obligations and undertakings of Borrower under, by reason of, or pursuant to the Loan Documents have been completely performed.

Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Guaranty shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt requested, to the party at the address of such party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal

delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response, if given to Lender, shall be addressed as follows:

**EMPIRE FINANCIAL SERVICES, INC.**
**121 EXECUTIVE PARKWAY**
**MILLEDGEVILLE, GEORGIA 31061**

and, if given to Guarantor, shall be addressed as follows:

**TIMOTHY L. EAKES**
**614 COUNTRY CLUB ROAD**
**TROY, ALABAMA 36079**

The provisions of this Guaranty shall be binding upon each Guarantor and each Guarantor's successors, successors-in-title, heirs, legal representatives and assigns and shall inure to the benefit of Lender, its successors, successors-in-title, heirs, legal representatives and assigns. This Guaranty shall in no event be impaired by any change which may arise by reason of the death of Borrower or Guarantor, if individuals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is a corporation, or partnership.

As used herein, the terms "each Guarantor" and "any Guarantor" shall refer to the undersigned single Guarantor, or, if more than one, shall refer respectively to each or any separate member of the undersigned collective Guarantor. If more than one person or entity constitutes, collectively, Borrower, all of the foregoing provisions referring to Borrower shall be construed to refer to each such person or entity individually as well as collectively. For example, if there are two persons who are, collectively, Borrower, this Guaranty shall guarantee the full and prompt payment and performance of all obligations under the Loan Documents of Borrower, and of each of said two persons constituting Borrower.

Each Guarantor has executed this Guaranty individually and not as a partner of Borrower or any other member of Guarantor.

If from any circumstances whatsoever fulfillment of any provisions of this Guaranty, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Guaranty that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this paragraph shall control every other provision of this Guaranty.

Any provisions of this Agreement to the contrary notwithstanding, Guarantor hereby absolutely and unconditionally waives Guarantor's right to reimbursement, contribution and subrogation with regard to any payments made by Guarantor pursuant to the terms of this Unconditional Guaranty of Payment and Performance. Guarantor further agrees to reimburse Lender for any payments made to Lender that Lender is required to pay over to Borrower's Trustee in a bankruptcy case or as a result of any other judicial proceeding.

Notwithstanding the payment and satisfaction of the Note, Guarantor's obligation to reimburse Lender for any payments that are avoided as a result of being characterized, for bankruptcy purposes, as preferential, shall continue for period of one year beyond the date of Borrower's last payment to Lender.

Guarantor warrants and represents to Lender that all financial statements given to Lender are accurate and that Guarantor is currently solvent and will not be rendered insolvent by virtue of financial obligations, contingent or otherwise, arising under terms of this Unconditional Guaranty of Payment and Performance.

The Guaranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender and so assigned by Lender.

This Unconditional Guaranty and Payment of Performance contains the entire agreement between the parties hereto and there are no promises, agreements, conditions, undertakings, warranties and representations, whether written or oral, express or implied, between the parties, other than as set forth herein.

*IN WITNESS WHEREOF*, Guarantor has executed this Guaranty under seal as of the 26 day of September, 2005.

_____    [SEAL]
TIMOTHY L. EAKES

Guarantor designates the following individual, or entity, a resident of the State of Georgia, as Guarantor's agent for service of process for purposes of any litigation for enforcement of this Guaranty:

_____
_____
_____



EXHIBIT
12

## UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

**FOR AND IN CONSIDERATION** of the sum of Ten and No/100 Dollars and other good and valuable considerations, paid or delivered to GARY L. ANDERSON (hereinafter referred to, collectively, if more than one, as *"Guarantor"*), the receipt and sufficiency whereof are hereby acknowledged by Guarantor, and for the purpose of seeking to induce **EMPIRE FINANCIAL SERVICES, INC.** (hereinafter referred to as *"Lender"*) to extend credit to **LAKE MARTIN PARTNERS, L.L.C.** (hereinafter referred to as *"Borrower"*), which extension of credit will be to the direct interest, benefit, and advantage of Guarantor, Guarantor, jointly and severally, if more than one, does hereby unconditionally and absolutely guarantee to Lender and its successors, successors-in-title and assigns (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest as may accrue thereon, either before or after maturity thereof, of that certain promissory note dated **September ___2-6___**, 2005 made by Borrower to the order of Lender in the principal amount of **TWENTY TWO MILLION AND N0/100 DOLLARS ($22,000,000.00)** (hereinafter referred to as the *"Note"*) together with any renewals, modifications, consolidations and extensions thereof, (b) the full and prompt payment and performance of any and all obligations of Borrower or any other party to Lender under the terms of any and all deeds to secure debt, mortgages, deeds of trust, collateral assignments, and security agreements now or hereafter securing the indebtedness evidenced by the Note (hereinafter referred to, collectively, if more than one, as the *"Security Instrument"*), (c) the full and prompt payment and performance of all obligations of Borrower to Lender under the terms of any construction loan agreement relating to the loan evidenced by the Note (hereinafter referred to as the "Construction Loan Agreement"), including, without limitation, the obligation to complete the improvements described in the Construction Loan Agreement, if any, fully paid for and free and clear of all mechanics' and materialmen's liens, (d) the full and prompt payment and performance of any and all other obligations of Borrower to Lender under any other documents or instruments now or hereafter evidencing, securing, or otherwise relating to the indebtedness evidenced by the Note (the Security Instrument, the Construction Loan Agreement, and said other documents and instruments being hereinafter referred to collectively as the *"Loan Documents"*), and (e) the full and prompt payment and performance of any and all other obligations of Borrower to Lender currently in existence or arising while this Guaranty is in effect. Guarantor does hereby agree that if the Note is not paid by Borrower in accordance with its terms, or if any and all sums which are now or may hereafter become due from Borrower to Lender under the Loan Documents are not paid by Borrower in accordance with their terms, Guarantor will immediately make such payments. Guarantor further agrees to pay Lender all expenses (including reasonable attorneys' fees) paid or incurred by Lender in endeavoring to collect the indebtedness, to enforce the obligations of Borrower guaranteed hereby, or any portion thereof, or to enforce this Guaranty.

Guarantor hereby consents and agrees that Lender may at any time, and from time to time, without notice to or further consent from Guarantor, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm or corporation on its behalf or for its account, securing any indebtedness or liability hereby guaranteed, substitute for any collateral so held by it, other collateral of like kind, or of any kind; agree to modify the terms of the Note or the Loan Documents; extend or renew the Note for any period; grant releases, compromises and indulgences with respect to the Note, or the Loan Documents and to any person or entities now or hereafter liable thereunder or hereunder; release any Guarantor or any other guarantor or endorser of the Note, the Security Instrument, the Construction Loan Agreement, or any other of the Loan Documents; or take or fail to take any action of any type whatsoever. No such action which Lender shall take or fail to take in connection with the Loan Documents, or any of them, or any security for the payment of the indebtedness of Borrower to Lender or

for the performance of any obligations or undertakings of Borrower, nor any course of dealing with Borrower or any other person, shall release Guarantor's obligations hereunder, affect this Guaranty in any way or afford Guarantor any recourse against Lender. The provisions of this Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of the Loan Documents, and any and all references herein to Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof. This Guaranty absolutely and unconditionally guarantees the performance of all obligations to Lender made on behalf of Borrower by any officer, partner, or agent of Borrower.

Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to any Guarantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the security described in and encumbered by the Security Instrument; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the indebtedness of Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or for the collection of the indebtedness or the performance of any obligations hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceedings) of Borrower or any other person or entity; (c) any defense based on the failure of Lender to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever, in connection with any obligation hereby guaranteed; (d) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement; or both; (e) any defense based upon a failure of Lender to commence an action against Borrower; (f) any duty on the part of Lender to disclose to Guarantor any facts it may now or hereafter know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Lender; (h) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed; (i) protest and notice of dishonor or of default to Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) any and all other notices whatsoever to which Guarantor might otherwise be entitled; (k) any defense based on lack of due diligence by Lender in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note; and (l) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled. This Guaranty shall not be affected by any litigation between Borrower and Lender nor shall it be impaired because of termination of any relationship between Guarantor and Borrower.

This is a guaranty of payment and performance and not of collection. The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person, nor against securities or liens available to Lender, its successor, successors-in-title, endorsees or assigns. Guarantor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person. In the event of a default under the Loan Documents, or any of them, Lender shall have the right to enforce its rights, powers

and remedies thereunder or hereunder or under any other instrument now or hereafter evidencing, securing or otherwise relating to the indebtedness evidenced by the Note or secured by the Security Instrument or relating to the transactions contemplated by the Loan Agreement, in any order, and all rights, powers and remedies available to Lender in such event shall be nonexclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder by law or in equity. Accordingly, Guarantor hereby authorizes and empowers Lender upon acceleration of the maturity of the Note, at its sole discretion, and without notice to Guarantor, to exercise any right or remedy which Lender may have, including, but not limited to, judicial foreclosure, exercise of rights of power of sale, acceptance of a deed or assignment in lieu of foreclosure, appointment of a receiver to collect rents and profits, exercise of remedies against personal property, or enforcement of any assignment of leases, as to any security, whether real, personal or intangible. If the indebtedness guaranteed hereby is partially paid by reason of the election of Lender, its successors, endorsees or assigns, to pursue any of the remedies available to Lender, or if such indebtedness is otherwise partially paid, this Guaranty shall nevertheless remain in full force and effect, and Guarantor shall remain liable for the entire unpaid balance of the indebtedness guaranteed hereby, even though any rights which Guarantor may have against Borrower may be destroyed or diminished by the exercise of any such remedy. Until all of the obligations of Borrower to Lender have been paid and performed in full, Guarantor shall have no right of subrogation to Lender against Borrower, and Guarantor hereby waives any rights to enforce any remedy which Lender may have against Borrower and any rights to participate in any security for the Note.

In the event that the Lender selects non-judicial foreclosure as a remedy for Borrower's default, the Guarantor's rights to subrogation can be destroyed and Guarantor may, as a result thereof, be entitled to a defense against a deficiency action. Guarantor, nevertheless, knowingly and voluntarily waives any such defense and acknowledges liability for any deficiency.

Guarantor hereby authorizes Lender, without notice to Guarantor, to apply all payments and credits received from Borrower or from Guarantor or realized from any security in such manner and in such priority as Lender in its sole judgment shall see fit to the indebtedness, obligations and undertakings which are the subject of this Guaranty.

The books and records of Lender showing the accounts between Lender and Borrower shall be admissible in evidence in any action or proceeding hereon as prima facie proof of the items set forth therein.

Guarantor acknowledges that this Guaranty was negotiated, executed and delivered in the State of Georgia, and shall be governed and construed in accordance with the law of the State of Georgia, regardless of the situs of any other Loan Documents.

Guarantor hereby (a) submits to personal jurisdiction in the State of Georgia for the enforcement of this Guaranty, and (b) waives any and all personal rights under the law of any state to object to jurisdiction within the State of Georgia for the purposes of litigation to enforce this Guaranty. In the event that such litigation is commenced, and Guarantor is not otherwise deemed a resident of the State of Georgia, Guarantor agrees that service of process may be made and personal jurisdiction over Guarantor obtained, by the serving of a copy of the summons and complaint upon Guarantor's appointed agent for service of process in the State of Georgia, who, unless otherwise designated as provided herein, shall be the person then serving as President or Chief Executive Officer of Lender.

Nothing contained herein, however, shall prevent Lender from bringing any action or exercising any rights against any security or against Guarantor personally, or against any property of Guarantor, within any other

state. Initiating such proceeding or taking such action in any other state shall in no event constitute a waiver of the agreement contained herein that the law of the State of Georgia shall govern the rights and obligations of Guarantor and Lender hereunder or of the submission herein made by Guarantor to personal jurisdiction within the State of Georgia. The aforesaid means of obtaining personal jurisdiction and perfecting service of process are not intended to be exclusive but are cumulative and in addition to all other means of obtaining personal jurisdiction and perfecting service of process now or hereafter provided by the law of the State of Georgia.

Each Guarantor warrants and represents to Lender that all financial statements heretofore delivered by Guarantor to Lender are true and correct in all respects as of the date hereof.

Each Guarantor waives any and all homestead and exemption rights available by virtue of the Constitution or the laws of the United States of America or of any state as against this Guaranty, and renewal hereof, or any indebtedness represented hereby, and does transfer, convey and assign to Lender a sufficient amount of such homestead or exemption as may be allowed, including such homestead or exemption as may be set apart in bankruptcy, to pay all amounts due hereunder in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness guaranteed hereby, or any renewal thereof, and does hereby, jointly and severally, appoint Lender the attorney-in-fact for each of them, to claim any and all homestead exemptions allowed by law.

As security for the liabilities and obligations of Guarantor hereunder, each Guarantor hereby transfers and conveys to Lender any and all balances, credits, deposits, accounts, items and monies of each Guarantor now or hereafter in the possession or control of or otherwise with Lender, and Lender is hereby given a lien upon, security title to and a security interest in all property of Guarantor of every kind and description now or hereafter in the possession or control of Lender for any reason, including all dividends and distributions on or other rights in connection therewith. Lender may, without demand or notice of any kind, at any time, or from time to time, when any amount shall be due and payable hereunder by such Guarantor, appropriate and apply toward the payment of such amount, and in such order of application as Lender may from time to time elect, any property, balances, credits, deposits, accounts, items or monies of any Guarantor in the possession or control of Lender for any purpose.

This Guaranty may not be changed orally, and no obligation of Guarantor can be released or waived by Lender or any officer or agent of Lender, except by a writing signed by a duly authorized officer of Lender and bearing the seal of Lender. This Guaranty shall be irrevocable by Guarantor so long as the Loan Agreement shall remain in effect and until all indebtedness guaranteed hereby has been completely repaid and all obligations and undertakings of Borrower under, by reason of, or pursuant to the Loan Documents have been completely performed.

Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Guaranty shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt requested, to the party at the address of such party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal

delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response, if given to Lender, shall be addressed as follows:

**EMPIRE FINANCIAL SERVICES, INC.**
**121 EXECUTIVE PARKWAY**
**MILLEDGEVILLE, GEORGIA 31061**

and, if given to Guarantor, shall be addressed as follows:

**GARY L. ANDERSON**
**2367 WOODLEAF DRIVE**
**DECATUR, GA 30033**

The provisions of this Guaranty shall be binding upon each Guarantor and each Guarantor's successors, successors-in-title, heirs, legal representatives and assigns and shall inure to the benefit of Lender, its successors, successors-in-title, heirs, legal representatives and assigns. This Guaranty shall in no event be impaired by any change which may arise by reason of the death of Borrower or Guarantor, if individuals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is a corporation, or partnership.

As used herein, the terms "each Guarantor" and "any Guarantor" shall refer to the undersigned single Guarantor, or, if more than one, shall refer respectively to each or any separate member of the undersigned collective Guarantor. If more than one person or entity constitutes, collectively, Borrower, all of the foregoing provisions referring to Borrower shall be construed to refer to each such person or entity individually as well as collectively. For example, if there are two persons who are, collectively, Borrower, this Guaranty shall guarantee the full and prompt payment and performance of all obligations under the Loan Documents of Borrower, and of each of said two persons constituting Borrower.

Each Guarantor has executed this Guaranty individually and not as a partner of Borrower or any other member of Guarantor.

If from any circumstances whatsoever fulfillment of any provisions of this Guaranty, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Guaranty that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this paragraph shall control every other provision of this Guaranty.

Any provisions of this Agreement to the contrary notwithstanding, Guarantor hereby absolutely and unconditionally waives Guarantor's right to reimbursement, contribution and subrogation with regard to any payments made by Guarantor pursuant to the terms of this Unconditional Guaranty of Payment and Performance. Guarantor further agrees to reimburse Lender for any payments made to Lender that Lender is required to pay over to Borrower's Trustee in a bankruptcy case or as a result of any other judicial proceeding.

Notwithstanding the payment and satisfaction of the Note, Guarantor's obligation to reimburse Lender for any payments that are avoided as a result of being characterized, for bankruptcy purposes, as preferential, shall continue for period of one year beyond the date of Borrower's last payment to Lender.

Guarantor warrants and represents to Lender that all financial statements given to Lender are accurate and that Guarantor is currently solvent and will not be rendered insolvent by virtue of financial obligations, contingent or otherwise, arising under terms of this Unconditional Guaranty of Payment and Performance.

The Guaranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender and so assigned by Lender.

This Unconditional Guaranty and Payment of Performance contains the entire agreement between the parties hereto and there are no promises, agreements, conditions, undertakings, warranties and representations, whether written or oral, express or implied, between the parties, other than as set forth herein.

*IN WITNESS WHEREOF*, Guarantor has executed this Guaranty under seal as of the _26_ day of September, 2005.

_____ [SEAL]
GARY L. ANDERSON

Guarantor designates the following individual, or entity, a resident of the State of Georgia, as Guarantor's agent for service of process for purposes of any litigation for enforcement of this Guaranty:

_____

_____

EXHIBIT

13

## UNCONDITIONAL GUARANTY OF PAYMENT AND PERFORMANCE

**FOR AND IN CONSIDERATION** of the sum of Ten and No/100 Dollars and other good and valuable considerations, paid or delivered to **KEITH A. LAFERRIERE** (hereinafter referred to, collectively, if more than one, as *"Guarantor"*), the receipt and sufficiency whereof are hereby acknowledged by Guarantor, and for the purpose of seeking to induce **EMPIRE FINANCIAL SERVICES, INC.** (hereinafter referred to as *"Lender"*) to extend credit to **LAKE MARTIN PARTNERS, L.L.C.** (hereinafter referred to as *"Borrower"*), which extension of credit will be to the direct interest, benefit, and advantage of Guarantor, Guarantor, jointly and severally, if more than one, does hereby unconditionally and absolutely guarantee to Lender and its successors, successors-in-title and assigns (a) the full and prompt payment when due, whether by acceleration or otherwise, with such interest as may accrue thereon, either before or after maturity thereof, of that certain promissory note dated September **26**, 2005 made by Borrower to the order of Lender in the principal amount of **TWENTY TWO MILLION AND N0/100 DOLLARS ($22,000,000.00)** (hereinafter referred to as the *"Note"*) together with any renewals, modifications, consolidations and extensions thereof, (b) the full and prompt payment and performance of any and all obligations of Borrower or any other party to Lender under the terms of any and all deeds to secure debt, mortgages, deeds of trust, collateral assignments, and security agreements now or hereafter securing the indebtedness evidenced by the Note (hereinafter referred to, collectively, if more than one, as the *"Security Instrument"*), (c) the full and prompt payment and performance of all obligations of Borrower to Lender under the terms of any construction loan agreement relating to the loan evidenced by the Note (hereinafter referred to as the "Construction Loan Agreement"), including, without limitation, the obligation to complete the improvements described in the Construction Loan Agreement, if any, fully paid for and free and clear of all mechanics' and materialmen's liens, (d) the full and prompt payment and performance of any and all other obligations of Borrower to Lender under any other documents or instruments now or hereafter evidencing, securing, or otherwise relating to the indebtedness evidenced by the Note (the Security Instrument, the Construction Loan Agreement, and said other documents and instruments being hereinafter referred to collectively as the *"Loan Documents"*), and (e) the full and prompt payment and performance of any and all other obligations of Borrower to Lender currently in existence or arising while this Guaranty is in effect. Guarantor does hereby agree that if the Note is not paid by Borrower in accordance with its terms, or if any and all sums which are now or may hereafter become due from Borrower to Lender under the Loan Documents are not paid by Borrower in accordance with their terms, Guarantor will immediately make such payments. Guarantor further agrees to pay Lender all expenses (including reasonable attorneys' fees) paid or incurred by Lender in endeavoring to collect the indebtedness, to enforce the obligations of Borrower guaranteed hereby, or any portion thereof, or to enforce this Guaranty.

Guarantor hereby consents and agrees that Lender may at any time, and from time to time, without notice to or further consent from Guarantor, either with or without consideration, surrender any property or other security of any kind or nature whatsoever held by it or by any person, firm or corporation on its behalf or for its account, securing any indebtedness or liability hereby guaranteed, substitute for any collateral so held by it, other collateral of like kind, or of any kind; agree to modify the terms of the Note or the Loan Documents; extend or renew the Note for any period; grant releases, compromises and indulgences with respect to the Note, or the Loan Documents and to any person or entities now or hereafter liable thereunder or hereunder; release any Guarantor or any other guarantor or endorser of the Note, the Security Instrument, the Construction Loan Agreement, or any other of the Loan Documents; or take or fail to take any action of any type whatsoever. No such action which Lender shall take or fail to take in connection with the Loan

Documents, or any of them, or any security for the payment of the indebtedness of Borrower to Lender or for the performance of any obligations or undertakings of Borrower, nor any course of dealing with Borrower or any other person, shall release Guarantor's obligations hereunder, affect this Guaranty in any way or afford Guarantor any recourse against Lender. The provisions of this Guaranty shall extend and be applicable to all renewals, amendments, extensions, consolidations and modifications of the Loan Documents, and any and all references herein to Loan Documents shall be deemed to include any such renewals, extensions, amendments, consolidations or modifications thereof. This Guaranty absolutely and unconditionally guarantees the performance of all obligations to Lender made on behalf of Borrower by any officer, partner, or agent of Borrower.

Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to any Guarantor to all indebtedness of Borrower to Lender, and agrees with Lender that Guarantor shall not demand or accept any payment of principal or interest from Borrower, shall not claim any offset or other reduction of Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any of the security described in and encumbered by the Security Instrument; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by Guarantor as trustee for Lender and be paid over to Lender on account of the indebtedness of Borrower to Lender, but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

Guarantor hereby waives and agrees not to assert or take advantage of (a) the defense of the statute of limitations in any action hereunder or for the collection of the indebtedness or the performance of any obligations hereby guaranteed; (b) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor or any other person or entity, or the failure of Lender to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceedings) of Borrower or any other person or entity; (c) any defense based on the failure of Lender to give notice of the existence, creation or incurring of any new or additional indebtedness or obligation or of any action or non-action on the part of any other person whomsoever, in connection with any obligation hereby guaranteed; (d) any defense based upon an election of remedies by Lender which destroys or otherwise impairs any subrogation rights of Guarantor or the right of Guarantor to proceed against Borrower for reimbursement; or both; (e) any defense based upon a failure of Lender to commence an action against Borrower; (f) any duty on the part of Lender to disclose to Guarantor any facts it may now or hereafter know regarding Borrower; (g) acceptance or notice of acceptance of this Guaranty by Lender; (h) notice of presentment and demand for payment of any of the indebtedness or performance of any of the obligations hereby guaranteed; (i) protest and notice of dishonor or of default to Guarantor or to any other party with respect to the indebtedness or performance of obligations hereby guaranteed; (j) any and all other notices whatsoever to which Guarantor might otherwise be entitled; (k) any defense based on lack of due diligence by Lender in collection, protection or realization upon any collateral securing the indebtedness evidenced by the Note; and (l) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled. This Guaranty shall not be affected by any litigation between Borrower and Lender nor shall it be impaired because of termination of any relationship between Guarantor and Borrower.

This is a guaranty of payment and performance and not of collection. The liability of Guarantor under this Guaranty shall be direct and immediate and not conditional or contingent upon the pursuit of any remedies against Borrower or any other person, nor against securities or liens available to Lender, its successor, successors-in-title, endorsees or assigns. Guarantor waives any right to require that an action be brought against Borrower or any other person or to require that resort be had to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any other person. In the event of a

default under the Loan Documents, or any of them, Lender shall have the right to enforce its rights, powers and remedies thereunder or hereunder or under any other instrument now or hereafter evidencing, securing or otherwise relating to the indebtedness evidenced by the Note or secured by the Security Instrument or relating to the transactions contemplated by the Loan Agreement, in any order, and all rights, powers and remedies available to Lender in such event shall be nonexclusive and cumulative of all other rights, powers and remedies provided thereunder or hereunder by law or in equity.  Accordingly, Guarantor hereby authorizes and empowers Lender upon acceleration of the maturity of the Note, at its sole discretion, and without notice to Guarantor, to exercise any right or remedy which Lender may have, including, but not limited to, judicial foreclosure, exercise of rights of power of sale, acceptance of a deed or assignment in lieu of foreclosure, appointment of a receiver to collect rents and profits, exercise of remedies against personal property, or enforcement of any assignment of leases, as to any security, whether real, personal or intangible.  If the indebtedness guaranteed hereby is partially paid by reason of the election of Lender, its successors, endorsees or assigns, to pursue any of the remedies available to Lender, or if such indebtedness is otherwise partially paid, this Guaranty shall nevertheless remain in full force and effect, and Guarantor shall remain liable for the entire unpaid balance of the indebtedness guaranteed hereby, even though any rights which Guarantor may have against Borrower may be destroyed or diminished by the exercise of any such remedy.  Until all of the obligations of Borrower to Lender have been paid and performed in full, Guarantor shall have no right of subrogation to Lender against Borrower, and Guarantor hereby waives any rights to enforce any remedy which Lender may have against Borrower and any rights to participate in any security for the Note.

In the event that the Lender selects non-judicial foreclosure as a remedy for Borrower's default, the Guarantor's rights to subrogation can be destroyed and Guarantor may, as a result thereof, be entitled to a defense against a deficiency action.  Guarantor, nevertheless, knowingly and voluntarily waives any such defense and acknowledges liability for any deficiency.

Guarantor hereby authorizes Lender, without notice to Guarantor, to apply all payments and credits received from Borrower or from Guarantor or realized from any security in such manner and in such priority as Lender in its sole judgment shall see fit to the indebtedness, obligations and undertakings which are the subject of this Guaranty.

The books and records of Lender showing the accounts between Lender and Borrower shall be admissible in evidence in any action or proceeding hereon as prima facie proof of the items set forth therein.

Guarantor acknowledges that this Guaranty was negotiated, executed and delivered in the State of Georgia, and shall be governed and construed in accordance with the law of the State of Georgia, regardless of the situs of any other Loan Documents.

Guarantor hereby (a) submits to personal jurisdiction in the State of Georgia for the enforcement of this Guaranty, and (b) waives any and all personal rights under the law of any state to object to jurisdiction within the State of Georgia for the purposes of litigation to enforce this Guaranty.  In the event that such litigation is commenced, and Guarantor is not otherwise deemed a resident of the State of Georgia, Guarantor agrees that service of process may be made and personal jurisdiction over Guarantor obtained, by the serving of a copy of the summons and complaint upon Guarantor's appointed agent for service of process in the State of Georgia, who, unless otherwise designated as provided herein, shall be the person then serving as President or Chief Executive Officer of Lender.

Nothing contained herein, however, shall prevent Lender from bringing any action or exercising any rights against any security or against Guarantor personally, or against any property of Guarantor, within any other state. Initiating such proceeding or taking such action in any other state shall in no event constitute a waiver of the agreement contained herein that the law of the State of Georgia shall govern the rights and obligations of Guarantor and Lender hereunder or of the submission herein made by Guarantor to personal jurisdiction within the State of Georgia. The aforesaid means of obtaining personal jurisdiction and perfecting service of process are not intended to be exclusive but are cumulative and in addition to all other means of obtaining personal jurisdiction and perfecting service of process now or hereafter provided by the law of the State of Georgia.

Each Guarantor warrants and represents to Lender that all financial statements heretofore delivered by Guarantor to Lender are true and correct in all respects as of the date hereof.

Each Guarantor waives any and all homestead and exemption rights available by virtue of the Constitution or the laws of the United States of America or of any state as against this Guaranty, and renewal hereof, or any indebtedness represented hereby, and does transfer, convey and assign to Lender a sufficient amount of such homestead or exemption as may be allowed, including such homestead or exemption as may be set apart in bankruptcy, to pay all amounts due hereunder in full, with all costs of collection, and does hereby direct any trustee in bankruptcy having possession of such homestead or exemption to deliver to Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness guaranteed hereby, or any renewal thereof, and does hereby, jointly and severally, appoint Lender the attorney-in-fact for each of them, to claim any and all homestead exemptions allowed by law.

As security for the liabilities and obligations of Guarantor hereunder, each Guarantor hereby transfers and conveys to Lender any and all balances, credits, deposits, accounts, items and monies of each Guarantor now or hereafter in the possession or control of or otherwise with Lender, and Lender is hereby given a lien upon, security title to and a security interest in all property of Guarantor of every kind and description now or hereafter in the possession or control of Lender for any reason, including all dividends and distributions on or other rights in connection therewith. Lender may, without demand or notice of any kind, at any time, or from time to time, when any amount shall be due and payable hereunder by such Guarantor, appropriate and apply toward the payment of such amount, and in such order of application as Lender may from time to time elect, any property, balances, credits, deposits, accounts, items or monies of any Guarantor in the possession or control of Lender for any purpose.

This Guaranty may not be changed orally, and no obligation of Guarantor can be released or waived by Lender or any officer or agent of Lender, except by a writing signed by a duly authorized officer of Lender and bearing the seal of Lender. This Guaranty shall be irrevocable by Guarantor so long as the Loan Agreement shall remain in effect and until all indebtedness guaranteed hereby has been completely repaid and all obligations and undertakings of Borrower under, by reason of, or pursuant to the Loan Documents have been completely performed.

Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Guaranty shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt requested, to the party at the address of such party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any such notice,

election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response, if given to Lender, shall be addressed as follows:

**EMPIRE FINANCIAL SERVICES, INC.**
**121 EXECUTIVE PARKWAY**
**MILLEDGEVILLE, GEORGIA 31061**

and, if given to Guarantor, shall be addressed as follows:

**KEITH A. LAFERRIERE**
**458 S. OAKS DRIVE**
**SPRINGFIELD, MO 65809**

The provisions of this Guaranty shall be binding upon each Guarantor and each Guarantor's successors, successors-in-title, heirs, legal representatives and assigns and shall inure to the benefit of Lender, its successors, successors-in-title, heirs, legal representatives and assigns. This Guaranty shall in no event be impaired by any change which may arise by reason of the death of Borrower or Guarantor, if individuals, or by reason of the dissolution of Borrower or Guarantor, if Borrower or Guarantor is a corporation, or partnership.

As used herein, the terms "each Guarantor" and "any Guarantor" shall refer to the undersigned single Guarantor, or, if more than one, shall refer respectively to each or any separate member of the undersigned collective Guarantor. If more than one person or entity constitutes, collectively, Borrower, all of the foregoing provisions referring to Borrower shall be construed to refer to each such person or entity individually as well as collectively. For example, if there are two persons who are, collectively, Borrower, this Guaranty shall guarantee the full and prompt payment and performance of all obligations under the Loan Documents of Borrower, and of each of said two persons constituting Borrower.

Each Guarantor has executed this Guaranty individually and not as a partner of Borrower or any other member of Guarantor.

If from any circumstances whatsoever fulfillment of any provisions of this Guaranty, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Guaranty that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this paragraph shall control every other provision of this Guaranty.

Any provisions of this Agreement to the contrary notwithstanding, Guarantor hereby absolutely and unconditionally waives Guarantor's right to reimbursement, contribution and subrogation with regard to any payments made by Guarantor pursuant to the terms of this Unconditional Guaranty of Payment and Performance. Guarantor further agrees to reimburse Lender for any payments made to Lender that Lender

is required to pay over to Borrower's Trustee in a bankruptcy case or as a result of any other judicial proceeding.

Notwithstanding the payment and satisfaction of the Note, Guarantor's obligation to reimburse Lender for any payments that are avoided as a result of being characterized, for bankruptcy purposes, as preferential, shall continue for period of one year beyond the date of Borrower's last payment to Lender.

Guarantor warrants and represents to Lender that all financial statements given to Lender are accurate and that Guarantor is currently solvent and will not be rendered insolvent by virtue of financial obligations, contingent or otherwise, arising under terms of this Unconditional Guaranty of Payment and Performance.

The Guaranty is assignable by Lender, and any full or partial assignment hereof by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender and so assigned by Lender.

This Unconditional Guaranty and Payment of Performance contains the entire agreement between the parties hereto and there are no promises, agreements, conditions, undertakings, warranties and representations, whether written or oral, express or implied, between the parties, other than as set forth herein.

*IN WITNESS WHEREOF,* Guarantor has executed this Guaranty under seal as of the 2 6 day of September, 2005.

_____ [SEAL]
KEITH A. LAFERRIERE

Guarantor designates the following individual, or entity, a resident of the State of Georgia, as Guarantor's agent for service of process for purposes of any litigation for enforcement of this Guaranty:

_____

_____

_____

DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602004449
Cashier ID: khaynes
Transaction Date: 03/27/2008
Payer Name: REYNOLDS REYNOLDS AND DUNCAN
------------------------------------
CIVIL FILING FEE
 For: REYNOLDS REYNOLDS AND DUNCAN
 Case/Party: D-ALM-1-08-CV-000226-001
 Amount:        $350.00
------------------------------------
CHECK
 Check/Money Order Num: 11812
 Amt Tendered:  $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

EMPIRE FINANCIAL SERVICES, INC. V.
KENNETH L TODD  ET AL