IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| EMPIRE FINANCIAL SERVICES, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION NUMBER |
| | * | |
| KENNETH L. TODD, III, | * | |
| MICHAEL D. BROCK, | * | 1:08-CV-226 |
| JAMES R. PAXTON, | * | |
| DANIEL A. BAILEY, | * | |
| C. WAYNE ROBERTS, | * | |
| TIMOTHY L. EAKES, | * | |
| GARY L. ANDERSON and | * | |
| KEITH A. LAFERRIERE, | * | |
| | * | |
| Defendants/Counter Claimants. | * | |

## ANSWER AND COUNTERCLAIM

### ANSWER

**COME NOW** Defendants, Kenneth L. Todd, III, Michael D. Brock, James R. Paxton, Daniel A. Bailey, C. Wayne Roberts, Timothy L. Eakes, Gary L. Anderson and Keith A. LaFerriere (collectively, the "Defendants"), in the above-styled cause and for Answer to Plaintiff's Complaint, state as follows:

### Response to Jurisdiction

1.  Paragraph 1 of the Complaint states a legal conclusion which requires no response from Defendants.

2.  Defendants admit Paragraph 2 of the Complaint.

3.  Defendants deny that all Defendants are residents of those states as alleged in Paragraph 3 of the Complaint. Defendants Brock, Paxton, Bailey and Anderson are individual

1

residents of the State of Alabama. Defendants Todd, Roberts and Eakes are individual residents of the State of Florida. Defendant LaFerriere is an individual resident of the State of Missouri.

4. Defendants deny Plaintiff is entitled to recover on the promissory note and guaranties based upon Plaintiff's conversion of the assets, the development loan and funds, Plaintiff's breach of contractual and fiduciary obligations, Plaintiff's negligent and/or intentional misrepresentations, Plaintiff's breach of the duties of good faith and fair dealing, payment of costs to others in excess of Plaintiff's contractual authority, payment of costs to others that were outside of the normal practices accepted in the lending industry, and repeated failure to comply with statutes and regulations governing the lending of funds by Plaintiff in the State of Georgia.

**Response to Count One**

5. Defendants admit that on or about September 26, 2005 Lake Martin Partners, LLC (the "Company") executed the promissory note attached to Plaintiff's Complaint (the "Note") and further state that the terms of the Note speak for themselves.

6. Defendants admit that Plaintiff instigated, directed and managed the filing of the Chapter 11 Bankruptcy petition referenced in the Complaint in an attempt to cover-up Plaintiff's breach of the loan agreement between it and the Company, to cover-up Plaintiff's breach of its other contractual duties and obligations owed to the Company, the Defendants and the purchasers of the condominium units, and to aid Plaintiff in converting the assets of the Company and the Defendants to Plaintiff's own use. Defendants deny the remaining allegations of Paragraph 6.

7. Defendants state the terms of the Note speak for themselves.

8. Defendants admit that the outstanding balance under the Note as of October 19, 2007 was $17,983,853.50. Defendants deny that either they or the Company are indebted to

2

Plaintiff in said amount and further deny that they or the Company have any liability for interest, expenses and costs associated with the obligation of the Company due to Plaintiff's wrongful acts.

9.   Defendants state that the terms of the Final Order attached as Exhibit "4" to the Complaint speak for themselves. By way of further answer, Defendants state that Plaintiff instigated, directed and managed the Company's bankruptcy filing and that Plaintiff has been in control of the Note, loan, development and assets of the Company since the Company's bankruptcy filing.

10.   Defendants deny the Company is liable for the amount claimed in Paragraph 10.

11.   Defendant Kenneth L. Todd, III admits he executed the document attached as Exhibit "5" of the Complaint.

12.   Defendant Kenneth L. Todd, III admits he revoked his guaranty on October 4, 2007 and further admits that he is not liable for any sums due to Plaintiff under the debtor-in-possession loan ("DIP Loan"). Defendant Todd denies he is liable to pay the outstanding principal amount of the Note or any late charges, interest or attorneys' fees thereon due to Plaintiff's wrongful acts.

13.   Defendant Kenneth L. Todd, III denies the allegations of Paragraph 13 and denies that he is indebted to Plaintiff in the amounts set forth in the Wherefore clause.

**Response to Count Two**

14.   Defendants incorporate and re-allege their Answers to Paragraphs 1 through 13.

15.   Defendant Michael D. Brock admits he executed the document attached as Exhibit "7" of the Complaint.

16. Defendant Michael D. Brock admits he revoked his guaranty on October 4, 2007 and further admits that he is not liable for any sums due to Plaintiff under the DIP Loan. Defendant Brock denies he is liable to pay the outstanding principal amount of the Note or any late charges, interest or attorneys' fees thereon due to Plaintiff's wrongful acts.

17. Defendant Michael D. Brock denies the allegations of Paragraph 17 and denies that he is indebted to Plaintiff in the amounts set forth in the Wherefore clause.

**Response to Count Three**

18. Defendants incorporate and re-allege their Answers to Paragraphs 1 through 17.

19. Defendant James R. Paxton admits he executed the document attached as Exhibit "8" of the Complaint.

20. Defendant James R. Paxton admits he revoked his guaranty on October 4, 2007 and further admits that he is not liable for any sums due to Plaintiff under the DIP Loan. Defendant Paxton denies he is liable to pay the outstanding principal amount of the Note or any late charges, interest or attorneys' fees thereon due to Plaintiff's wrongful acts.

21. Defendant James R. Paxton denies the allegations of Paragraph 21 and denies that he is indebted to Plaintiff in the amounts set forth in the Wherefore clause.

**Response to Count Four**

22. Defendants incorporate and re-allege their Answers to Paragraphs 1 through 21.

23. Defendant Daniel A. Bailey admits he executed the document attached as Exhibit "9" of the Complaint.

24. Defendant Daniel A. Bailey admits he revoked his guaranty on October 4, 2007 and further admits that he is not liable for any sums due to Plaintiff under the DIP Loan.

Defendant Bailey denies he is liable to pay the outstanding principal amount of the Note or any late charges, interest or attorneys' fees thereon due to Plaintiff's wrongful acts.

25. Defendant Daniel A. Bailey denies the allegations of Paragraph 25 and denies that he is indebted to Plaintiff in the amounts set forth in the Wherefore clause.

## Response to Count Five

26. Defendants incorporate and re-allege their Answers to Paragraphs 1 through 25.

27. Defendant C. Wayne Roberts admits he executed the document attached as Exhibit "10" of the Complaint.

28. Defendant C. Wayne Roberts admits he revoked his guaranty on October 4, 2007 and further admits that he is not liable for any sums due to Plaintiff under the DIP Loan. Defendant Roberts denies he is liable to pay the outstanding principal amount of the Note or any late charges, interest or attorneys' fees thereon due to Plaintiff's wrongful acts.

29. Defendant C. Wayne Roberts denies the allegations of Paragraph 29 and denies that he is indebted to Plaintiff in the amounts set forth in the Wherefore clause.

## Response to Count Six

30. Defendants incorporate and re-allege their Answers to Paragraphs 1 through 29.

31. Defendants Timothy L. Eakes admits he executed the document attached as Exhibit "11" of the Complaint.

32. Defendant Timothy L. Eakes admits he revoked his guaranty on October 4, 2007 and further admits that he is not liable for any sums due to Plaintiff under the DIP Loan. Defendant Eakes denies he is liable to pay the outstanding principal amount of the Note or any late charges, interest or attorneys' fees thereon due to Plaintiff's wrongful acts.

33. Defendant Timothy L. Eakes denies the allegations of Paragraph 33 and denies that he is indebted to Plaintiff in the amounts set forth in the Wherefore clause.

**Response to Count Seven**

34. Defendants incorporate and re-allege their Answers to Paragraphs 1 through 33.

35. Defendant Gary L. Anderson admits he executed the document attached as Exhibit "12" of the Complaint.

36. Defendant Gary L. Anderson admits he revoked his guaranty on October 4, 2007 and further admits that he is not liable for any sums due to Plaintiff under the DIP Loan. Defendant Anderson denies he is liable to pay the outstanding principal amount of the Note or any late charges, interest or attorneys' fees thereon due to Plaintiff's wrongful acts.

37. Defendant Gary L. Anderson denies the allegations of Paragraph 37 and denies that he is indebted to Plaintiff in the amounts set forth in the Wherefore clause.

**Response to Count Eight**

38. Defendants incorporate and re-allege their Answers to Paragraphs 1 through 37.

39. Defendant Keith A. LaFerriere admits he executed the document attached as Exhibit "13" of the Complaint.

40. Defendant Keith A. LaFerriere admits he revoked his guaranty on October 4, 2007 and further admits that he is not liable for any sums due to Plaintiff under the DIP Loan. Defendant LaFerriere denies he is liable to pay the outstanding principal amount of the Note or any late charges, interest or attorneys' fees thereon due to Plaintiff's wrongful acts.

41. Defendant Keith A. LaFerriere denies the allegations of Paragraph 41 and denies that he is indebted to Plaintiff in the amounts set forth in the Wherefore clause.

## RESPONSE TO ALL ALLEGATIONS

All allegations not specifically addressed above or admitted are denied.

## JURY DEMAND

Defendants hereby demand that this case be tried before a jury of twelve (12) persons.

## DEFENSES

### First Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiff's claims are barred by the doctrine of equitable estoppel. Plaintiff engaged in a pattern of bad faith and deception with the Company by: (1) negligently misrepresenting the relationship of Plaintiff and its participating partners to The Profile Group, Inc., a Georgia corporation ("The Profile Group"), Stoneview Summit Development, Inc., a Georgia corporation ("Stoneview") and the principals John Moore ("Moore") and Bruce Snead ("Snead") (jointly referred to as the "Developers"); (2)(a) acting in a manner outside of their role as a conventional lender on repeated occasions in brokering the investment to Defendants; (b) advancing expenses and soft costs to Developers outside of the scope of the contract documents and standard lending practices in the State of Georgia; (c) instituting, directing and managing the filing of the Chapter 11 bankruptcy petition by the Company; (d) managing and directing the assets, loans, real property and development activities of the Company prior to and after the bankruptcy filing; and (e) exercising control over all aspects of the assets of the Company; and (3) failing to abide by statutory and regulatory rules in its dealing with the Company and Defendants.

### Third Defense

Plaintiff's claims are barred by the doctrine of promissory estoppel.

### Fourth Defense

Plaintiff, by its own conduct, has waived any right to recover against Defendants.

### Fifth Defense

Plaintiff has elected to force the Company into bankruptcy and take control over the Project and the Company's assets in order to limit Plaintiff's exposure and damages arising out of Plaintiff's breach of its contractual duties, its negligence and its other wrongful acts. As such, Plaintiff is barred from seeking an additional remedy against Defendants under the promissory note and guaranties.

### Sixth Defense

The promissory note and guaranties are void by Plaintiff's wrongful acts.

### Seventh Defense

Plaintiff's claims are barred because its negligence and other wrongful acts caused the Company's default under the promissory note.

### Eighth Defense

Plaintiff's claims are barred by the doctrine of unclean hands.

### Ninth Defense

Any damages to Plaintiff were caused by its own acts or omissions or the acts or omissions of other parties or a third-party.

### Tenth Defense

Plaintiff breached duties owed to Defendants and therefore cannot recover on any of its claims.

**Eleventh Defense**

Plaintiff's claims are barred in whole or in part by the doctrines of estoppel, acquiescence, laches, accord and satisfaction, contributory negligence, comparative negligence and/or assumption of the risk.

**Twelfth Defense**

Plaintiff materially breached the agreements at issue such that Defendants are relieved of any and all obligations under said agreements.

**Thirteenth Defense**

Plaintiff's claims are barred by fraud.

**Fourteenth Defense**

Defendants hereby give notice that they intend to rely upon such other affirmative defenses as may become available or apparent during the course of discovery and thus reserve the right to amend their Answer to assert such defenses.

**WHEREFORE**, Defendants pray that this case be dismissed, that all of Plaintiff's prayers for relief be denied, that Plaintiff take nothing, that Defendants be awarded all reasonable expenses and costs of litigation, including attorneys' fees and costs and that it be awarded such other and further relief as the Court may deem just and proper.

**COUNTERCLAIM**

**COME NOW** Kenneth L. Todd, III, Michael D. Brock, James R. Paxton, Daniel A. Bailey, C. Wayne Roberts, Timothy L. Eakes, Gary L. Anderson and Keith A. LaFerriere, Defendants/Counter Claimants (collectively the "Defendants") having answered Plaintiff's Complaint, and file this, their Counterclaim pursuant to Rule 13 of the Federal Rules of Civil Procedure as follows:

## The Parties

1.      Defendants/Counter Claimants Brock, Paxton, Bailey and Anderson are individual residents of the State of Alabama.

2.      Defendant/Counter Claimants Todd, Roberts and Eakes are individual residents of the State of Florida.

3.      Defendant/Counter Claimant LaFerriere is an individual resident of the State of Missouri.

4.      Plaintiff/Counterclaim Defendant Empire Financial Services, Inc. is, upon information and belief, a Georgia corporation ("Empire").

## Jurisdiction

5.      Empire is subject to the personal jurisdiction of this Court and venue is proper in this Court pursuant to Federal Rule of Civil Procedure 13 and 28 U.S.C. Section 1132.

6.      No Defendant is a resident of the same state as Plaintiff and the amount in controversy, excluding interest and costs, exceeds $75,000.00.

## The Facts

7.      In late 2004, the Defendants were approached by John Moore ("Moore") and Bruce Snead ("Snead") regarding a potential real estate joint venture located adjacent to Lake Martin in Tallapoosa County, Alabama (the "Project").

8.      Moore and Snead proposed that the Defendants form an Alabama limited liability company to participate in the Project along with Moore and Snead's development company, The Profile Group, Inc. ("The Profile Group"). Accordingly, Defendants and others formed Lake Martin Partners, LLC, an Alabama limited liability company (the "Company") on December 7, 2004.

9. On December 29, 2004, Moore, Snead and The Profile Group formed Stoneview Summit Development, Inc., a Georgia corporation ("Stoneview") to represent Moore, Snead and The Profile Group's interest in the Project.

10. On January 25, 2005, Stoneview and the Company entered into a Development Agreement pursuant to which the Company would purchase certain real property from The Profile Group for $6,000,000.00 for the Project. The Development Agreement further required Stoneview to manage and construct the Project. In exchange for its interest in the Project, the Company was required to provide funds, via loans, for the construction of the Project. The Development Agreement further provided that the Company would receive fifty percent (50%) of the profits from the Project and that Stoneview would receive fifty percent (50%) of the profits from the Project.

11. As an exhibit to the Development Agreement, Stoneview presented a "Pro-Forma" to the Defendants and the Company which indicated the total cost of construction for the Project to be $15,990,000. The Company and Stoneview later entered into a Construction Contract on June 22, 2005 which indicated that the total contract sum would be $16,190,000.

12. In order to obtain funding and loans for the Project pursuant to the Development Agreement, Moore, Snead, The Profile Group and Stoneview introduced the Defendants to Empire, which was in the business of making loans for real estate developments such as the Project.

13. On September 26, 2005, the Company entered into a Construction Loan Agreement and Note in the amount of $22,000,000 with Empire. Pursuant to the terms of the Construction Loan Agreement and Note, Empire would make available to the Company up to $22,000,000 to acquire the real property from The Profile Group and to develop the Project.

Additionally, the Defendants were further required, as a condition of the loan, to execute personal guarantees in favor of Empire to secure the payment and performance of the Company under the Note.

14. On that same day, the Company purchased the real property from The Profile Group for approximately $6,000,000. The Company used $1,200,000 in capital invested by its members and approximately $4,800,000 in loan proceeds from Empire to purchase the real property from The Profile Group.

15. Moore, Snead, The Profile Group, Stoneview, Empire and various representatives of the banks participating in the financing arranged by Empire each represented to the Defendants and the Company that they did not have to worry about the Project because Moore, Snead, The Profile Group, Stoneview and Empire would handle all aspects of the Project in a satisfactory and commercially reasonable manner in order to protect the interests of the Company and the Defendants.

16. After advancing the funds for the initial purchase of the real property, Empire undertook to perform virtually all of the obligations the Company had agreed to perform pursuant to the terms of the Construction Loan Agreement, including, but not limited to:

    (a) hiring an engineering firm to inspect and certify the percentage completion of the Project from time to time;

    (b) receiving and reviewing each draw request from Moore, Snead, The Profile Group and Stoneview;

    (c) receiving and reviewing all invoices submitted with each draw request;

    (d) receiving and reviewing the inspection reports from the engineering firm it had hired to inspect the Project;

  (e)  determining and approving the amount of construction loan funds to disburse and pay to Moore, Snead, The Profile Group and Stoneview pursuant to each draw request;

  (f)  advancing funds in response to each draw request;

  (g)  sending its own representatives to the Project to inspect the progress of the work;

  (h)  coordinating the construction of the work with Moore, Snead, The Profile Group and Stoneview; and,

  (i)  allowing Moore, Snead, The Profile Group and Stoneview, in their sole discretion, to determine if construction of the work conformed with the Project's plans and specifications.

17. As a result of the undertakings of Empire in assuming the obligations of the Company under the Construction Loan Agreement, Empire entered into and conducted a joint venture with the Company, Moore, Snead, The Profile Group and Stoneview in connection with the Project.

18. Empire negligently and recklessly performed all of the obligations which it undertook in failing to properly monitor the progress and performance of the work and in funding the draw requests of Moore, Snead, The Profile Group and Stoneview.

19. Empire was put on notice by the engineering firm it hired to monitor the progress and performance of the work as early as the first draw request in December 2005 that there were problems with the progress and performance of the work. These warnings continued with each subsequent inspection report. Nevertheless, Empire continued to fund each draw requested by

Moore, Snead, The Profile Group and Stoneview in full, notwithstanding that it was aware that there were numerous problems with the Project.

20. Empire, Moore, Snead, The Profile Group and Stoneview concealed these problems from the Company and the Defendants.

21. In the spring and summer of 2007, the Company and Defendants became concerned about the Project, as they became aware that subcontractors were not being paid by Moore, Snead, The Profile Group and Stoneview and that liens had been threatened against the Project. Some of the Defendants met with Moore and Snead at the Project site and discovered that Empire, Moore, Snead, The Profile Group and Stoneview had failed to perform their obligations with respect to the Project.

22. In the late summer of 2007, the Defendants discussed the serious problems with the Project with Empire, which the Defendants had only been recently made aware of. Empire's response was to declare the Company in default under the Note.

23. Shortly thereafter, Empire forced and coerced the Company into filing for bankruptcy protection to address the difficulties facing the Project.

24. Empire arranged for and hired a new contractor to complete the Project in an attempt to have finished products (i.e. condominiums) to sell and realize some revenue from the Project.

25. Notwithstanding the foregoing, Empire filed this action in an attempt to collect $18,718,468.00 plus interest, attorneys' fees and costs from the Defendants, even though Empire's actual damages are, at best, speculative.

### **Count One - Negligence**

26. Defendants incorporate and re-allege Paragraphs 1 through 25 above herein.

27. As a result of Empire's actions in assuming certain obligations from the Company, Empire owed the Company and Defendants a duty to perform those obligations in a reasonable manner.

28. Empire, Moore, Snead, The Profile Group and Stoneview acted negligently, willfully and recklessly by failing to adequately and properly monitor the progress and performance of the work on the Project.

29. Empire's negligence directly and proximately caused Defendants to sustain damages in an amount equal to not less than the amounts outstanding under the promissory note, in addition to attorneys' fees, interest and costs.

WHEREFORE, Defendants demand judgment against Empire in an amount equal to not less than the amounts outstanding under the promissory note, in addition to attorneys' fees, interest and costs.

## Count Two – Breach of Fiduciary Duty

30. Defendants incorporate and re-allege Paragraphs 1 through 29 above herein.

31. As a result of Empire's actions in establishing and maintaining a joint venture with the Company, Defendants, Moore, Snead, The Profile Group and Stoneview, Empire owed fiduciary duties to its co-joint venturers to perform its duties it assumed on behalf of the co-joint venturers in a commercially reasonable and professional manner.

32. Empire breached its fiduciary duties by failing to adequately and properly monitor the progress and performance of the work on the Project.

33. Empire's breach of its fiduciary duties directly and proximately caused Defendants to sustain damages in an amount equal to not less than the amounts outstanding under the promissory note, in addition to attorneys' fees, interest and costs.

WHEREFORE, Defendants demand judgment against Empire in an amount equal to not less than the amounts outstanding under the promissory note, in addition to attorneys' fees, interest and costs.

### Count Three – Breach of Contract

34. Defendants incorporate and re-allege Paragraphs 1 through 33 above herein.

35. Every contract implies a covenant of good faith and fair dealing in the performance of the terms of the agreement.

36. As a result of Empire's actions in assuming the obligations of the Company under the Construction Loan Agreement, Empire was required to perform such obligations in good faith and in a fair manner.

37. Empire breached the implied covenants of good faith and fair dealing by acting in bad faith in failing to adequately and properly monitor the progress and performance of the work on the Project.

38. Empire's breach of the implied covenants of good faith and fair dealing directly and proximately caused Defendants to sustain damages in an amount equal to not less than the amounts outstanding under the promissory note, in addition to attorneys' fees, interest and costs.

WHEREFORE, Defendants demand judgment against Empire in an amount equal to not less than the amounts outstanding under the promissory note, in addition to attorneys' fees, interest and costs.

### Count Four - Conversion

39. Defendants incorporate and re-allege Paragraphs 1 through 38 above herein.

40. Empire has assumed and exercised the right of control and ownership over the Company's assets, specifically including, but not limited to, the Project and certain monies

owned by the Company, in contravention of the Company's and the Defendants' rights in such assets.

41. Additionally, Empire has appropriated the Company's assets, specifically including, but not limited to, the Project and certain monies owned by the Company, in contravention of the Company's and the Defendants' rights in such assets.

42. The above acts constitute a conversion by Empire over the assets of the Company and Defendants.

43. Empire's conversion has directly and proximately caused Defendants to sustain damages in an amount equal to not less than the amounts outstanding under the promissory note, in addition to attorneys' fees, interest and costs.

WHEREFORE, Defendants demand judgment against Empire in an amount equal to not less than the amounts outstanding under the promissory note, in addition to attorneys' fees, interest and costs.

### Count Five - Conspiracy

44. Defendants incorporate and re-allege Paragraphs 1 through 43 above herein.

45. Empire acted in concert with Moore, Snead, The Profile Group and Stoneview and conspired with Moore, Snead, The Profile Group and Stoneview to defraud Defendants.

46. Empire's conspiracy with Moore, Snead, The Profile Group and Stoneview to defraud Defendants has directly and proximately caused Defendants to sustain damages in an amount equal to not less than the amounts outstanding under the promissory note, in addition to attorneys' fees, interest and costs.

WHEREFORE, Defendants demand judgment against Empire in an amount equal to not less than the amounts outstanding under the promissory note, in addition to attorneys' fees, interest and costs.

### Count Six – Negligent Misrepresentation

47. Defendants reincorporate and re-allege Paragraphs 1 through 46 above herein.

48. Empire is in the business of lending money for the acquisition, construction and development of real estate for profit.

49. In the course of making a loan to the Company and securing the guarantees from Defendants, Empire represented to Defendants that it would adequately and properly monitor the progress and performance of the work on the Project so as to minimize potential losses to both itself and to the Defendants and further represented to Defendants that the Project would be successful.

50. The Defendants justifiably relied upon these representations and exercised due diligence in relying upon Empire's statements, expertise and reputation.

51. Empire's negligent representations have directly and proximately caused Defendants to sustain damages in an amount equal to not less than the amounts outstanding under the promissory note, in addition to attorneys' fees, interest and costs.

WHEREFORE, Defendants demand judgment against Empire in an amount equal to not less than the amounts outstanding under the promissory note, in addition to attorneys' fees, interest and costs.

**WHEREFORE**, Defendants request as follows:

(a) That Defendants receive a twelve (12) person jury;

(b) That Plaintiff be held liable to Defendants on the theory of Negligence as averred in Count One of their Counterclaim;

(c) That Plaintiff be held liable to Defendants on the theory of Breach of Fiduciary Duty as averred in Count Two of its Counterclaim;

(d) That Plaintiff be held liable to Defendants on the theory of Breach of Contract as averred in Count Three of its Counterclaim;

(e) That Plaintiff be held liable to Defendants on the theory of Conversion as averred in Count Four of its Counterclaim;

(f) That Plaintiff be held liable to Defendants on the theory of Conspiracy as averred in Count Five of its Counterclaim;

(g) That Plaintiff be held liable to Defendants on the theory of Negligent Misrepresentation as averred in Count Six of its Counterclaim;

(h) That Plaintiff be held liable to Defendants for all attorneys' fees and costs of litigation as averred; and,

(i) For all such other and further relief as this Court deems just and proper.

Respectfully submitted this 8th day of May, 2008.

/s/ Dow T. Huskey
Dow T. Huskey      (HUS002)
Attorney for Defendants/Counter Claimants
P. O. Drawer 550
Dothan, Alabama  36302
T:  334-794-3366

## CERTIFICATE OF SERVICE

I hereby certify I have served a copy of the above and foregoing upon Robert P. Reynolds, Reynolds, Reynolds & Duncan, LLC via electronic filing this 8th day of May, 2008.

*Dow T. Huskey*
Dow T. Huskey