**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| EMPIRE FINANCIAL SERVICES, INC. § | | |
| § | | |
| PLAINTIFF, § | CIVIL ACTION NO: | |
| § | | |
| VS. § | 1:08-cv-00226-WHA | |
| § | | |
| KENNETH L. TODD, III, *et al.* § | | |
| § | | |
| DEFENDANTS. § | | |
| § | | |

**REPLY OF EMPIRE FINANCIAL SERVICES, INC., TO
RESPONSES TO MOTION TO SEVER THIRD PARTY COMPLAINT**

Plaintiff, Empire Financial Services, Inc., by and through its attorney of record and in reply to Third Party Plaintiffs' (hereinafter, "Guarantors") and Third Party Defendants' Responses to its Motion to Sever Third-Party Complaint states as follows:

1. Pursuant to Fed.R.Civ.P. 42(b) (2008), "For convenience, to avoid prejudice, **or** to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party claims." Fed.R.Civ.P. 42(b) (2008).

2. Standards in Rule 42(b) of convenience, avoidance of prejudice, and what will be conducive to expedition and economy are all in the alternative, and need not all be present for separation or severance, presence of any one of them being sufficient to sustain order for separate trial. In re Paris Air Crash, 69 FRD 310 (CD Cal 1975).

3. Considerations including convenience, clarity, and the avoidance of confusion and prejudice may favor separate trials of claims and outweigh the immediate and superficial economies which might be achieved by conduct of a single trial. Manufacturers Bank & Trust Co. v. Transamerica Ins. Co., 568 F.Supp. 790 (ED Mo. 1983); *See* Kosher v. The Seven-Up Company, 595 F.2d 347, 356 (6th Cir.1979).

4. As set forth in Plaintiff's Motion to Sever Third Party Complaint, Plaintiff, Empire Financial Services, Inc. (hereinafter, "Empire"), initiated this proceeding in the United States District Court for the Middle District of Alabama as a result of Guarantors' failure to pay approximately $18,000,000.00 due from Lake Martin Partners, LLC (hereinafter, "Lake Martin"), pursuant to the terms of unlimited unconditional guaranties executed by each Guarantor. Each Guarantor is either a

        member of Lake Martin or an owner of a controlling entity which is a member of Lake Martin.

5. Only after Empire filed suit as a result of Guarantors' failure to pay Empire approximately $18,000,000.00 due Empire by Lake Martin pursuant to the terms of unlimited unconditional guaranties executed by Guarantors which amount was established by the Final Order Approving Post-Petition Financing Between Debtor and Empire [Bk. Doc. 73 in Ch. 11 Case No.07-11470 and attached to the Complaint in the instant case as Exhibit "4"] did Guarantors allege claims against Empire.

6. In addition to their Counterclaim against Empire, Guarantors filed a Third Party Complaint against John Moore, Bruce Snead, The Profile Group, Inc., and Stoneview Summit Development, Inc. (hereinafter, "Third Party Defendants").

7. As alleged by Guarantors in their Third Party Complaint, Stoneview Summit Development, Inc. (hereinafter, "Stoneview") and Lake Martin were the sole parties to a Development Agreement dated January 25, 2005. Neither Guarantors nor Empire were parties to the Development Agreement.

8. Also as alleged by Guarantors in their Third Party Complaint, Lake Martin and Stoneview were the sole parties to a Construction Contract dated June 22, 2005. Neither Guarantors nor Empire were parties to said Construction Contract.

9. On September 26, 2005, Lake Martin entered into a Construction Loan Agreement with Empire for the "Construction of Condominiums," as evidenced by the Construction Loan Agreement, a true and correct copy of which is attached to the Motion to Dismiss as Exhibit "B." Lake Martin and Empire were the sole parties to the Construction Loan Agreement. As an inducement to Plaintiff to extend credit to Lake Martin, Guarantors executed unlimited unconditional guaranty agreements in connection with the said Note. The Guarantors approved the form of the Construction Loan Agreement. Guarantors have defaulted under the terms of their unlimited unconditional guaranties.

10. In paragraph 20 of the Third Party Complaint, Guarantors allege: "Pursuant to the terms of the Construction Loan Agreement and Note, Empire would make available to the Company (Lake Martin) up to $22,000,000 to acquire the real property from The Profile Group and to construct the condominiums." Contrary to Guarantors' allegation, however, the Construction Loan Agreement, does not mention any of the Third Party Defendants, including but not limited to Stoneview or The Profile Group. In fact, Lake Martin purchased the property on which the Condominiums were to be constructed from Profile more than eight (8) months prior to the Empire Construction Loan.

11. Section IV of the Construction Loan Agreement to which Empire and Lake Martin were the sole parties provides:

(a) At such time as Borrower shall desire to obtain, subject to the other requirements hereof, a disbursement of any portion of the construction loan funds, ***Borrower shall complete and deliver to Lender a Draw Request*** together with a letter of transmittal ***from Borrower to Lender requesting disbursement of that portion of the construction loan funds set forth in the Draw Request*** and ***directing that said disbursement be made to Borrower*** in accordance with the terms, conditions and provisions of this Agreement. Such Draw Request shall include, with respect to any portion of such advance to be further disbursed to a general contractor, a Contractor's Application for Payment in form and substance reasonably satisfactory to Lender.

(b) Borrower's Draw Request shall be accompanied by evidence in form and content satisfactory to Lender (including, but not limited to, certificates and affidavits of Borrower, and such other persons as Lender may require) showing...

12. Section 3.2 of the Development Agreement to which Empire was not a party provides:

(A) Generally, progress and final payments to the contractors will be made in accordance with the terms and conditions of the construction contract and each additional construction contract negotiated with the contractors. ***Developer (Stoneview) shall be responsible for preparing a monthly draw request (each a (sic) "Draw Request") for submission to the construction lender, and shall include therein all appropriate applications for payment received from the contractors.***

(B) ...Owner (Lake Martin) shall cause the funds disbursed by the construction lender under the construction loan to be deposited in the Project Account. One or more agents or employees of Developer, as approved by Owner, shall be authorized signatories on the Project Account and shall be authorized by Owner to make disbursements from the Project Account in accordance with each Draw Request and other approved disbursements. Developer shall administer the Project Account in accordance with prudent accounting principles and shall at all times maintain accurate books and records for the Project Account. Owner shall have the right, upon reasonable notice to Developer, to review the books and records for the Project Account and Developer agrees to make such books and records available to Owner.

13. It is clear that Lake Martin specifically required Stoneview to act on its behalf.

14. Under Section XI of the Construction Loan Agreement executed by Guarantors:

    "Lender has **no obligations** in connection with the construction of the Project except to advance proceeds of the Loan as herein provided, and Lender shall not be liable for the performance of any contractor, subcontractor, or supplier of materials, fixtures, equipment and any other personal property, or for the quality of workmanship or the quality of such materials, fixtures, equipment and other personal property, or for the failure to construct, complete, protect or insure the improvements, or for the payment of any cost or expenses incurred in connection there with, or for the performance or non-performance or delay in performance of any obligation of Borrower to Lender. *Any inspection by Lender, approval of Plans and Specifications or other activities in the nature thereof shall only be for the sole benefit of Lender and for the purpose of protecting the security of the Lender*, and the same shall *in no way be construed as a representation* on the part of Lender that there is compliance on the part of Borrower with the Plans and Specifications or that the construction of the improvements is free from faulty material, fixtures, equipment, and other personal property, or workmanship. *The fact that Lender makes such inspections shall not relieve Borrower from its duty to independently ascertain that the Project is being completed in accordance with the Plans and Specifications* and Borrower has *no right to rely* on any procedures required by Lender. (Construction Loan Agreement, Section XI).

15. Accordingly, the responsibilities Guarantors attempt to allege Empire assumed in its Third Party Complaint in an effort to link said Third Party Complaint with Guarantors' Counterclaim are covered under the terms of the Construction Loan Agreement, the sole parties to which are Empire and Lake Martin, and the Development Agreement, the sole parties to which are Lake Martin and Stoneview.

16. As alleged in paragraph 24 of the Third Party Complaint, Guarantors' Third Party Complaint stems from Guarantors' allegation that: "Moore, Snead, The Profile Group and Stoneview negligently and recklessly performed all of their contractual duties, as well as all of the duties which they undertook and assumed, in regards to the Project and failed to manage the project correctly."

17. It is without question that neither Guarantors nor Empire were parties to either the Development Agreement or the Construction Contract from which Guarantors' tort claims against Third Party Defendants arise due to Third Party Defendants' alleged "negligently and recklessly performed....contractual duties."

18. Accordingly, whether Third Party Defendants are liable to Guarantors based upon tort claims is separate and independent from Empire's contract claims against Guarantors as a result of Guarantors' failure to pay approximately $18,000,000.00 due from Lake Martin, pursuant to the terms of unlimited unconditional guaranties executed by each Guarantor in connection with the Note and Construction Loan Agreement, the sole parties to which were Empire and Lake Martin. Thus, failure to sever the Third Party Complaint from the action to enforce Guarantors' unconditional unlimited guaranty agreements with Empire will prolong and confuse the action initiated by Empire with the tort claims which Guarantors attempt to assert in the Third Party Complaint.

19. In paragraph 26 of their Third Party Complaint, Guarantors allege:
"Ultimately, Moore, Snead, The Profile Group and Stoneview's negligence and gross mismanagement of the Project directly and proximately caused Empire to declare the Company (Lake Martin) in default on the Note, to force and coerce the Company into filing for bankruptcy protection as a means of 'working out' the problems on the Project, and further directly and proximately caused Empire to file the present lawsuit against the Defendants (Guarantors) seeking to enforce Defendants'(Guarantors') guarantees."

20. To the contrary, it is the Guarantors in the capacity as members of Lake Martin, who authorized the filing of a voluntary Chapter 11 Petition and who authorized the filing of a motion by Lake Martin to obtain a post bankruptcy petition date financing to "complete Building 5...and, subject to the to the discretion of Empire, the completion of two other partially completed buildings," as noted in Paragraph 3 of the Final Order Approving Post-Petition Financing Between Debtor and Empire and authorized the entry of the Order by the Bankruptcy Court to grant such motion. There is no question that the construction loan subject to the guaranties was in default. Upon the default of Lake Martin and Guarantors, Empire had two options: (1) to sue on the note and guaranties or (2) to foreclose on the mortgage. It was Guarantors as members of Lake Martin who elected to file bankruptcy creating the automatic stay precluding the foreclosure option.

21. Notwithstanding the filing of the voluntary bankruptcy petition by Lake Martin, it is clear that neither Guarantors nor Empire were parties to the Development Agreement or the Construction Contract from which Guarantors' tort claims against Third Party Defendants allegedly arise.

22. In their Third Party Complaint, Guarantors are seeking to assert claims on behalf of Lake Martin. Guarantors, however, do not have standing to assert claims alleged against Third Party Defendants in this proceeding because Guarantors individually are not parties to the Development Agreement or the Construction Contract.

        Arguably, only Lake Martin (and not Guarantors individually) can bring claims against Third Party Defendants.

23. The tort claims Guarantors assert individually should be brought by Lake Martin in the Bankruptcy Court in that such claims constitute property of Lake Martin's bankruptcy estate and not by the Guarantors.

24. Failure to sever the Third Party Complaint may effect substantial prejudice to Empire in the instant case resulting from an undue complication of issues and evidence, as the relationship of the claims Guarantors attempt to assert against Empire and the relationship of the claims Guarantors attempt to assert against Third Party Defendants are substantially different. Under the Final Order Approving Post-Petition Financing Between Debtor and Empire [Bk. Doc. 73 in Ch. 11 Case No.07-11470 and attached to the Complaint in the instant case as Exhibit "4"], Lake Martin waived any potential claims against Empire. Consequently, Guarantors, who claim the assets of Lake Martin and attempt to stand in Lake Martin's shoes, waived any potential claims against Empire.

25. On November 21, 2007 the United States Bankruptcy Court for the Middle District of Alabama, Chapter 11 Case No. 07-11470 ordered as follows:
"Debtor for itself and its successors and assigns, is hereby deemed to waive its rights to challenge the pre-petition liens and secured claims of Empire Financial, and further waives all claims against Empire Financial, its participants, officers and other related parties in interest with regard to these matters." [Bk. Doc. 73, Chapter 11 Case No.07-11470; Complaint, Exhibit "4"; Also see page 10 of the Motion to Dismiss].

26. In Schedule B. Personal Property filed in Ch.11 Case No.07-11470 [Bk. Doc. 44, Ch.11 Case No.07-11470], however, Lake Martin listed as potential causes of action claims only against Stoneview Summit, Inc., and/or The Profile Group under penalty of perjury. Lake Martin has not waived claims against Stoneview Summit, Inc., and/or The Profile Group since Lake Martin was a party to a joint venture with Stoneview Summit and/or The Profile Group to which Empire was not a party.

27. Any valid claims against Third Party Defendants should be brought by Lake Martin as an adversary proceeding in the Bankruptcy Court. Claims alleged by Guarantors in Guarantors' Third Party Complaint are derivative claims at best.

Case No. 1:08-cv-00226-WHA<br>Page 7

  WHEREFORE, Plaintiff, Empire Financial Services, Inc., moves this Honorable Court to sever the Third Party Complaint from its action to enforce Guarantors' unconditional unlimited guaranty agreements with Empire.


               /s/*Robert P. Reynolds*  
               Robert P. Reynolds  
               Code No. REY-007  
               Attorney for Plaintiff, Empire Financial Services, Inc.


OF COUNSEL:  
REYNOLDS, REYNOLDS & DUNCAN, LLC  
Post Office Box 2863  
Tuscaloosa, Alabama  35403  
Telephone:  (205) 391-0073  
E-mail: rreynolds@rrdlaw.com  
File No. 358.11-F

Case No. 1:08-cv-00226-WHA<br>Page 8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the above and foregoing Reply to Responses to Motion to Sever Third Party Complaint has been made this 30th day of July, 2008 electronically and/or by U.S. Postal Service, First Class, prepaid upon the following:

| | |
|---|---|
| Dow T. Huskey, Jr., Esq.<br>Attorney at Law<br>Post Office Drawer 550<br>Dothan, Alabama 36302-0550 | Michael S. Jackson, Esq.<br>Ryan W. Shaw, Esq.<br>Beers, Anderson, Jackson, Patty & Fawal, PC<br>Post Office Box 1988<br>Montgomery, Alabama 36102-1988 |
| Cowin Knowles, Esq.<br>B. Saxon Main, Esq.<br>Ball, Ball, Matthews & Novak, P.A.<br>Post Office Box 2148<br>Montgomery, Alabama 36102-2148 | Benjamin Rosenberg, Esq.<br>John Allen Roberts, Esq.<br>T. Christine Pham, Esq.<br>Rosenberg, Martin, Greenberg, LLP<br>25 South Charles Street, Suite 2115<br>Baltimore, Maryland 21201 |
| H. Scott Gregory, Jr., Esq.<br>Brock, Clay, Calhoun & Rogers, P.C.<br>49 Atlanta Street<br>Marietta, Georgia 30060 | |

/s/<i>Robert P. Reynolds</i><br>Robert P. Reynolds<br>Of Counsel for Plaintiff