IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

EMPIRE FINANCIAL SERVICES, INC.,   )
                                    )
             Plaintiff,          )
                                    )     CIVIL ACTION NO.  1:08-cv-226-WHA
vs.                              )
                                    )     (WO)
KENNETH L. TODD, III, et al.,       )
                                    )
            Defendants.      )

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

This cause is before the court on Plaintiff's Motion to Dismiss Counterclaim filed on

June 3, 2008 (Doc. #22) and Motion to Sever Third Party Complaint filed by the Plaintiff on

June 12, 2008 (Doc. #28).

The Plaintiff, Empire Financial Services, Inc. ("Empire"), brings claims in this case

against the Defendants to enforce guaranty agreements.  Empire alleges in the Complaint that as

an inducement to Empire to extend credit for a real estate development project, the Defendants

executed unconditional guarantees of payment and performance.  The Plaintiff further alleges

that the Defendants revoked their guarantees, but that the revocation does not affect the

obligation to pay the outstanding principal balance of a September 26, 2005 promissory note,

late charges, interest and attorneys' fees.

The Defendants, Kenneth L. Todd, III; Michael D. Brock; James R. Paxton; Daniel A.

Bailey; C. Wayne Roberts; Timothy L. Eakes; Gary L. Anderson; and Keith A. LaFerriere, filed

an Answer to the Complaint on May 8, 2008 and asserted a Counterclaim against Empire

bringing Counterclaims of negligence, breach of fiduciary duty, breach of contract, conversion,

conspiracy, and negligent misrepresentation.  They contend that Empire negligently and recklessly performed its obligations in monitoring the progress and performance of the work in developing the project.

A Third-Party Complaint was also filed by Kenneth L. Todd, III; Michael D. Brock; James R. Paxton; Daniel A. Bailey; C. Wayne Roberts; Timothy L. Eakes; Gary L. Anderson; and Keith A. LaFerriere, against John Moore, Bruce Snead, the Profile Group, Inc. and Stoneview Summit Development, Inc.

For reasons to be discussed, the Motion to DISMISS is due to be GRANTED in part and DENIED in part, and the Motion to Sever Third Party Complaint is due to be DENIED at this time, without prejudice to being raised again at a later point in the proceedings.

## II.  RELEVANT STANDARDS

### A.  MOTION TO DISMISS STANDARD

In ruling on a Motion to Dismiss, the court accepts the factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir.1993).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955 (2007).  The complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.  The factual allegations  "must be enough to raise a right to relief above the speculative level." *Id*. at 1965.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle [ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65.

### B.  MOTION TO SEVER STANDARD

The Plaintiff in this case has moved to sever the Third Party Complaint on the basis of

Fed. R. Civ. P. 42(b) which provides as follows:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party claims.

## III.  FACTS

According to the allegations of the Counterclaim and the Third-Party Complaint, the

relevant facts are as follows:

Kenneth L. Todd, III; Michael D. Brock; James R. Paxton; Daniel A. Bailey; C. Wayne

Roberts; Timothy L. Eakes; Gary L. Anderson; and Keith A. LaFerriere are Defendants, the

Counterclaimants, and the Third-Party Plaintiffs in this case (hereinafter "Investors").[1]   The

Investors were approached by John Moore ("Moore"), Bruce Snead ("Snead"), and the Profile

Group, Inc., regarding a real estate venture on Lake Martin, Alabama.   The venture was a

condominium project at Lake Martin.  Moore and Snead proposed that the Investors form an

Alabama limited liability company to participate in the venture.  The Investors formed a limited

liability company called Lake Martin Partners, LLC ("LMP").

Moore, Snead, and the Profile Group, Inc. formed Stoneview Summit Development, Inc.

("Stoneview"), a Georgia corporation, (collectively "Third Party Defendants") to represent

Moore, Snead, and the Profile Group's interest in the project and to act as contractor.

---

[1] The short-hand references used by the parties to refer to these parties is not consistent. For instance, the Plaintiff has used the label "Guarantors," while the non-movants have used the labels "Investors," "Defendants,"and "Third Party Plaintiffs," to refer to the same parties. To avoid confusion, the court will refer to the Defendants/Counterclaimants/Third-Party Plaintiffs as the "Investors."

Stoneview and LMP entered into a Development Agreement.  The Development Agreement was entered into to purchase real property from the Profile Group and required Stoneview to manage and construct the project on the property.   LMP was required to provide funds for the construction.  The Development Agreement provided for profit sharing between LMP and Stoneview.

The Third-Party Defendants then introduced the Investors to the Plaintiff, Empire. Empire is in the business of making loans for real estate development.

LMP entered into a Construction Loan Agreement and Note with Empire.  The Investors were required to execute personal guarantees in favor of Empire to secure payment.

The Investors allege that Empire undertook to perform virtually all of the obligations LMP had agreed to perform pursuant to the terms of the Construction Loan Agreement.  The Counterclaim and Third-Party Complaint allege that as a result of the undertakings of Empire in assuming obligations under the Construction Loan Agreement, Empire entered into and conducted a joint venture with the Investors and Third Party Defendants.

The Counterclaim alleges that when serious problems with the project were discovered, Empire declared the Investors in default under the Note.  The Third-Party Complaint alleges that mismanagement by the Third-Party Defendants caused Empire to declare LMP in default on the Note, and to force LMP into filing for bankruptcy protection.  The Counterclaim alleges that Empire was put on notice that there were problems with the progress and performance of the work, but that it continued to fund draws by the Third Party Defendants.

The Investors allege that Empire and the Third-Party Defendants failed to perform their obligations on the project.

### III.  DISCUSSION

Motion to Dismiss

a.  Empire's Grounds for Dismissal Which Apply to All Counts in the Counterclaim

Empire contends that the entire counterclaim filed by the Investors against it in this case is barred by express provisions of the Promissory Note authorized by the Investors, the unlimited unconditional guaranty agreements, the Construction Loan Agreement, and the Final Order Approving Post-Petition Financing Between Debtor and Empire approved by the bankruptcy court, which obligated Investors to be responsible for the obligations of Lake Martin.  Empire also contends that specific defenses apply, based on the Order of the bankruptcy court.  This court will address the arguments concerning the effect of the bankruptcy case on this case first.

1.  Judicial Estoppel and Res Judicata

Empire contends that the counterclaim in this case is barred by the doctrine of judicial estoppel.  Empire contends that the Investors should have listed their claims against Empire as an asset in the LMP bankruptcy proceeding, and that the failure to do so means that they ought to be judicially estopped from proceeding here.  Empire argues that the Investors claim the assets of LMP and stand in LMP's shoes.

Judicial estoppel applies when there is (1) an inconsistent position from an earlier position, (2) a perception that the first or second court was misled, and (3) an unfair advantage or unfair detriment on the opposing party if not estopped.  *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

In response to the judicial estoppel argument, the Investors contend[2] that that doctrine has no applicability here because the Investors are individuals, while the debtor in the bankruptcy proceeding was an Alabama limited liability company.   Empire acknowledges that the Investors are separate legal entities from LMP.  *See* Doc. #22 at page 17.   The Investors contend that they do not seek to claim LMP's assets or stand its shoes, or assert claims on its behalf.  Instead, Investors state that they seek to hold Empire responsible for wrongful acts which damaged Investors directly, not as representatives of LMP.

A federal district court outside of this circuit has addressed a similar factual situation to that in this case.  *See Joseph Brazier, Ltd. v. Specialty Bar Products Co.*, No. 06cv1416, 2008 WL 791942 (D. Colo. March 21, 2008).  In *Joseph Brazier, LLC*, a defendant argued that a plaintiff's claims were barred by judicial estoppel because the plaintiff did not disclose his claims against the defendant in an earlier bankruptcy proceeding.  *Id.* at *3.  The earlier bankruptcy case was not, however, the plaintiff's bankruptcy case, but rather the bankruptcy of a person who was the managing director and sole shareholder of the plaintiff corporation.  *Id.* at *1.  The defendant argued that the corporation and the individual were alter egos of one another, so that the individual was required to disclose the corporation's claims in the separate lawsuit. *Id.* at *3.  The district court noted that it was unable to find cases holding that judicial estoppel may be used to bar claims brought by an alter ego, but reasoned that the failure to disclose was not "clearly inconsistent" with the assertion of the claims because there was no finding in the bankruptcy case that the individual was an alter ego.  *Id.*

---

[2] The court entered an Order requesting response to this argument, but the Plaintiffs filed a request to file a surreply, which was granted, and addressed this argument within that surreply.

This court is persuaded by this reasoning and concludes that, as there has been no contention that the bankruptcy court made a finding that the Investors were alter egos to the debtor, no inconsistent position has been taken in this case.[3]  The court also cannot conclude, based on the Counterclaim, that the Investors have received an unfair advantage, because the damages they seek are alleged to flow to them directly, not to be assets of LMP.  The court, therefore, determines that, at least on the basis of Complaint, the doctrine of judicial estoppel should not apply in this case.

Res judicata bars a claim based on prior litigation if (1) there is a final judgment on the merits, (2) the decision was rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, are identical in both suits, and (4) the same cause of action is involved in both cases. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 2000).

With regard to the res judicata argument raised by Empire, the Investors contend that they have not had a previous opportunity to litigate their counterclaim because they were not parties to LMP's bankruptcy, and did not have standing to assert claims in that proceeding.

Empire argues that the parties in the case are identical and that the cases are identical because they arise from the same facts.   Empire contends that the Investors are the same party as the debtor in the bankruptcy court because they claim the assets of and attempt to stand in the debtor's shoes.  The only legal authority for the statement in its brief that "it is beyond dispute that the parties in the instant case and the bankruptcy case are identical," Doc. #51 at p. 9, is *Martin v. Pahiakos*, 490 F.3d 1272 (11th Cir. 2007).   In *Martin*, the bankruptcy trustee stood in

---

[3]  This analysis has been conducted based on the allegations of the Complaint.  The court will revisit this issue, if called upon to do so, upon presentation of evidence at the summary judgment stage.

the place of the debtor.  *Id.* At 1277.  There is no contention that Investors are the bankruptcy trustee.  The court assumes, however, that Empire contends that res judicata applies in this case because the Investors, even though they were not parties to the bankruptcy, have a sufficient relationship with LMP to be bound by a judgment against LMP.

The Supreme Court recently has outlined six established categories of relationships which allow for non-party preclusion.  *Taylor v. Sturgell*, _ U.S. _, 128 S.Ct. 2161, 2172-76 (2008).  These six categories include agreement, substantive legal relationships, adequate representation, assumed control over the litigation, suit filed as a designated representative, and a statutory scheme.  *Id.*  This ruling by the Supreme Court appears to be somewhat of a departure from earlier analysis of res judicata by the Eleventh Circuit.  *See id.* at 2170 n.3 (abrogating *EEOC v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1289 (11th Cir. 2004)).  The argument advanced by Empire in this case does not specify the nature of the identify of parties which it contends exists.

It is to the court, but it appears that Empire's theory of preclusion may not be consistent with the Supreme Court's decision in *Taylor*, because it relies on a theory of preclusion which has been abrogated.  *See id.*  "At all times the burden is on the party asserting res judicata ... to show that the later-filed suit is barred."  *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir.2001).  Because the court is unable to properly evaluate Empire's theory, and the burden rests on Empire to establish preclusion, the counterclaim is not due to be dismissed on the basis of res judicata at this time.  Although the Motion to Dismiss is due to be DENIED on this basis, it will be denied as to this ground without prejudice to Empire again raising this defense at the motion for summary judgment stage, should Empire choose to do so.

## 2.  Waiver

Empire further contends that the Investors have waived their claims as a result of waivers in the Construction Loan Agreement and Personal Guarantees.  The Investors, however, contend that those waivers were only of certain defenses to a claim by Empire to collect the amount due on the note, and are not waivers of claims for relief for wrongful conduct.

The court has reviewed the allegations of the Counterclaim as well as the language of the waivers at issue.   Although Empire appears to have initially understood the Investors to be asserting a counterclaim as an attempt to defend against their obligations in the guarantees, the Investors' contentions are that Empire undertook to perform obligations under the contract other than merely loaning money, and that these extra-contractual obligations, which constituted a joint venture, are challenged by the Investors.  *See* Doc. 15 at pages 12-13.  Accordingly, at least at this point in the proceedings, the court cannot conclude that the contractual waiver of defenses to the guarantee obligations bars the counterclaim asserted.

### b.  Empire's Grounds for Dismissal Specific to Each Claim in the Counterclaim

Empire also contends that each count of the counterclaim is individually due to be dismissed as failing to state a claim.

#### 1.  Negligence and Breach of Fiduciary Duty

The court notes that in moving for dismissal as to the Counterclaim, Empire has relied heavily on the Georgia decision *Fielbon Development Co., LLC v. Colony Bank of Houston Co.*, 660 S.E.2d 801 (Ga. App. 2008), particularly with respect to Counts One and Two for negligence and breach of fiduciary duty, respectively.   That decision is not controlling in this case, however, because the counterclaim that the guarantor brought there, which arose out of the

bank's administration of a construction loan, was in defense to the guaranty.  *Id.*  In this case,

although Empire's claims in the Complaint seek to enforce guarantees, the Counterclaim is not

alleged to be a defense to the guarantees, but instead seeks to recover for Empire's actions in

conducting a joint venture outside of the scope of the construction loan documents.   The

Investors have argued that as a joint venturer, Empire assumed duties and responsibilities

regarding the project, which gave rise to duties for purposes of the negligence claim and the

breach of fiduciary duty counterclaim.

Under Georgia law,[4] a joint venture arises where two or more parties combine property or

labor in a joint undertaking for profit, with rights of mutual control. *Rossi v. Oxley,* 495 S.E.2d

39, 41 (Ga. 1998); *see also Hillis v. Equifax Consumer Services, Inc.,*  237 F.R.D. 491, 508

(N.D. Ga. 2006) (stating that the essential elements of a joint venture are (1) a pooling of action;

(2) a joint undertaking for profit; and (3) rights of mutual control).  "Georgia precedent indicates

that whether the evidence supports a finding of a joint venture, as well as whether an act is

within the scope of the venture, is usually a substantial question for consideration by the jury."

*Putnam v. Williams,*  652 F.2d 497, 500 (Ga.1981).

Empire states that there is no joint venture in this case because Empire did not share in

profits or losses.  While "profit-sharing is a significant factor, [a court must] consider the total

circumstances of an agreement to determine its status as a joint venture . . . ." *Fulcher's Point*

*Pride Seafood, Inc. v.  M/V Theodora Maria*, 935 F.2d 208, 212 (11th Cir. 1991).  The Eleventh

Circuit concluded, albeit in a case examining a joint venture in the context of a maritime lien,

---

[4] The parties are in agreement that where state substantive law applies, it is the law of the
State of Georgia which is to be applied in this case.

that where there are strong control elements, "the profit consideration is less weighty than it

might otherwise be," so that even though profits were not explicitly shared, where the profit

enterprise was a motive for both parties, a joint venture could exist. *Id.*   Therefore, the court

must conclude at this point in the proceedings that Empire's argument in brief that there was no

profit sharing is not a sufficient basis upon which to grant the Motion to Dismiss.[5]

Empire also contends that there a merger clause in the relevant contracts so that parol

evidence is not admissible to vary or contradict the terms of the contract, citing *Rizk v. Jones*,

148 Ga. App. 473 (1978) and *Dolanson Co. v. Citizens & Southern Nat. Bank*, 251 S.E.2d 274

(Ga. 1978).  Empire's argument is that parol evidence of a prior or contemporaneous oral

agreement cannot be used to alter the terms of the written contract.  In *Dolanson*, however, the

oral agreement was alleged to make the promissory note conditional, and the court expressly

found that the relationship between the parties was strictly borrower/lender, and no joint venture

existed.  251 S.E.2d at 277.

The Investors concede that there is a merger or integration clause in the guarantees. *See*

Doc. #58 p. 9 n.1.   The Investors contend that the only merger or integration clause in the

Construction Loan Agreement relates to the plans and specifications of the work to be

performed.  They further contend that after the written agreements were executed, Empire made

further representations and assurances and formed a joint venture with LMP, Investors and the

---

[5] It is apparent from the briefing that the majority of the counts of the Investors'
counterclaim in this case rely on a joint venture theory.  It may well be that the Investors cannot
ultimately prove a joint venture so as to sustain these claims.  There is, however, an allegation of
joint venture in the Counterclaim, *see* Doc. 15 at ¶ 17, and the challenge to that allegation, profit
sharing, as discussed above, does not establish that the counts of the counterclaim are due to be
dismissed as a matter of law.  The issue of the joint venture is one which will have to be more
fully addressed upon factual development of the case, at the summary judgment stage, or at trial.

Stoneview Entities, so that this joint venture modified the prior written agreement.  It is the

obligations incurred as a result of the joint venture which form the basis of the Counterclaim.

They assert that they are not barred from introducing evidence that the parties subsequently

formed a joint venture to develop the project, citing *South Atl. Prod.Credit Ass'n v. Gibbs*, 361

S.E.2d 167, 169 (Ga. 1987).

In *Gibbs*, the court held that the parol-evidence rule does not stand as a barrier to the

enforcement of an agreement entered into subsequent to the execution of a promissory note.  *Id.*

at 169.  At this point in the proceedings, therefore, the court cannot conclude that the Motion to

Dismiss can be granted on a theory that no evidence outside of the contracts or guarantees can be

relied upon to establish a joint venture.

Specifically with regard to the breach of fiduciary duty claim, Empire states that the

allegation of self-dealing, based on a discrepancy between fees actually charged and fees due

under the written terms of the contract, is due to be dismissed because the discrepancy was

caused by a typographical error.  This is not an issue which can be resolved on the basis of the

allegations of the Counterclaim and the documents pointed to, but can be raised again in the

context of a timely-filed Motion for Summary Judgment.

### 2.  Breach of Contract

With regard to Count Three of the counterclaim, breach of contract, Empire contends that

the Investors failed to state a claim because the claim is contradicted by the terms of the

Construction Loan Agreement.  The Investors respond that the Construction Loan Agreement

does not contain a merger or integration clause which would void oral representations by

Empire, or require that any subsequent modifications of the parties' agreement be in writing.

Again, in view of the allegation of a joint venture, the court cannot conclude that the Motion to

Dismiss can be granted on the basis of the existence of the Construction Loan Agreement.

Empire also states that there is no breach of the implied covenants of good faith and fair

dealing.   Empire cites to Georgia cases for the proposition that when a plaintiff cannot prevail

on a an underlying breach of contract claim, the plaintiff also cannot prevail on a claim for

failure to act in good faith for performing the contract.  Because the Motion to Dismiss is due to

be denied as to the breach of contract claim, it is also due to be denied as to breach of implied

covenants of good faith and fair dealing.

### 3.  Conversion

The conversion counterclaim in this case presents a slightly different analytical question

and does not rise or fall on the allegation of a joint venture.   Empire contends that Count Four of

the Counterclaim fails to state a claim for conversion because there is no allegation of

conversion of a membership interest in the limited liability company constituting LMP, and that

is the only interest the Investors own.  The allegation of the Counterclaim, however, is that

"Empire has appropriated [LMP's] assets, specifically including, but not limited to, the Project

and certain monies owned by LMP . . . ."  Doc. #15 at p. 17.

"Conversion is not available as a cause of action with respect to intangible property

representing an interest in a business." *Monterrey Mexican Restaurant of Wise, Inc. v. Leon*, 638

S.E.2d 879, 886 (Ga. App. 2006) (quoting *Southern Cellular Telecom v. Banks*, 208 Ga. App.

286 (1993)).  In addition, a claim for conversion of money under Georgia law only lies where the

allegedly converted money is specific and identifiable, or specifically "earmarked" for some

particular purpose. *In re Hercules Automotive Products, Inc*.,  245 B.R. 903, 912 (M.D.

Ga.1999).

The allegation of the Counterclaim points to an intangible interest in a business and a general reference to money.  The Motion to Dismiss is therefore, due to be GRANTED as to the conversion counterclaim.  Furthermore, even if the Investors had adequately alleged identification of the assets, or if the court were to allow amendment of the Counterclaim to do so, these assets are alleged to be assets of LMP, the debtor discharged in bankruptcy, so defenses based on the bankruptcy order, discussed above, would appear apply to preclude that claim.  The Motion to Dismiss is, therefore, due to be GRANTED on this alternative basis as to the conversion counterclaim.

### 4. Conspiracy

Empire argues that there is a failure to state a claim of conspiracy (Count Five) because there is no evidence that Empire acted in concert with any other person to accomplish an unlawful end, or a lawful end by unlawful means, and there is no underlying tort.  The Investors state that at this point in the proceedings, they are not required to produce evidence, but only sufficient allegations.  The court agrees that because there is a tort claim remaining in the case, the conspiracy claim is not due to be dismissed at this point in the case.

### 5. Negligent Misrepresentation

With regard to the negligent misrepresentation claim (Count Six), Empire contends that the merger clause in the guarantees precludes claims based on representations made by parties prior to entering into a contract, citing among others *First Data POS, Inc. v. Willis*, 546 S.E.2d 781 (Ga. 2001).      Empire also contends that there can be no justifiable reliance by Investors on any representations because the only actions taken by them were actions they were required to

perform under the guarantees.

Investors state that they have alleged that Empire negligently supplied false information to

LMP and Investors and that Investors relied on the information to their detriment.  *See* Doc. #15

at p. 18.   In their brief, they have elaborated on the reliance allegation of the Counterclaim by

stating that they relied to their detriment by not cancelling their guarantees and limiting their

potential liability and losses.

The allegations of the Counterclaim are not consistent with either the representations or

the reliance described in the briefs.  The allegations of the Counterclaim are as follows:

> In the course of making a loan to [LMP] and securing the guarantees from
> Defendants, Empire represented to Defendants that it would adequately and
> properly monitor the progress and performance of the work . . . and . . . that the
> Project would be successful.

*Id.* at page 18 ¶49.  The allegations of the Counterclaim, therefore, do not allege a representation

made after the guarantees had been executed and reliance in the form of not cancelling the

guarantees.   Rather, the representations and reliance are tied to the execution of the guaranteees.

The Motion to Dismiss is, therefore, due to be GRANTED as to this claim.  The court, however,

will dismiss the negligent misrepresentation claim without prejudice, and the Investors will be

given time to amend their Counterclaim to be consistent with the description in their brief, if they

can do so within the strictures of Fed. R. Civ. Pro. 11.  If the claim is not amended by the deadline

given, the court will dismiss the negligent misrepresentation claim with prejudice at that time.

### Motion to Sever

Empire seeks to sever the Third-Party complaint from the trial of the claims in the

Complaint and Counterclaim in this case.  Empire contends that failure to sever the Third Party

Complaint may cause substantial prejudice because of an undue complication of issues and

evidence, because the relationship of the claims the Investors attempt to assert against the Third-Party Defendants are different from the claims brought by Empire.  Many of the arguments advanced by Empire replicate arguments advanced in support of the Motion to Dismiss.  For example, Empire contends that claims brought against the Third-Party Defendants should have been brought in the bankruptcy court.

The Investors contend that the same witnesses and documents will be relevant to several issues so that none of the factors of rule 42(b) are present.  The Third Party-Defendants also agree that it would be more convenient and in the interest of judicial economy to the parties and witnesses for the Third Party Complaint to be tried with the original Complaint.

Many of the issues raised by Empire in its Motion to Dismiss, also raised in the Motion to Sever, are issues which, as discussed above, cannot be fully resolved at this point in the case.  To view the Third-Party claims as separate from the Complaint and the Counterclaim is to ignore that the Investors have alleged claims against Empire based not on written contracts, but on a joint venture relationship which is related to the facts of the Third- Party claims.  The court concludes, therefore, that the best course of action at this point in the proceedings is to deny the Motion to Sever, with the understanding that once there has been factual development of the Counterclaim in this case, and the court has ruled on any Motions for Summary Judgment which may be filed, the court will again entertain a Motion to Sever, should Empire choose to file one at that time.

## IV.  CONCLUSION

The Motions to Dismiss and Sever in this case take a view of the Counterclaim and Third-Party Complaint which is not the interpretation of the Investors, who brought the Counterclaim. That is, Empire has argued, at least in large part, that the Counterclaim brought by Investors

against it cannot alter their obligations under guarantees and, therefore, ought to be dismissed.

Investors, however, state that they do not bring the Counterclaim as an attempt to alter the terms

of their guarantees, but rather seek to recover from Empire and the Third-Party Defendants for

wrongful acts, which Investors allege were taken in concert by Empire and the Third-Party

Defendants.

For the reasons discussed, except for the conversion and negligent misrepresentation

counterclaims alleged, the court cannot conclude at this point in the proceedings that the Motion

to Dismiss is due to be granted, nor that Third-Party claims related to the Counterclaim are due to

be severed.  It may well be that Investors ultimately will not be able to create questions of fact as

to their claims, but that is a determination which will have to be taken up at the summary

judgment stage or at trial.  Accordingly, it is hereby

ORDERED as follows:

1.   The Plaintiff's Motion to Dismiss Counterclaim (Doc. #22) is GRANTED as to

Counts Four and Six of the Counterclaim.  Count Four of the Counterclaim, a claim of

conversion, is DISMISSED with prejudice and Count Six of the Counterclaim, a claim for

negligent misrepresentation, is DISMISSED without prejudice.  The Motion to Dismiss is

DENIED in all other respects, without prejudice to the Plaintiff raising the issues raised in the

Motion to Dismiss at the summary judgment stage of this case, or at trial.

2.   The Plaintiff's Motion to Sever Third Party Complaint. (Doc. #28) is DENIED

without prejudice to the Plaintiff again raising this issue at the appropriate time.

3.   The Defendants/Counterclaimants are given until September 23, 2008 to file an

Amended Counterclaim, complete unto itself, pursuant to M.D. Ala. Local Rule 15.1, including a

claim for negligent misrepresentation, which states the misrepresentation and the nature of the

reliance they allege, consistent with the description of this claim they have given in their briefs, if

they can so-allege within the requirements of Fed. R. Civ. Pro. 11.

 Done this 16th day of September, 2008.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE